### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SUSAN B. LONG | ) | |
| and | ) | |
| DAVID BURNHAM | ) | Civil Action No. 17-cv-00506 |
| Plaintiffs, | ) | |
| v. | ) | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT | ) | |
| Defendant. | ) | |

### DECLARATION OF MARLA JONES
### IN SUPPORT OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY'S MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

I, Marla Jones, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.    I am the Unit Chief of the Statistical Tracking Unit ("STU") within Enforcement and Removal Operations ("ERO") Law Enforcement and Systems Analysis ("LESA") at U.S. Immigration and Customs Enforcement ("ICE"). I have held this position since January 2016. I previously served as the Acting Chief of STU from July 2015 until accepting the position, and prior to that, served as Detention and Deportation Officer subject matter expert within STU since June 2013. I have served as an officer for ERO since January 2008. The LESA STU mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2.    The LESA STU is responsible for providing all official ERO reporting to Congress, the White House, and other internal and external stakeholders, in addition to the public through the FOIA.

1

3.      As the Unit Chief for the STU, my official duties and responsibilities include the general management, oversight, and supervision of a staff of Statisticians, Detention and Deportation Officers (Subject Matter Experts), Program Analyst, and Mission Support staff.  The STU is responsible for providing operational reports and strategic analysis to stakeholders and senior leadership on behalf of ERO.

4.      I make this declaration in support of ICE's Motion for Summary Judgment in the above-captioned action.  The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

5.      In my role as the Unit Chief for the STU, I am familiar with the following FOIA requests submitted by Susan Long and David Burnham on behalf of the Transactional Records Access Clearinghouse ("TRAC") to ICE:

     a.  FOIA request 2017-ICFO-08061, dated November 30, 2016, asking for "the latest anonymous data concerning Form I-247/I-247D requests issued for FY 2015 through November 2016."

     b.  FOIA request 2017-ICFO-08062, dated November 30, 2016, asking for "the latest anonymous data concerning Form I-247N requests issued for November 2016."

## II.      DESCRIPTION OF THE EID/IIDS DATA REPOSITORIES

6.      The Enforcement Integrated Database ("EID") is owned and operated by ICE and is used primarily to support the law enforcement activities of certain Department of Homeland Security ("DHS") components, including ICE and U.S. Customs and Border Protection ("CBP").  The EID is the common database repository for all records created, updated, and accessed by a number of software

applications. The EID allows ICE officers to manage cases from the time of an alien's arrest, in-processing, or placement into removal proceedings, through the final case disposition (*i.e.*, removal or granting of immigration benefits). It also contains law enforcement sensitive information relating to investigations, enforcement operations, and checks of other law enforcement databases. The EID is a 24x7 operational database with more than 55,000 users. The EID houses data and business rules that are integrated with other systems through direct database connectivity or complex interfaces.

7.     The EID captures and maintains information related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and law enforcement investigations and operations conducted by ICE and CBP. The EID provides users with the capability to access a person-centric and/or event-centric view of the data. Users can also print records containing the EID data, which are used for criminal and administrative law enforcement purposes and typically are retained in criminal investigative files, detention files, and Alien Files ("A-Files").

8.     As ICE's operational database, the EID is used to store data captured 24 hours a day, by ICE and CBP law enforcement personnel who input or update law enforcement sensitive information about individuals that have been encountered or arrested by ICE or CBP law enforcement components. The data includes information about individuals that will be turned over to ICE, those currently in custody, those that have been released, and those that are targeted for future enforcement actions. The EID is used as data storage throughout the immigration enforcement lifecycle from arrest to removal or release.

9.     For the two FOIA requests that are the subject of this litigation, ICE conducted searches utilizing the ICE Integrated Decision Support System ("IIDS"). The IIDS contains a subset of data from the EID database that is updated regularly 3 days a week. When it is provided, it completely replaces the older snapshot/extract with the new data and the older data is not retained.

10.     Additionally, the IIDS contains information that is adapted for efficient report writing. While the EID contains information needed for ICE officers and agents to advance the agency's mission to promote homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade, and immigration, the IIDS contains a subset of case and enforcement-related information that is used to create reports for consumption.

11.     The IIDS supports queries of the snapshot EID data for operational or executive reporting purposes.  ICE queries IIDS instead of the EID to protect the integrity of the live data held in the EID operational environment and to prevent the performance of EID from being diminished. For the two FOIA requests that are the subject of this litigation, ICE conducted searches of the IIDS.

### III.     DESCRIPTION OF DETAINER FORMS RELATED TO 2017-ICFO-08061

12.     Under the Priority Enforcement Program ("PEP"), ICE placed a detainer on an alien who had been arrested on state or local criminal charges and for whom ICE possessed probable cause to believe that the alien was both an immigration enforcement priority and removable from the United States.  The legacy detainer form, I-247 Immigration Detainer-Notice of Action, was primarily utilized prior to July 2015, by ICE government employees when preparing and updating the detainer form utilizing EAGLE, which then stores the data points electronically in the EID.  The available data is then brought into IIDS from the EID.  Not all fields on the form are required to be completed, entered, and tracked electronically, and thus some of the data points cannot be reported. Additionally, not all fields on the form have corresponding electronic fields in the EID and those fields are also unavailable for reporting.

13.     The detainer form I-247D, Immigration Detainer-Request for Voluntary Action, was made available electronically in EAGLE to ICE government employees in July 2015, to utilize in place of the legacy I-247 form with the same operational purpose.  See Exhibit 1.  The available data is then

4

brought into IIDS from the EID.  Not all fields on the form are required to be completed, entered, and tracked electronically, and thus some of the data points cannot be reported.  Additionally, not all fields on the form have corresponding electronic fields in the EID and those fields are also unavailable for reporting.

## IV.    DESCRIPTION OF NOTICE FORMS RELATED TO 2017-ICFO-08062

14.    The form I-247N, Request for Voluntary Notification of Release of Suspected Priority Alien, requests that the receiving state or local LEA notify ICE of the pending release from custody of a suspected priority removable individual at least 48 hours prior to release, if possible.  See Exhibit 2. The Form I-247N was made available electronically in EAGLE to ICE government employees in July 2015.  The data is then brought into IIDS from the EID for reporting purposes in the same manner as the Form I-247D.

## V.    DESCRIPTIONS OF ERO AND PROGRAM OFFICES TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO PLAINTIFF'S FOIA REQUESTS

15.    ERO enforces the nation's immigration laws.  ERO identifies and apprehends removable aliens, detains these individuals when necessary, and removes illegal aliens from the United States. ERO transports removable aliens from point to point, manages aliens in custody or in an alternative to detention program, provides access to legal resources and representatives of advocacy groups, and removes individuals from the United States who have been ordered to be deported.  ERO's mission is carried out nationwide by 24 ERO Field Offices, each with its own area of responsibility.

16.    When ERO receives a FOIA tasking from the ICE FOIA Office, the request is submitted to ERO's Information Disclosure Unit ("IDU").  POCs in IDU review the substance of the request. Based on subject matter expertise and knowledge of the program offices' activities within ERO, IDU forwards the FOIA request to specific individuals and component offices, and directs specific employees

to conduct searches of their file systems (including both paper files and electronic files). Employees conduct these searches based on their judgment and knowledge of the manner in which they routinely keep records and where they would be reasonably likely to have responsive records, if any. The employees exercise discretion, based on their operational knowledge and subject matter expertise, in choosing the specific search terms utilized to ascertain whether or not potentially responsive documentation exists. Once searches are completed, the individuals and component offices provide any potentially responsive records to the IDU POC, who in turn provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and processes the records, if any, for applicable exemptions prior to release to the requestor.

## VI.    THE SEARCH CONDUCTED FOR 2017-ICFO-08061

17.    On December 2, 2016, the ICE FOIA Office tasked ERO with responding to Plaintiffs' FOIA request. A POC in ERO IDU received and reviewed the request. Based upon subject matter expertise and knowledge of the program offices' activities within ERO, IDU determined searches at the headquarters ("HQ") level for potentially responsive documentation should be conducted. Accordingly, IDU tasked LESA, as LESA was reasonably likely to have responsive records.

18.    Upon receipt of the initial FOIA request from IDU on December 7, 2017, a FOIA POC in LESA reviewed the substance of the request and, based on their experience and knowledge of their office's practices and activities tasked the STU to search for potentially responsive documentation. From December 7-8, 2016, a STU analyst conducted a line-by-line review of the requested information taking into consideration standard reporting of detainer methodologies as well as consulting the database to query all available responsive detainer information as requested from IIDS. Upon completion of the search, LESA submitted one Excel Spreadsheet to IDU on December 21, 2016. The responsive pages were processed by the ICE FOIA Office and released to the Plaintiffs on January 10, 2017.

19.     Plaintiffs' FOIA Request, 2017-ICFO-08061 sought a total of 148 data points, including sub-bulleted data points contained within the 112 primary line items requested.  LESA STU provided 72 data points to the Plaintiffs in the January 10, 2017 response.  There were 76 data points that Plaintiffs requested that ICE did not provide.

20.     When responding to each data point that was requested, STU's initial determination was whether or not ERO has the specific data point stored in IIDS as requested in the FOIA request.  If the data point exists within IIDS and does not require additional research, analysis, assumptions and/or calculations, or the creation of a new record, ICE provided the data point in in the responsive Excel spreadsheet (72 data points).  If the data point did not exist in IIDS or required additional research, analysis, interpretations, assumptions and/or calculations and ultimately required the creation of new records, ICE did not provide the data point to Plaintiffs.

21.     To provide the following 72 data points, a STU analyst conducted a line-by-line review of the requested information taking into consideration standard reporting of detainer methodologies as well as consulting the database to query all available responsive removal information as requested from IIDS.

22.     There were 72 data points provided to the Plaintiffs in the January 10, 2017 response:

| Item # | Information Requested |
|---|---|
| 1 | Date Form l-247D was issued |
| 2 | Subject of l-247D previously transferred to addressee's custody and DHS intends to resume custody of the subject to complete processing |
| 3 | DHS SUSPECTS THAT THE SUBJECT IS A REMOVABLE ALIEN AND THAT THE SUBJECT IS AN IMMIGRATION ENFORCEMENT PRIORITY BECAUSE HE/SHE: |
| 3 | 1.    Has engaged in or is suspected of terrorism or espionage, or otherwise poses a danger to national security, |
| 3 | 2.    Has been convicted of an offense of which an element was active participation in a criminal street gang, as defined in 18 USC 521(a), or is at least 16 years old and intentionally participated in an organized criminal gang to further its illegal activities, |

| | |
|---|---|
| 3 | 3.   Has been convicted of an offense classified as a felony, other than a state or local offense for which an essential element was the alien's immigration status, |
| 3 | 4.   Has been convicted of an aggravated felony, as defined under 8 USC 110(a)(43} at the time of conviction, |
| 3 | 5.   Has been convicted of a 'significant misdemeanor,' as defined under DHS policy, and/or |
| 3 | 6.   Has been convicted of 3 or more misdemeanors, not including minor traffic offenses and state or local offenses for which immigration status was an essential element, provided the offenses arise out of 3 separate incidents. |
| 3 | 7. Probable cause exists that the subject is a removable alien (yes/no). |
| 3 | 8. Determination that probable cause exists that the subject is a removable alien based on: |
| 3 | 8 (1). A final order of removal against the subject |
| 3 | 8 (2). The pendency of ongoing removal proceedings against the subject |
| 3 | 8 (3).  Biometric confirmation of the subject's identity and records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law, and/or |
| 3 | 8 (4) Statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law |
| 3 | 9 (1). Has a prior felony conviction or has been charged with a felony offense, |
| 3 | 9 (2). Has three or more prior misdemeanor convictions, |
| 3 | 9 (3). Has a prior misdemeanor conviction or has been charged with a misdemeanor for an offense that involves violence, threats, or assaults, sexual abuse or exploitation, driving under the influence of alcohol or a controlled substance, unlawful flight from the scene of an accident, the unlawful possession or use of a firearm or other deadly weapon, the distribution or trafficking of a controlled substance, or other significant threat to public safety, |
| 3 | 9 (4). Initiated removal proceedings and served a Notice to Appear or other charging document, |
| 3 | 9 (5). Served a warrant of arrest for removal proceedings |
| 3 | 9 (6). Obtained an order of deportation or removal from the United States for this person |
| 3 | 9 (7). Has been convicted of illegal entry pursuant to 8 USC 1325 |
| 3 | 9 (8).  Has illegally re-entered the country after a previous removal or return, |
| 3 | 9 (9).  Has been found by an immigration officer or an immigration judge to have knowingly committed immigration fraud, |
| 3 | 9 (10). Otherwise poses a significant risk to national security, border security, or public safety, and/or |
| 3 | 9 (11).  Other (specify) |

| 4 | Date Form I-247/I-247D was canceled or Form I-247/I-247D indicates that prior detainer request related to the subject should be disregarded (where applicable) |
|---|---|
| 5 | Reason for cancelation or withdrawal of request |
| 6 | Whether Form I-247/I-247D request indicated it was "operative only upon the subject's conviction" |
| 7 | ICE area of responsibility (AOR) issuing the Form I-247/I-247D |
| 15 | gender |
| 16 | country of birth |
| 17 | country of citizenship |
| 19 | year of birth |
| 20 | date of original entry |
| 23 | original entry status |
| 43 | aggravated felon type |
| 49 | Detainer Threat Level |
| 66 | name of the jail or facility in which the individual was detained where the Form I-247/I-247D was sent |
| 67 | code of the jail or facility in which the individual was detained where the Form I-247/I-247D was sent |
| 68 | city, county and state of the jail or facility in which the individual was detained prior where the Form I-247/I-247D was sent |
| 69 | type of facility in which the individual was detained where the Form I-247/I-247D was sent including: |
| 77 | DTA_ACTIVE_IND |
| 79 | DTA_ACT_INVT_IND |
| 80 | DTA_ACT_OSC_DT |
| 81 | DTA_ACT_OSC_IND |
| 83 | DTA_ACT_WA_IND |
| 84 | DTA_CIV_ID |
| 85 | DTA_CREATE_DT |
| 86 | DTA_DTF ID |
| 87 | DTA_DTLC_CD |
| 88 | DTA_FED_REG_IND |
| 89 | DTA_GTE_ID |
| 90 | DTA_GTE_ID_RETURN_TO |
| 91 | DTA_ID |
| 92 | DTA_INMATE_NBR_TYPE_CD |
| 93 | DTA_LIFT_DT |
| 95 | DTA_OTHER_FACILITY |
| 96 | DTA_PREPARE_DT |
| 98 | DTA_RELEASE_DAY |
| 99 | DTA_RELEASE_DT |
| 100 | DTA_RELEASE_MONTH |
| 101 | DTA_RELEASE_YEAR |
| 102 | DTA_REQ_ACCEPT_IND |
| 103 | DTA_REQ_DEATH_TRANSF IND |

| 104 | DTA_REQ_ENVELOPE_IND |
| 105 | DTA_REQ_NOTIFY_RELEASE_IND |
| 106 | DTA_REQ_RETURN_SIG_IND |
| 107 | DTA_RETURN_BY_FAX_I ND |
| 109 | Subject ID so Form I-247D record can be associated with DHS data on other activity related to this individual |
| 110 | EID Person ID so Form I-247D record can be associated DHS data on other activity related to this individual |
| 112 | Form I-247D so record can be associated with DHS data on other actions related to this Form I-247/I-247D |

23.     The 76 data points requested that were not provided fall into three categories.

24.     Category (1) of data requested but not provided (19 data points) - the data requested asks a question or is an implied question that does not exist itself in the database in the manner requested, and would require research, analysis, assumptions, and/or calculations, and thus would lead to the creation of a new record which did not previously exist.  In order to provide data points that would fall into Category (1), a STU analyst would have to research potential data values in IIDS, the operational use of those values inputted by officers that do exist, and make further assumptions that these data values satisfy the intent of their question.  This additional analysis and calculation will include the creation of new records in response to the questions and implied questions submitted by the Plaintiffs.  For example, item #8 asked for "Following the preparation of the Form I-247/I-247D, ICE administratively arrested individual (yes/no); if yes, date of ICE arrest."  A response to this inquiry requires the STU analyst to conduct additional research/analysis/assumptions and or calculations. This requires a STU analyst to assume that for a single alien, ICE issued a single detainer, when it is possible more than one was issued.  It then requires that ICE assume that an arrest following an issuance of a detainer was the result of the detainer, which appears to be an implied question in Plaintiff's request.  However, the EID contains no data point to reflect if ICE arrested an alien as a result of a detainer.  ICE does not track relationships between detainers being issued and arrests of an alien, thus no data point exists to answer

the Plaintiffs question as requested in the FOIA request.  Even if able to overcome these operational and

reporting limitations, STU would then be required to create a new data model to (1) identify the

relationship between detainers and arrests, (2) analyze if the arrest falls after the detainer preparation to

identify the implied relationships, (3) and create a calculation based upon the findings which would

result in the creation of a new record that did not previously exist, nor currently exists or is tracked by

ICE.  A second example, item #25 asked for "U.S. citizen spouse (yes/no)."  This would also require

additional research/analysis/assumptions and calculations as there is no data set in any ICE system

where ICE records the existence of a spouse, much less whether the spouse is a citizen.  While an officer

does have the ability to record information on relatives in case notes, there is no requirement to identify

citizenship much less confirm that accuracy of the self-reported information.  Aside from the operational

limitations, in order to answer this questions submitted by the Plaintiff, the analyst would be required (1)

to build a new data query to comprehensively identify an "alien" record and all reported spousal records

recorded for the "alien" record in the system (2) append the current data model in order pull all relative

information for these identified alien records who had a detainer prepared in the requested timeframe,

(3) analyze citizenship claims and create a flag for U.S. citizenship for those relatives while making

further assumptions  that null information implies either they are not married or other citizenships for

spouses must be Non-U.S. Citizenship.  This would result in the creation of a new record as these are all

currently data points that ICE does not track or record in an operational manner, and thus these data

points do not exist in the IIDS database.

    25.    The following 19 data points which fall into Category (1) and were not provided to

Plaintiffs:

| Item # | Information Requested |
|--------|----------------------|
| **8** | Following the preparation of the Form I-247/I-247D, ICE administratively arrested individual (yes/no); if yes, date of ICE arrest. |

| | |
|---|---|
| 9 | Following the preparation of the Form I-247/I-247D, individual was booked into ICE Custody (yes/no); and if yes: |
| 9 | a.  If yes, date booked into ICE custody and |
| 9 | b.  If yes, recorded apprehension method. |
| 10 | Following the preparation of the Form I-247/I-247D, OSC was filed in immigration court (yes/no); if yes, date OSC filed and specific charges to support request for removal cited. |
| 11 | Following the preparation of the Form I-247/I-247D, individual was deported (yes/no); if yes, date of deportation, latest processing disposition code, program code and case category at time of departure |
| 25 | U.S. citizen spouse (yes/no) |
| 26 | U.S. citizen parents (yes/no) |
| 27 | U.S. citizen child (yes/no) |
| 28 | charged with a crime (yes/no) [any charge, not restricted to convictions] |
| 33 | convicted of a crime (yes/no) |
| 41 | information on the charge for the specific arrest that gave rise to the I-247/I-247D being placed (did actual charge result (yes/no), date of charge, current status, date of conviction if applicable, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received if applicable) |
| 42 | aggravated felon (yes/no) |
| 59 | whether at the time the Form I-247/I-247D  was issued the individual was serving time after conviction for a criminal offense (yes/no) |
| 60 |  if the individual was serving time, the information concerning that offense [date of the charge, date of the conviction, date serving sentence began, where the individual was incarcerated at the time the FORM I247/ I-247D was issued, whether facility is a federal, state, or local facility, the facility code, facility name, state, county, city, facility address), NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received] |
| 70 | Was the Form I-247/I-247D  issued as part of the 287(g) program (yes/no) |
| 71 | Was the Form I-247/I-247D  issued following an IOENT/IAFIS Interoperability match (yes/no) |
| 72 | Was the Form I-247/I-247D  issued following an IDENT/IAFIS Interoperability match included in the monthly statistics released for Secure Communities (yes/no) |
| 73 | Was the original Form I-247/I-247D  issued as a result of an arrest by the Border Patrol (yes/no) |

26.    Category (2) of data requested but not provided (40 data points) - the data requested does not exist in the database as requested and requires ICE to make interpretations and assumptions before building a new record based off of additional analysis and calculations.  In order to provide records that would fall into Category (2), a STU analyst would have to research potential data values in IIDS, the

operational use of those values inputted by officers that do exist and make further assumptions that these data values satisfy the intent of the requested terms.  This additional analysis will include the creation of calculations and new data search and query methodologies as they relate to data that ICE does not track in the manner in which the data was requested.  For example, item #29 asked for "most serious criminal charge [any charge, not restricted to convictions]."  A response to this request would require interpretations and assumptions because this field does not exist within IIDS.  This would require a STU analyst to (1) interpret or create a definition of the data point requested because it doesn't exist; (2) review and develop a new method to query or pull data under this new definition which requires technical modifications that require further validation, testing, and approval; and (3) perform assumptions and calculations to create a new record that did not exist in IIDS prior to this FOIA request, and is not a data point that ICE tracks or utilizes in an operational manner.   As a second example, item #14 asked for "earliest date reflecting presence in the U.S."  This would require a STU analyst to make interpretations and make assumptions.  First, there is no corresponding data point for "Earliest entry data".  Second, because the only field for "entry date" is not a mandatory field in EARM that officers are required to enter into the database.  ICE cannot confirm "earliest date" in the U.S., as an alien may have been present in the U.S. for years prior to coming into contact with ERO.  This requires a STU analyst to assume the "earliest date reflecting presence in the U.S." would be the earliest entry date recorded in the system of record for the alien that has the detainer placed.  Based upon these assumptions and interpretations, the STU analyst would then be required to: (1) interpret or create a definition of the data point requested (including comprehensively identifying all recorded entry dates for a single alien), because the requested data point  doesn't exist; (2) review and develop a new method to pull data under this new definition which requires technical modifications that require further validation,

testing, and approval; and (3) finally, perform assumptions and calculations to create a new record for a data point that does not exist in IIDS for this FOIA request.

27.    The following 40 data points which fall into Category (2) and were not provided to Plaintiffs:

| Item # | Information Requested |
|---|---|
| 12 | Code of detention facility initially booked into |
| 13 | Name of detention facility initially booked into |
| 14 | Initial book-in date |
| 18 | age |
| 21 | date of last entry |
| 22 | earliest date reflecting presence in U.S. |
| 24 | last entry status |
| 29 | most serious criminal charge [any charge, not restricted to convictions] |
| 30 | date of most serious criminal charge [any charge, not restricted to convictions] |
| 31 | status of most serious criminal charge [any charge, not restricted to convictions] |
| 32 | NCIC code for most serious criminal charge [any charge, not restricted to convictions] |
| 34 | level of most serious criminal conviction (felony, misdemeanor, citation, etc.) |
| 35 | most serious criminal conviction offense |
| 36 | date of most serious criminal conviction |
| 37 | sentence for most serious criminal conviction |
| 38 | NCIC code for most serious criminal conviction offense |
| 39 | information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received) |
| 40 | information on every charge not just the most serious for which a conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.)) |
| 44 | Any and all information used in determining whether the person is or isn't an aggravated felon and particular type |
| 45 | meets requirements if held for mandatory detention (yes/no) |
| 46 | Any and all information used in determining whether or not mandatory detention would be required if held |
| 47 | RC Threat Level |
| 48 | All information used in determining the RC Threat Level for each person |
| 50 | All information used in determining the Detainer Threat Level for each person |
| 53 | Convicted Criminal Ll,L2, L3 |
| 54 | Any and all information used in determining the convicted criminal level for each person |
| 55 | ICE Priority indicator(s): |

| 55 | 1. ICE fugitive (and if yes, date of previously issued removal order) |
| 55 | 2. Prior removal and return (and if yes, date of previous removal order) |
| 55 | 3. Entered without inspection |
| 55 | 4. Overstayed visa |
| 55 | 5. Recent border crosser |
| 56 | All information used in determining the ICE priority level for each person |
| 57 | Priority per November 20,2014 memorandum on policies for the apprehension, detention, and removal of undocumented immigrants) |
| 58 | Any and all information used in determining Priority per November 20,2014 memorandum |
| 61 | case category at time Form I-247/I-247D issued |
| 62 | program code at time I-247/I-247D issued |
| 74 | name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation streamline, other border patrol program, secure communities, 287(g), etc.) |
| 75 | the apprehension method associated with the latest apprehension |
| 76 | name of the non-ICE agency associated with the original arrest or apprehensio".1 (if applicable) |

28.     Category (3) of data requested but not provided (17 data points) - the data cannot be provided as it does not exist in the database as requested. For example, item #63 asked for "name of the original arresting or conviction authority." IIDS does not contain the name of the original arresting or conviction authority and there is nowhere that requires the officer to record this information operationally in ERO's databases. As a second example, item #108 asked for "Sequence number or other designation to identify records relating to the same alien." IIDS does not contain one single identifier for the same 'alien' that would then be sequential in nature and carry across each Data Extract, Transform, Load ("ETL") cycle change.[1]

29.     The following 17 data points which fall into Category (3) and were not provided to Plaintiffs:

[1] The Extract, Transform, Load (ETL) cycle refers to the process that occurs 3 days a week when the IIDS database is updated with data from the Enforcement Integrated Database (EID). During the ETL process, data is pulled from the EID (extracted); optimized and reformatted in a way that aids reporting (transformed), and added into the IIDS reporting database (loaded) for use by the reporting tool.

| Item # | Information Requested |
|---|---|
| 51 | LESC Ll,L2, L3 |
| 52 | All information used in determining the LESC level for each person |
| 63 | name of the original arresting or conviction authority |
| 64 | city, county and state of the original arresting or conviction authority |
| 65 | date of the original arrest/conviction or book-in |
| 69 | 1.  ownership (federal, state, local, private), |
| 69 | 2.  type (prison, jail, hospital, other), |
| 69 | 3.  special characteristics (juvenile facility, family facility, etc.) |
| 69 | 4.  level of security |
| 69 | 5.  operated by government vs private company and if private, name of private company |
| 69 | 6.  facility under government contract with ICE to provide services (and if yes, contract number, contract date, and organization contract with |
| 69 | 7.  facility under government contract with other than ICE to provide services (and if yes, name of government entity contract with, contract number, contract date and organization contract with |
| 78 | DTA_ACT_DEPORT_IND |
| 94 | DTA_OTHER_DFTC_CD |
| 97 | DTA_RDLC_CD |
| 108 | Sequence number or other designation to identify records relating to the same alien |
| 111 | Any other ID recorded in ICE records so that the FormI-247/I-247D  record can be associated with other activity or information related to this individual |

## VII.    THE SEARCH CONDUCTED FOR 2017-ICFO-08062

30.    On December 2, 2016, the ICE FOIA Office tasked ERO with responding to Plaintiffs' FOIA request.  A POC in ERO IDU received and reviewed the request.  Based upon subject matter expertise and knowledge of the program offices' activities within ERO, IDU determined searches at the HQ level for potentially responsive documentation should be conducted.  Accordingly, IDU tasked LESA, as LESA was reasonably likely to have responsive records, if any.

31.    Upon receipt of the initial FOIA request from IDU on December 7, 2016, a FOIA POC in LESA reviewed the substance of the request and, based on their experience and knowledge of their office's practices and activities, tasked STU to search for potentially responsive data.  From December 7-8, 2016, a STU analyst conducted a line-by-line review of the requested information taking into

consideration standard reporting of detainer methodologies as well as consulted the database to query all available responsive detainer information as requested from IIDS.  Upon completion of the search, the LESA submitted one Excel Spreadsheet to IDU on December 13, 2016.  The responsive pages were processed by ICE FOIA and released to the Plaintiffs on February 2, 2017.

32.    Plaintiffs' FOIA Request, 2017-ICFO-08062 contained a total of 132 data points, including sub-bulleted data points contained within the 112 primary line items requested.  LESA provided 46 data points to the Plaintiffs in the February 2, 2017 response.  There were 86 data points that were requested by the Plaintiffs that ICE did not provide.

33.    When responding to each data point that was requested, STU's initial determination was whether or not ERO has the specific data point stored in IIDS as requested in the FOIA request.  If the data point exists within IIDS and does not require additional research, analysis, assumptions and/or calculations, or the creation of a new record, ICE provided the data point in in the responsive Excel spreadsheet (46 data points.)  If the data point did not exist in IIDS or required additional research, analysis, interpretations, assumptions and/or calculations and ultimately required the creation of new records, ICE did not provide the data point to Plaintiffs.

34.    To provide the following 46 data points, a STU analyst conducted a line-by-line review of the requested information taking into consideration standard reporting of detainer methodologies as well as consulting the database to query all available responsive detainer information as requested from IIDS.

35.    The following 46 data points were provided to the Plaintiffs in the February 2, 2017 response:

| Item # | Information Requested |
|--------|----------------------|
| 1 | Date Form l-247N was issued |

| 2 | Subject of l-247N previously transferred to addressee's custody and DHS intends to resume custody of the subject to complete processing |
|---|---|
| 3 | DHS SUSPECTS THAT THE SUBJECT IS A REMOVABLE ALIEN AND THAT THE SUBJECT IS AN IMMIGRATION ENFORCEMENT PRIORITY BECAUSE HE/SHE: |
| 3 | 1.    Has engaged in or is suspected of terrorism or espionage, or otherwise poses a danger to national security, |
| 3 | 2.   Has been convicted of an offense of which an element was active participation in a criminal street gang, as defined in 18 USC 521(a), or is at least 16 years old and intentionally participated in an organized criminal gang to further its illegal activities, |
| 3 | 3.   Has been convicted of an offense classified as a felony, other than a state or local offense for which an essential element was the alien's immigration status, |
| 3 | 4.   Has been convicted of an aggravated felony, as defined under 8 USC 110(a)(43} at the time of conviction, |
| 3 | 5.   Has been convicted of a 'significant misdemeanor,' as defined under DHS policy, and/or |
| 3 | 6.   Has been convicted of 3 or more misdemeanors, not including minor traffic offenses and state or local offenses for which immigration status was an essential element, provided the offenses arise out of 3 separate incidents. |
| 4 | Date Form l-247N was canceled or Form 1-247 indicates that prior notification request related to the subject should be disregarded (where applicable) |
| 5 | Reason for cancelation or withdrawal of request |
| 7 | ICE area of responsibility (AOR) issuing the Form 1-247N |
| 15 | gender |
| 16 | country of birth |
| 17 | country of citizenship |
| 19 | year of birth |
| 20 | date of original entry |
| 23 | original entry status |
| 43 | aggravated felon type |
| 49 | Detainer Threat Level |
| 66 | name of the jail or facility in which the individual was detained where the FORM I-247N was sent |
| 67 | code of the jail or facility in which the individual was detained where the Form I-247N was sent |
| 68 | city, county and state of the jail or facility in which the individual was detained prior where the Form l- 247/1-247D was sent |
| 69 | type of facility in which the individual was detained where the Form I-247N was sent including: |
| 77 | DTA_ACTIVE_IND |
| 79 | DTA_ACT_INVT_IND |
| 84 | DTA_CIV_ID |
| 85 | DTA_CREATE_DT |

| 86 | DTA_DTF ID |
|---|---|
| 87 | DTA_DTLC_CD |
| 88 | DTA_FED_REG_IND |
| 89 | DTA_GTE_ID |
| 90 | DTA_GTE_ID_RETURN_TO |
| 91 | DTA_ID |
| 92 | DTA_INMATE_NBR_ TYPE_ CD |
| 93 | DTA_LIFT_DT |
| 95 | DTA_OTHER_FACILITY |
| 96 | DTA_PREPARE_DT |
| 98 | DTA_RELEASE_DAY |
| 99 | DTA_RELEASE_DT |
| 100 | DTA_RELEASE_MONTH |
| 101 | DTA_RELEASE_YEAR |
| 105 | DTA_REQ_NOTIFY_RELEASE_IND |
| 109 | Subject ID so Form I-247N record can be associated with DHS data on other activity related to this individual |
| 110 | EID Person ID so Form I-247N record can be associated DHS data on other activity related to this individual |
| 112 | Form I-247N so record can be associated with DHS data on other actions related to this Form I-247N |

36.    The 86 data points requested that were not provided, fall into three categories:

37.    Category (1) of data requested but not provided (19 data points) - the data requested asks a question or is an implied question that does not exist itself in the database in the manner requested, and would require research, analysis, assumptions, and/or calculations, and thus would lead to the creation of a new record which did not previously exist.  In order to provide data points that would fall into Category (1), a STU analyst would have to research potential data values in IIDS, the operational use of those values inputted by officers that do exist, and make further assumptions that these data values satisfy the intent of their question.  This additional analysis and calculation will include the creation of new records in response to the questions and implied questions submitted by the Plaintiffs.  For example, item #9 asked for "Following the preparation of the Form I-247N, individual was booked into ICE Custody (yes/no); and if yes..."  A response to this inquiry requires the STU analyst to conduct

additional research/analysis/assumptions and or calculations. This requires a STU analyst to make assume that the many detainers that may be issued to an alien during a time frame resulted in one detention in ICE custody that occurred on or after the detainer preparation. This requires a STU analyst to assume that for a single alien, ICE issued a single detainer, when it is possible, and probable that more than one was issued. It then requires that ICE assume that a book in to ICE custody following an issuance of a detainer was the result of the detainer, which appears to be an implied question in Plaintiff's request. There is no indication in the system of record recorded by the officer that the particular ICE detention was a result of the detainer record as implied by the question, despite there also being no defined time period post- detainer preparation to confirm this relationship. In other words, the EID contains no data point to reflect if ICE booked an alien in as a result of a detainer. ICE does not track relationships between detainers being issued and book-ins of an alien, thus no data point exists to answer the Plaintiffs question as requested in the FOIA request. Even if able to overcome these operational and reporting limitations, STU would then be required to create a new data model to (1) identify the relationship between detainers and ICE detentions, (2) analyze if the detention falls after the detainer preparation to identify the implied relationships, (3) and create a calculation based upon the findings which would result in the creation of a new record that did not previously exist, nor currently exists or is tracked by ICE. As a second example, item #42 asked for "aggravated felon (yes/no)." There is no single data point in the system that marks a certain person as an aggravated felon. Therefore, this would require additional research/analysis/assumptions and/or calculations by STU. The only values that are recorded by an officer in the system that relate specifically to aggravated felonies are to identify types of aggravated felonies. However, officers are not required to record supporting information with the Aggravated Felon Type Code or any other criminal information. This requires STU to (1) build a data model to analyze all criminal information entered, including attempting to

reconcile the requested data point  (2) make operational assumptions based upon potential contradictory

data for this new definition of an aggravated felon and (3) create a new record to identify an aggravated

felon in the system. This would result in the creation of a new record as these are data points that ICE

does not track or record in an operational manner, and thus these data points do not exist in the IIDS

database.

      38.    The following 19 data points which fall into Category (1) and were not provided to

Plaintiffs:

| Item # | Information Requested |
|---|---|
| 8 | Following the preparation of the Form 1-247N, ICE administratively arrested individual (yes/no); if yes, date of ICE arrest. |
| 9 | Following the preparation of the Form I-247N, individual was booked into ICE Custody (yes/no); and if yes: |
| 9 | a.  If yes, date booked into ICE custody and |
| 9 | b.  If yes, recorded apprehension method. |
| 10 | Following the preparation of the Form 1-247N, OSC was filed in immigration court (yes/no); if yes, date OSC filed and specific charges to support request for removal cited. |
| 11 | Following the preparation of the Form 1-247N, individual was deported (yes/no); if yes, date of deportation, latest processing disposition code, program code and case category at time of departure |
| 25 | U.S. citizen spouse (yes/no) |
| 26 | U.S. citizen parents (yes/no) |
| 27 | U.S. citizen child (yes/no) |
| 28 | charged with a crime (yes/no) [any charge, not restricted to convictions] |
| 33 | convicted of a crime (yes/no) |
| 41 | information on the charge for the specific arrest that gave rise to the FORM I-247N being placed (did actual charge result (yes/no), date of charge, current status, date of conviction if applicable, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received if applicable) |
| 42 | aggravated felon (yes/no) |
| 59 | whether at the time the Form 1-247N was issued the individual was serving time after conviction for a criminal offense (yes/no) |
| 60 |  if the individual was serving time, the information concerning that offense [date of the charge, date of the conviction, date serving sentence began, where the individual was incarcerated at the time the FORM 1-247N was issued, whether facility is a federal, state, or local facility, the facility code, facility name, state, county, city, facility |

| | address), NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received] |
|---|---|
| 70 | Was the Form I-247N issued as part of the 287(g) program (yes/no) |
| 71 | Was the Form I-247N issued following an IOENT/IAFIS Interoperability match (yes/no) |
| 72 | Was the Form I-247N issued following an IDENT/IAFIS Interoperability match included in the monthly statistics released for Secure Communities (yes/no) |
| 73 | Was the original Form I-247N issued as a result of an arrest by the Border Patrol (yes/no) |

39.    Category (2) of data requested but not provided (40 data points) - the data requested does not exist in the database as requested and requires ICE to make interpretations and assumptions before building a new record based off of additional analysis and calculations.  In order to provide records that would fall into Category (2), a STU analyst would have to research potential data values in IIDS, the operational use of those values inputted by officers that do exist and make further assumptions that these data values satisfy the intent of the requested terms.  This additional analysis will include the creation of calculations and new data search and query methodologies as they relate to data that ICE does not track in the manner in which the data was requested.  For example, item #35 asked for "most serious criminal conviction offense."  A response to this request would require interpretations and assumptions because this field does not exist within IIDS.  This would require a STU analyst to (1) interpret or create a definition of the data point requested because it doesn't exist; (2) review and develop a new method to query or pull data under this new definition which requires technical modifications that require further validation, testing, and approval; and (3) perform assumptions and calculations to create a new record that did not exist in IIDS prior to this FOIA request, and is not a data point that ICE tracks or utilizes in an operational manner.  As a second example, item #55 (1)-(5) asked for "ICE Priorities indicator(s)" with further subcategories, and these do not exist in the database as requested.  These "ICE Priorities

indicator(s)," including the subcategories, require assumptions to be made as what these indicators

reference. These said "ICE Priorities indicator(s)" are not captured in the system by the officer, and

operationally, have no relevancy towards the detainer population(s). From a technical standpoint in

order to create a new record to satisfy this request, STU would have to (1) interpret or create definitions

based on a series of assumptions that do not align with operational reporting or current ICE policies, (2)

define the business requirements and append the data model for detainers, (3) create calculations,

including a prioritization, to assign "indicators" that may or may not be accurate, and finally (4) creates

a series of new records that did not exist prior to this FOIA request.

40.    The following 40 data points which fall into Category (2) and were not provided to

Plaintiffs:

| Item # | Information Requested |
|---|---|
| 12 | Code of detention facility initially booked into |
| 13 | Name of detention facility initially booked into |
| 14 | Initial book-in date |
| 18 | age |
| 21 | date of last entry |
| 22 | earliest date reflecting presence in U.S. |
| 24 | last entry status |
| 29 | most serious criminal charge [any charge, not restricted to convictions] |
| 30 | date of most serious criminal charge [any charge, not restricted to convictions] |
| 31 | status of most serious criminal charge [any charge, not restricted to convictions] |
| 32 | NCIC code for most serious criminal charge [any charge, not restricted to convictions] |
| 34 | level of most serious criminal conviction (felony, misdemeanor, citation, etc.) |
| 35 | most serious criminal conviction offense |
| 36 | date of most serious criminal conviction |
| 37 | sentence for most serious criminal conviction |
| 38 | NCIC code for most serious criminal conviction offense |
| 39 | information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received) |
| 40 | information on every charge not just the most serious for which a conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.)) |

| 44 | Any and all information used in determining whether the person is or isn't an aggravated felon and particular type |
|----|----|
| 45 | meets requirements if held for mandatory detention (yes/no) |
| 46 | Any and all information used in determining whether or not mandatory detention would be required if held |
| 47 | RC Threat Level |
| 48 | All information used in determining the RC Threat Level for each person |
| 50 | All information used in determining the Detainer Threat Level for each person |
| 53 | Convicted Criminal Ll,L2, L3 |
| 54 | Any and all information used in determining the convicted criminal level for each person |
| 55 | ICE Priority indicator(s): |
| 55 | 1.  ICE fugitive (and if yes, date of previously issued removal order) |
| 55 | 2.  Prior removal and return (and if yes, date of previous removal order) |
| 55 | 3.  Entered without inspection |
| 55 | 4.  Overstayed visa |
| 55 | 5.  Recent border crosser |
| 56 | All information used in determining the ICE priority level for each person |
| 57 | Priority per November 20,2014 memorandum on policies for the apprehension, detention, and removal of undocumented immigrants) |
| 58 | Any and all information used in determining Priority per November 20,2014 memorandum |
| 61 | case category at time Form I-247N issued |
| 62 | program code at time Form I-247N issued |
| 74 | name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation streamline, other border patrol program, secure communities, 287(g), etc.) |
| 75 | the apprehension method associated with the latest apprehension |
| 76 | name of the non-ICE agency associated with the original arrest or apprehensio".1 (if applicable) |

41.    Category (3) of data requested but not provided (27 data points) - the data cannot be provided as it does not exist in the database as requested.  For example, item #69(4) asked for "4.  level of security" as sub-bullet for #69 "type of facility in which the individual was detained where the Form I-247N was sent including..."  IIDS does not contain the level of security of an original arresting or conviction authority and therefore is unable to report this data point.  As a second example, items #102-104 asked for "DTA_REQ_ACCEPT_IND", "DTA_REQ_DEATH_TRANSF IND", and

"DTA_REQ_ENVELOPE_IND" which are all examples of historical data fields that no longer exist on the Form I-247N form, and therefore are not captured in the system for the requested population and cannot be reported on.

     42.    The following 27 data points which fall into Category (3) and were not provided to Plaintiffs:

| Item # | Information Requested |
| --- | --- |
| 6 | Whether Form 1-247N request indicated it was "operative only upon the subject's conviction" |
| 51 | LESC L1, L2, L3 |
| 52 | All information used in determining the LESC level for each person |
| 63 | name of the original arresting or conviction authority |
| 64 | city, county and state of the original arresting or conviction authority |
| 65 | date of the original arrest/conviction or book-in |
| 69 | 1.  jurisdiction (federal, state, local, private), |
| 69 | 2.  type (prison, jail, hospital, other), |
| 69 | 3.  special characteristics (juvenile facility, family facility, etc.) |
| 69 | 4.  level of security |
| 69 | 5.  operated by government vs private company and if private, name of private company |
| 69 | 6.  facility under government contract with ICE to provide services (and if yes, contract number, contract date, and organization contract with |
| 69 | 7.  facility under government contract with other than ICE to provide services (and if yes, name of government entity contract with, contract number, contract date and organization contract with |
| 78 | DTA_ACT_DEPORT_IND |
| 80 | DTA_ACT_OSC_DT |
| 81 | DTA_ACT_OSC_IND |
| 82 | DTA_ACT_WA_DT |
| 83 | DTA_ACT_WA_IND |
| 94 | DTA_OTHER_DFTC_CD |
| 97 | DTA_RDLC_CD |
| 102 | DTA_REQ_ACCEPT_IND |
| 103 | DTA_REQ_DEATH_TRANSF IND |
| 104 | DTA_REQ_ENVELOPE_IND |
| 106 | DTA_REQ_RETURN_SIG_IND |
| 107 | DTA_RETURN_BY_FAX_I ND |
| 108 | Sequence number or other designation to identify records relating to the same alien |

| | |
|---|---|
| **111** | Any other ID recorded in ICE records so that the Form I-247N record can be associated with other activity or information related to this individual |

## VIII.  JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my

knowledge and belief.  Signed this 8th day of November, 2017.

Marla Jones
Unit Chief, Statistical Tracking Unit
Law Enforcement and Systems Analysis
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009