UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN B. LONG<br><br>and<br><br>DAVID BURNHAM<br><br>                             Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT<br>                           Defendant. | Civil Action No. 17-cv-00506 |

DECLARATION OF CATRINA PAVLIK-KEENAN
IN SUPPORT OF THE UNITED STATES DEPARTMENT OF HOMELAND
SECURITY'S MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

I, Catrina Pavlik-Keenan, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am the FOIA Officer of the Freedom of Information Act Office (the "ICE FOIA Office") at U.S. Immigration and Customs Enforcement ("ICE").  I have been the Director of the ICE FOIA Office since that office was created on December 18, 2006.  Prior to holding this position, I worked for approximately four years in the FOIA office at the Transportation Security Administration - first as a Supervisory FOIA Analyst, then as Deputy Director for two years, and finally as Director.  In total, I have 25 years of experience processing FOIA requests.  The ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2.     The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE.

3.      My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office, which is responsible for the receipt, processing, and response to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE.  In that capacity, I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE.  Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.  In that respect, I am familiar with ICE's processing of the FOIA requests that Susan Long and David Burnham submitted on behalf of the Transactional Records Access Clearinghouse ("TRAC") to ICE.

4.      I make this declaration in support of ICE's Motion for Summary Judgment in the above-captioned action.  The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

5.      A description of ICE's processing of each of the Plaintiffs' FOIA requests related to the instant litigation follows.

## II.    PROCEDURAL HISTORY OF PLAINTIFF'S FOIA REQUESTS

### A.    FOIA REQUEST 2017-ICFO-08061

6.      By letter dated November 30, 2016, Plaintiffs submitted a FOIA request via e-mail, to the ICE FOIA inbox.  Plaintiffs' FOIA request sought "the latest anonymous data concerning Form I-247/I-247D requests issued for FY 2015 through November 2016."  The FOIA request contained a request for 112 separate data points.

7.      By letter dated December 2, 2016, ICE acknowledged receipt of the FOIA request and assigned it ICE FOIA case number 2017-ICFO-08061.

8.    By letter dated January 10, 2017, ICE responded to Plaintiffs' FOIA request, and informed them that a search of the ICE Office of Enforcement and Removal Operations ("ERO") for records responsive to the request produced one Excel spreadsheet. The letter also informed the Plaintiffs that portions of those records had been withheld pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).

9.    By letter dated March 14, 2017, Plaintiffs filed an appeal of ICE's January 10, 2017, response, challenging both ICE's withholdings and the adequacy of ICE's search. The appeal letter was received by the ICE FOIA office on March 14, 2017.

10.    In a letter to the Plaintiffs dated March 17, 2017, ICE's Office of Principal Legal Advisor ("OPLA") acknowledged receipt of the Plaintiff's appeal of ICE's response, and assigned it an appeal tracking number of 2017-ICAP-00273.

11.    By letter dated April 11, 2017, OPLA responded to Plaintiffs' appeal of ICE's response, and affirmed the adequacy of the search and the withholdings applied to the workbook. In the response, OPLA also asserted FOIA Exemption (b)(7)(E) to the columns "Subject Id," "Eid Civ Pers Id," "Eid Civ Id," "Return to Employee ID," "Government Employee Id," and "Detainer Id," in addition to the already asserted FOIA Exemptions (b)(6) and (b)(7)(C).[1]

**B.    FOIA REQUEST 2017-ICFO-08062**

12.    By letter dated November 30, 2016, Plaintiffs submitted a FOIA request, via email, to the ICE FOIA inbox. Plaintiffs' FOIA request sought "the latest anonymous data concerning Form I-247N requests issued for November 2016." The FOIA request contained a request for 112 separate data points.

13.    By letter dated December 2, 2016, ICE acknowledged receipt of the FOIA request and assigned it ICE FOIA case number 2017-ICFO-08062.

---

[1] By e-mail dated October 24, 2017, the parties agreed to narrow the issues in this case to exclude withholdings.

14.     In a letter dated February 2, 2017, ICE responded to Plaintiffs' FOIA request, and informed them that a search of ERO for records responsive to the request produced one Excel spreadsheet. The letter also informed the Plaintiffs that portions of those records had been withheld pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).

15.     By letter dated March 14, 2017, Plaintiffs filed an appeal of ICE's February 2, 2017, response, challenging both ICE's withholdings and the adequacy of ICE's search. The appeal letter was received by the ICE FOIA office on March 14, 2017.

16.     In a letter to the Plaintiffs dated March 17, 2017, ICE's Office of Principal Legal Advisor ("OPLA") acknowledged receipt of the Plaintiffs' appeal of ICE's response, and assigned it an appeal tracking number of 2017-ICAP-00302.

17.     By letter dated April 11, 2017, OPLA responded to Plaintiffs' appeal of ICE's response, and remanded the request to the ICE FOIA Office determining that some of the information contained in the "Eid Civ Pers Id" column, which was previously withheld, could be released. In addition, OPLA also asserted FOIA Exemption (b)(7)(E) to the columns "Subject Id", "Eid Civ Pers Id," "Eid Civ Id," "Government Employee Id," and "Detainer Id2," in addition to the already asserted FOIA Exemptions (b)(6) and (b)(7)(C). OPLA's response to Plaintiffs' appeal also affirmed the adequacy of the search.

18.     In a letter dated October 6, 2017, the ICE FOIA Office produced one Excel spreadsheet after OPLA's remand. The letter also informed the Plaintiffs that portions of those records had been withheld pursuant to FOIA Exemptions (b)(6), (b)(7)(C) and (b)(7)(E).[2]

## III.    PROCEDURAL HISTORY OF THE INSTANT LITIGATION

19.     On May 9, 2017, Plaintiffs filed a Complaint in the United States District Court for the Northern District of New York for declaratory, injunctive, and other appropriate relief.

---

[2] By e-mail dated October 24, 2017, the parties agreed to narrow the issues in this case to exclude withholdings.

Plaintiffs alleged that the U.S. Immigration and Customs Enforcement failed to substantively respond to Plaintiffs' FOIA requests.

20.    On June 12, 2017, ICE filed its Answer to the Complaint with the Court.

## IV.    ICE'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

21.    Each program office within ICE has a designated point of contact ("POC") who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of their particular program office. When the ICE FOIA Office receives a FOIA request, its first step is to identify which program offices, based on their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request if any and to initiate searches within those program offices. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. Per the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn

provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness.

22.     ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, or USB storage devices. The determination of whether or not these electronic locations need to be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

23.     Additionally, all ICE employees have access to email. ICE uses the Microsoft Outlook email system. Each ICE employee stores their files in the way that works best for that particular employee. ICE employees use various methods to store their Microsoft Outlook email files: some archive their files monthly, without separating by subject; others archive their email by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

## V.     DESCRIPTION OF PROGRAM OFFICE TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO THE PLAINTIFFS' FOIA REQUEST

24.     ICE is the principal investigative arm of DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries.

25.     ERO oversees programs and conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States. ERO manages all logistical aspects of the removal process, including domestic transportation, detention,

alternatives to detention programs, bond management, and supervised release. ERO comprises seven headquarters divisions and 24 Field Offices, and more than of 7,600 employees.

26.     When ERO receives a FOIA tasking from the ICE FOIA Office, the request is submitted to ERO's Information Disclosure Unit ("IDU"). POCs in IDU review the substance of the request. Based on subject matter expertise and knowledge of the program offices' activities within ERO, IDU forwards the FOIA request to specific individuals and component offices, and directs specific employees or offices to conduct searches of their file systems (including both paper files and electronic files) which in their judgment, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any. The employees exercise discretion, based on their operational knowledge and subject matter expertise, in choosing the specific search terms utilized to ascertain whether or not potentially responsive documentation exists. Once searches are completed, the individuals and component offices provide any potentially responsive records to the IDU POC, who in turn provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness.

## VI.    DESCRIPTION OF THE EID/IIDS WHERE RECORDS WERE LOCATED

27.     The Enforcement Integrated Database ("EID") is owned and operated by ICE and is used primarily to support the law enforcement activities of certain Department of Homeland Security ("DHS") components, including ICE and U.S. Customs and Border Protection ("CBP"). The EID is the common database repository for all records created, updated, and accessed by a number of software applications. The EID allows ICE officers to manage cases from the time of an alien's arrest, in-processing, or placement into removal proceedings, through the final case disposition (i.e., removal or granting of immigration benefits). It also contains law enforcement sensitive information relating to investigations, enforcement operations, and checks of other law enforcement databases. The EID is a

24x7 operational database with more than 55,000 users. The EID houses data and business rules that are integrated with other systems through direct database connectivity or complex interfaces.

28.     For the two FOIA requests that are the subject of this litigation, ICE conducted searches of the ICE Integrated Decision Support System ("IIDS"). The IIDS contains a subset of the EID database that is provided regularly 3 days a week. When it is provided, it completely replaces the older snapshot/extract with the new data and the older data is not retained.

29.     Additionally, the IIDS contains information that is adapted for efficient report writing. While the EID contains information needed for ICE officers and agents to advance the agency's mission to promote homeland security and public safety through the criminal and civil enforcement of federal laws governing border control, customs, trade, and immigration, the IIDS manages case information and the reporting of case information.

30.     The IIDS supports queries of the EID data for operational or executive reporting purposes. ICE queries IIDS instead of the EID to protect the integrity of the live data held in the EID operational environment and to prevent the performance of EID and the ENFORCE applications from being diminished. For the two FOIA requests that are the subject of this litigation, ICE conducted searches of the IIDS.

## VII.    THE SEARCH AND PRODUCTION FOR PLAINTIFFS' FOIA REQUESTS

### A.    FOIA REQUEST 2017-ICFO-08061

31.     On December 2, 2016, upon receipt and review of Plaintiff's FOIA Request, 2017-ICFO-08061, the ICE FOIA Office determined that because of the subject matter of the FOIA request, ERO was the one office likely to have records responsive to Plaintiffs' request. The ICE FOIA Office instructed that office to conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing.

32.    A POC in the ERO Information Disclosure Unit ("IDU") received and reviewed the request.  Based upon subject matter expertise and knowledge of the program offices' activities within ERO, IDU determined searches at the headquarters ("HQ") level for potentially responsive documentation should be conducted.  Accordingly, IDU tasked ERO Law Enforcement and Systems Analysis ("LESA,") as LESA was reasonably likely to have responsive records.

33.    Upon receipt of the initial FOIA request from IDU on December 7, 2017, a FOIA POC in LESA reviewed the substance of the request and, based on their experience and knowledge of their office's practices and activities tasked the Statistical Tracking Unit ("STU") to search for potentially responsive documentation.  From December 7-8, 2016, a STU analyst conducted a line-by-line review of the requested information taking into consideration standard reporting of detainer methodologies as well as consulted the database to query all available responsive removal information as requested from IIDS.  Upon completion of the search, LESA submitted one Excel Spreadsheet to IDU on December 21, 2016.  The responsive pages were processed by ICE FOIA and released to the Plaintiffs on January 10, 2017.  Additional details regarding ERO's search may be found in the Declaration of Marla Jones dated November 8, 2017.

**B.    FOIA REQUEST 2017-ICFO-08062**

34.    On December 2, 2016, upon receipt and review of Plaintiff's FOIA Request, 2017-ICFO-08062, the ICE FOIA Office determined that because of the subject matter of the FOIA request, ERO was the one office likely to have records responsive to Plaintiffs' request.  The ICE FOIA Office instructed that office to conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing.

35.    Upon both the initial task and after remand of the FOIA request, a POC in ERO IDU received and reviewed the request.  Based upon subject matter expertise and knowledge of the program

9

offices' activities within ERO, IDU determined searches at the HQ level for potentially responsive documentation should be conducted. Accordingly, IDU tasked LESA, as LESA was reasonably likely to have responsive records, if any.

36.    Upon receipt of the initial FOIA request from IDU on December 7, 2016, a FOIA POC in LESA reviewed the substance of the request and, based on their experience and knowledge of their office's practices and activities, tasked STU to search for potentially responsive data. From December 7-8, 2016, a STU analyst conducted a line-by-line review of the requested information taking into consideration standard reporting of detainer methodologies as well as consulted the database to query all available responsive removal information as requested from IIDS. Upon completion of the search, LESA submitted one Excel Spreadsheet to IDU on December 13, 2016. The responsive pages were processed by ICE FOIA and released to the Plaintiffs on February 2, 2017. Additional details regarding ERO's search may be found in the Declaration of Marla Jones dated November 8, 2017.

## VIII.    JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this 8th day of November, 2017.

Catrina Pavlik-Keenan, FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009