# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SUSAN B. LONG | ) |
|  | ) |
| and | ) |
|  | ) |
| DAVID BURNHAM | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| U.S. IMMIGRATION AND CUSTOMS | ) |
| ENFORCEMENT | ) |
| Defendant. | ) |

Civil Action No. 17-cv-00506
(BKS/TWD)

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S</u>
## <u>MOTION FOR SUMMARY JUDGMENT</u>

Date: November 8, 2017

GRANT C. JAQUITH
Acting United States Attorney
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261

By:    Charles E. Roberts
Assistant United States Attorney
Bar Roll No. 102454

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... i

FACTUAL BACKGROUND ..........................................................................................1

ARGUMENT ................................................................................................................1

    I.     GENERAL LEGAL STANDARDS ...................................................................1

           A.  The Freedom of Information Act .......................................................................1

           B.  Standard of Review...........................................................................................2

           C.  The Law of Adequate Search.............................................................................2

    II.    ICE PERFORMED A REASONABLE SEARCH ..................................................3

    III.   ICE IDENTIFIED AND PRODUCED RESPONSIVE,
          NON-EXEMPT AGENCY RECORDS ...............................................................5

           A.  Applicable Legal Standard.................................................................................5

           B.  ICE Complied with FOIA's "Agency Record" Standard in
               Responding to Plaintiffs' Requests...................................................................6

           C.  ICE Did Not Provide Three Categories of Data Points,
               Which Was Appropriate Under FOIA ................................................................8

              1.  Certain Data Points Requested by Plaintiffs Sought to Obtain
                   Answers to Questions, Not the Production of Records................................8

              2.  Certain Data Points Requested by Plaintiffs Were Not Reasonably
                   Described and/or Did Not Exist in the Form Requested...........................11

               3.  Certain Data Points Requested by Plaintiffs Do Not Exist........................15

CONCLUSION.............................................................................................................17

# TABLE OF AUTHORITIES

## Case Law

*Adamowicz v. IRS*, 552 F. Supp. 2d 355 (S.D.N.Y. 2008)................................................................3

*Adams v. FBI*, 572 F. Supp. 2d 65 (D.D.C. 2008) .........................................................................8

*Amnesty International USA v. CIA*, No. 07 Civ. 5435(LAP), 2008 WL 2519908,
    (S.D.N.Y. June 19, 2008)......................................................................................................9

*Assassination Archives & Research Ctr., Inc. v. CIA*, 720 F. Supp. 217 (D.D.C. 1989) ..............13

*Bailey v. Callahan*, Action No. 3:09MC10, 2010 WL 924251 (E.D. Va. Mar. 11, 2010) ...........13

*Barber v. Office of Info. & Privacy*, No. 02-1748, slip op. at 4 (D.D.C. Sept. 4, 2003),
    *aff'd*, No. 03-5266 (D.C. Cir. Feb. 20, 2004) ...................................................................13

*Blakey v. Dep't of Justice*, 549 F. Supp. 362 (D.D.C. 1982),
    *aff'd*, 720 F.2d 215 (D.C. Cir. 1983) ...............................................................................13

*Carney v. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994).............................................................2, 3

*Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002)...................................................................12

*Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) .................................................................5

*DiViaio v. Kelley*, 571 F.2d 538 (10th Cir. 1978)........................................................................8

*Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*. 217 F. Supp. 3d 608
    (N.D.N.Y. 2016) ................................................................................................................2

*Forsham v. Harris*, 445 U.S. 169 (1980).....................................................................................12

*Frank v. Dep't of Justice*, 941 F. Supp. 4 (D.D.C. 1996) .............................................................9

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999)..............................................2, 3

*Hudgins v. IRS*, 620 F. Supp. 19 (D.D.C. 1985),
    *aff'd*, 808 F.2d 137 (D.C. Cir. 1987),
    *cert. denied*, 484 U.S. 803 (1987).....................................................................................8

*Iturralde v. Comptroller of Currency*, 315 F.3d 311 (D.C. Cir. 2003)...........................................3

*Ivey v. Dep't of Justice Executive Office for United States Attorneys*, No. 7:13–CV–00917

(MAD/TWD), 2015 WL 507219 (N.D.N.Y. Feb. 6, 2015) .................................................2

*Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125 (D.C. Cir. 2005) .........................................5

*Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19 (D.D.C. 2000).............................2

*Keys v. DHS*, Civ. No. 08-0726(ESH/AK), 2009 WL 614755 (D.D.C. Mar. 10, 2009) ...............13

*Kowalczyk v. DOJ*, 73 F.3d 386 (D.C. Cir. 1996) .........................................................................13

*Krohn v. Dep't of Justice*, 628 F.2d 195 (D.C. Cir.1980)................................................................8

*Latham v. Dep't of Justice*, 658 F. Supp. 2d 155 (D.D.C. 2009)...................................................12

*Long v. Office of Pers. Mgmt.*, 692 F.3d 185 (2d Cir. 2012)...........................................................2

*Manfredonia v. SEC*, No. 08-cv-1678(SLT)(LB), 2009 WL 4505510
(E.D.N.Y. Dec. 3, 2009) ...................................................................................................12

*Marrera v. Dep't of Justice*, 622 F. Supp. 51 (D.D.C. 1985) .........................................................4

*Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986) .....................................................................13

*Maynard v. C.I.A.*, 986 F.2d 547 (1st Cir. 1993)............................................................................3

*Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233 (D.D.C. 2012)................................................5

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)...............................................................8, 12

*Oglesby v. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ................................................................4

*Perry v. Block*, 684 F.2d 121 (D.C. Cir. 1982) ..............................................................................3

*Rozema v. Dep't of Health and Human Servs.*, 167 F. Supp. 3d 324 (N.D.N.Y. 2016),
*aff'd* 682 F. App'x 72 (2d Cir. 2017)..................................................................................2

*Ruotolo v. Dep't of Justice*, 53 F.3d 4 (2d Cir. 1995)...................................................................12

*Schladetsch v. Housing and Urban Dev.*, No. 99-0175, 2000 WL 33372125
(D.D.C. Apr. 4, 2000) .........................................................................................................6

*Spannaus v. Dep't of Justice*, 824 F.2d 52 (D.C. Cir. 1987) ........................................................12

*Stuler v. IRS*, No. 05-CV-1717, 2006 WL 891073 (W.D. Pa. Mar. 31, 2006) ..............................16

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997) ...................................................13

*Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985) .......................................................13

*Wilbur v. CIA*, 355 F.3d 675 (D.C. Cir. 2004)......................................................1, 12

*Williams v. Ashcroft*, 30 F. App'x 5 (D.C. Cir. 2002) ...............................................13

*Yeager v. DEA*, 678 F.2d 315 (D.C. Cir. 1982) ........................................................12

*Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985) .........................................................9

## **Statutes**

5 U.S.C. § 552(a)(3)(A),(4)(B) ...............................................................1, 12, 13

5 U.S.C. § 552(b) ...............................................................................................1

Fed. R. Civ. P 56 ...............................................................................................2

## **Secondary**

6 C.F.R. § 5.3(b) ..............................................................................................12

6 C.F.R. § 5.4(i)(2)............................................................................................6

H.R. Rep. No. 93-876 (1974), 1974 U.S.C.C.A.N. 6271 ...........................................12

H.R. Rep. No. 104-795, pt. 4, at 22,
    *reprinted in* 1996 U.S.C.C.A.N. 3448, 3465 ....................................................5

iii

Defendant United States Immigration and Customs Enforcement ("ICE") provides this memorandum in support of its motion for summary judgment in this Freedom of Information Act ("FOIA") case. ICE has satisfied all of its obligations with respect to Plaintiffs' FOIA requests. ICE has conducted adequate searches for responsive records and appropriately provided responsive records to Plaintiffs. Because no genuine disputes of material fact exist, ICE respectfully requests that the Court grant its motion for summary judgment and dismiss Plaintiffs' Complaint with prejudice.

## FACTUAL BACKGROUND

Defendant hereby incorporates its Statement of Material Facts Not in Dispute, the accompanying declarations, and the exhibits referenced therein.

## ARGUMENT

**I.    GENERAL LEGAL STANDARDS.**

**A.    The Freedom of Information Act.**

FOIA requires federal agencies to release all records responsive to a request for production unless a specific exemption is applicable. *See* 5 U.S.C. § 552(a)(3)(A),(4)(B); 5 U.S.C. § 552(b). When a FOIA requester properly exhausts his administrative remedies, he may file a civil action challenging an agency's response to its request. *See* 5 U.S.C. § 552(a)(4)(B); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). Once such an action is filed, the agency generally has the burden of demonstrating that its response to the plaintiff's FOIA request was appropriate. *See id.* at 678.

**B.    Standard of Review**

FOIA disputes (including, as here, the issue of the adequacy of an agency's search for documents) are generally resolved by summary judgment. *See, e.g., Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment is warranted if a movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The standard for granting summary judgment generally was discussed by this Court in *Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*. 217 F. Supp. 3d 608, 622 (N.D.N.Y. 2016) (Sannes, J); *see  Rozema v. Dep't of Health and Human Servs.*, 167 F. Supp. 3d 324 (N.D.N.Y. 2016) (Suddaby, J.), *aff'd* 682 F. App'x 72 (2d Cir. 2017); *Ivey v. Dep't of Justice Executive Office for United States Attorneys*, No. 7:13–CV–00917 (MAD/TWD), 2015 WL 507219 (N.D.N.Y. Feb. 6, 2015) (D'Agostino J.) (discussing the use of summary judgment in FOIA cases).  "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search . . . are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812 (footnote omitted).

**C.    The Law of Adequate Search**

The government does not have a heavy burden in defending the searches it performed— each agency need only show "that its search was adequate." *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quoting *Carney*, 19 F.3d at 812).  A search is judged by the efforts the agency undertook, not by its results: the agency must demonstrate that its search was "reasonably calculated to discover the requested documents," not that the search "actually uncovered every document extant." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). The search "need not be perfect, but rather need only be reasonable," *id.*, because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000).

Provided it is properly designed, an agency's search may be reasonable even if it does not return every responsive document. *See Adamowicz v. IRS*, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008).

Once the government submits declarations describing a reasonable search,[1] those declarations are accorded a presumption of good faith, and the Court may award summary judgment on the declarations alone. *Carney*, 19 F.3d at 812; *see Grand Cent. P'ship*, 166 F.3d at 489. Such declarations may be made by the individuals supervising each agency's search, rather than by each individual who participated. *Carney*, 19 F.3d at 814. Where an agency's declaration demonstrates that it has conducted a reasonable search, "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993); *see also Carney*, 19 F.3d at 812. "[P]urely speculative claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption. *Carney*, 19 F.3d at 813 (internal citations and quotations omitted).

## II.    ICE PERFORMED A REASONABLE SEARCH.

There is no material doubt that the searches ICE conducted for responsive records were adequate.

The ICE FOIA Office determined, based on the subject matter of Plaintiffs' FOIA requests (Dkt Nos. 1-1 and 1-5) and its knowledge of ICE operations, that there was one office that potentially had responsive records to the request: the ICE Office of Enforcement and Removal Operations ("ERO"). Accordingly, the ICE FOIA Office tasked ERO to search for records responsive to Plaintiffs' FOIA requests, instructing ERO to conduct a comprehensive search for

---

[1] To describe a reasonable search, a declaration should explain "the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials . . . were searched." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (citation and internal quotation marks omitted). The declaration need not "set forth with meticulous documentation the details of an epic search . . . ." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

records and to provide all records located during that search to the ICE FOIA Office for review and processing. An agency is not obligated to search every office that is unlikely to have responsive records. *See Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("There is no requirement that an agency search every record system."); *Marrera v. Dep't of Justice*, 622 F. Supp. 51, 54 (D.D.C. 1985) (noting that an agency is not required to "search every division or field office in response to a FOIA request").

As is the practice within ICE, designated points of contact ("POC") within each program office reviewed the FOIA request, and, based on their experience and knowledge of their program office practices and activities, forwarded the request and instructions to the individual employees or component offices within the program office that they believed were reasonably likely to have responsive records, if any. Then the individuals and component offices conducted searches of their file systems, which, in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents.

With respect to ERO, a POC within ERO's Information Disclosure Unit ("IDU") reviewed the FOIA requests and the ICE FOIA Office's instructions, and based on experience and knowledge of ERO's practices and activities, tasked the ERO Law Enforcement and Systems Analysis ("LESA") Statistical Tracking Unit ("STU") to conduct searches for responsive records. A STU analyst conducted a line-by-line review of the requested information in both FOIA Requests, taking into consideration standard reporting of detainer methodologies as well as consulting the database to query all available responsive detainer information as requested from the ICE Integrated Decision Support System ("IIDS") Pavlik-Keenan Decl. ¶¶ 33, 36; Jones Decl. ¶¶ 18, 31.

4

## III.    ICE IDENTIFIED AND PRODUCED RESPONSIVE, NON-EXEMPT AGENCY RECORDS.

### A.    Applicable Legal Standard.

The Supreme Court has articulated a two-part test for determining what constitutes "agency records" under the FOIA: "Agency records" are records that are (1) either created or obtained by an agency, and (2) under agency control at the time of the FOIA request. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45 (1989) (holding that court opinions in agency files are agency records); *see, e.g., Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 132 (D.C. Cir. 2005) (holding that records of agency employees detailed to National Energy Policy Development Group ("NEPDG"), chaired by the Vice President, were not agency records when "as a practical matter," detailees were employees of NEPDG, not of agency).

In responding to a FOIA request for "aggregate data," an agency need not create a new database or reorganize its method of archiving data, but if the agency already stores records in an electronic database, searching that database does not involve the creation of a new record. *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012). Likewise, sorting a pre-existing database of information to make information intelligible does not involve the creation of a new record because, as Congress noted in the legislative history to the E–FOIA Amendments, "[c]omputer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information." H.R. Rep. No. 104-795, pt. 4, at 22, *reprinted in* 1996 U.S.C.C.A.N. 3448, 3465. Sorting a database by a particular data field (e.g., date, category, title) is essentially "the application of codes or some form of programming," and thus does not involve creating new records or conducting research—it is just another form of searching that is within the scope of an agency's duties in responding to FOIA requests. *Id.* Further, extracting and compiling data does not amount to the creation of a new record as to any

discrete pieces of information that the agency does possess in its databases and which are sought by Plaintiffs. *See Schladetsch v. Housing and Urban Dev.*, No. 99-0175, 2000 WL 33372125, at *3 (D.D.C. Apr. 4, 2000).

DHS's regulations comply with these legal standards. The DHS regulation found at 6 C.F.R. § 5.4(i)(2) governs the "business as usual" approach that DHS, and DHS components apply when dealing with electronic records and searches. It states "[a] 'business as usual' approach exists when the component has the capability to process a FOIA request for electronic records *without* a significant expenditure of monetary or personnel resources. Components are not required to conduct a search that does not meet this business as usual criterion." 6 C.F.R. § 5.4(i)(2) (emphasis added). "Creating a computer program that produces specific requested fields or records contained within a well-defined database structure usually is considered business as usual." 6 C.F.R. § 5.4(i)(2)(ii). "However, creating a computer program to merge files with disparate data formats and extract specific elements from the resultant file is not considered business as usual[.]" *Id.* "Components are not required to perform special services and creation of a computer program for a fee is up to the discretion of the component and is dependent on component resources and expertise." *Id.*

DHS Regulation 6 C.F.R. § 5.4(i)(3) governs data links and states that "[c]omponents are not required to expend DHS funds to establish data links that provide real time or near-real-time data to a FOIA requester." 6 C.F.R. § 5.4(i)(3).

### B.    ICE Complied with FOIA's "Agency Record" Standard in Responding to Plaintiffs' Requests.

Plaintiffs' FOIA Request #1 (Dkt. No. 1-1) sought a total of 148 data points, including sub-bulleted data points contained within the 112 primary line items requested. LESA provided 72 data points to the Plaintiffs in the January 10, 2017 response (Ex. 3). There were 76 data points

that Plaintiffs requested that ICE did not provide. Jones Decl. ¶ 19. When responding to each data point that was requested, STU's initial determination was whether or not ERO has the specific data point stored in IIDS as requested in the FOIA request. If the data point exists within IIDS and does not require additional research, analysis, assumptions and/or calculations, or the creation of a new record, ICE provided the data point in in the responsive Excel spreadsheet (72 data points). *See*[2] Jones Decl. ¶ 20.

Plaintiffs' FOIA Request #2 (Dkt. No. 1-5) contained a total of 132 data points, including sub-bulleted data points contained within the 112 primary line items requested. LESA provided 46 data points to the Plaintiffs in the February 2, 2017 response. There were 86 data points that were requested by the Plaintiffs that ICE did not provide. Jones Decl. ¶ 32. When responding to each data point that was requested, STU's initial determination was whether or not ERO has the specific data point stored in IIDS as requested in the FOIA request. If the data point exists within IIDS and does not require additional research, analysis, assumptions and/or calculations, or the creation of a new record, ICE provided the data point in in the responsive Excel spreadsheet (46 data points.) Jones Decl. ¶ 33.

To provide the 72 data points for FOIA Request #1 (Dkt. No. 1-1), and the 46 data points for FOIA Request #2 (Dkt. No. 1-5), a STU analyst conducted a line-by-line review of the requested information taking into consideration standard reporting of detainer methodologies as well as consulting the database to query all available responsive removal information as requested from IIDS. Jones Decl. ¶ 21, 34.

---

[2] Exhibit 3 – CD of Excel Spreadsheet from January 2017 in response to FOIA request No. 1 is provided on a CD;
Exhibit 4 – CD of Excel Spreadsheet from October 2017 in response to FOIA request No. 2 is provided on a CD.

C.    **ICE Did Not Provide Three Categories of Data Points, Which Was Appropriate Under FOIA.**

1.    *Certain Data Points Requested by Plaintiffs Sought to Obtain Answers to Questions, Not the Production of Records.*

ICE did not produce certain data requested by Plaintiffs because the request in effect asked a question or constituted an implied question, the answers to which that do not exist in the database in the manner requested, and would require research, analysis, assumptions, and/or calculations, and thus would ultimately lead to the creation of a new record that did not previously exist. Indeed, in order to provide these requested data points, a STU analyst would have to research potential data values in IIDS, the operational use of those values inputted by officers that do exist, and make further assumptions that these data values would answer questions posed by Plaintiffs. These additional efforts would include the creation of new records in response to the questions and implied questions submitted by Plaintiffs in their FOIA request. Jones Decl. ¶¶ 24, 37. For this reason, ICE did not produce nineteen (19) data points requested in FOIA Request #1 and nineteen (19) data points requested in FOIA Request #2 (Dkt. No. 1-5). Jones Decl. ¶¶ 25, 38.

FOIA does not require agencies to conduct research by "answer[ing] questions disguised as a FOIA request[.]" *Adams v. FBI*, 572 F. Supp. 2d 65, 68 (D.D.C. 2008) (quoting *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987), *cert. denied*, 484 U.S. 803, 108 S. Ct. 47, 98 L. Ed. 2d 12 (1987) (citations omitted)). "FOIA neither requires an agency to answer questions disguised as a FOIA request . . . or to create documents or opinions in response to an individual's request for information." *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987) (internal citations omitted); *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 162 (1975); *Krohn v. Dep't of Justice*, 628 F.2d 195, 197–98 (D.C. Cir.1980); *DiViaio v. Kelley*, 571 F.2d 538, 542–43 (10th Cir. 1978);. Agencies are also "not required, by FOIA or by any other statute, to dig out all the information that might exist, in

whatever form or place it might be found, and to create a document that answers plaintiff's question." *Frank v. Dep't of Justice*, 941 F. Supp. 4, 5 (D.D.C. 1996); *see Zemansky v. EPA*, 767 F.2d 569, 574 (9th Cir. 1985). For example, in *Amnesty International USA v. CIA*, No. 07 Civ. 5435(LAP), 2008 WL 2519908, at *12–13 (S.D.N.Y. June 19, 2008), the court rejected a claim that an agency had a duty to compile a list of persons it deemed the subjects of "secret detention" and search for records related to them in order to respond to a FOIA request for "secret detention" records because, in essence, the FOIA request sought an answer to a question. *Id.*

Here, Plaintiffs sought data points disguised as questions. For example, item #8 asked: "Following the preparation of the Form I-247/I-247D, ICE administratively arrested individual (yes/no); if yes, date of ICE arrest." Dkt. No. 1-5. A response to this inquiry requires the searcher to conduct additional research/analysis/assumptions. This requires a STU analyst to assume that for a single alien, ICE issued a single detainer, when it is possible more than one was issued. It then requires that ICE assume that an arrest following an issuance of a detainer was the result of the detainer, which appears to be an implied question in Plaintiff's request. However, the EID contains no data point to reflect that ICE arrested an alien as a result of a detainer. Even overcoming these operational and reporting limitations, STU would then be required to create a new data model to: (1) identify the relationship between detainers and arrests; (2) analyze if it falls after the detainer preparation to identify the implied relationships; and (3) create a calculation based upon the findings to create a new record that did not previously exist. Jones Decl. ¶ 24.

A second example, item #25 asked: "U.S. citizen spouse (yes/no)." This would also require additional research/analysis/assumptions as there is no data set in any ICE system where ICE records the existence of a spouse, much less whether the spouse is a citizen. Dkt. No. 1-5. While an officer does have the ability to record information on relatives in case notes, there is no

requirement to identify citizenship much less confirm that accuracy of the self-reported information. Aside from the operational limitations, the analyst would be required: (1) to build a new data model concept to comprehensively identify an "alien" record and all reported spousal records recorded for the "alien" record in the system; (2) append the current data model in order to pull all relative information for these identified aliens who had a detainer prepared in the requested timeframe; (3) analyze citizenship claims and create a flag for U.S. citizenship while making further assumptions that an empty cell would imply either they are not married or other citizenships for spouses must be Non-U.S. Citizenship. This would result in the creation of a new record as these are all currently data elements that ICE does not track or record in a reportable manner, and thus these data elements do not exist in the IIDS database. Jones Decl. ¶ 24.

As a third example, item #9 asked: "Following the preparation of the Form I-247N, individual was booked into ICE Custody (yes/no) . . . ." Dkt. No. 1-5. This would require additional research/analysis/assumptions because it requires STU to make assumptions that the many detainers that may be issued to an alien during a time frame resulted in one detention in ICE custody that occurred on or after the detainer preparation with no indication in the system of record recorded by the officer that the particular ICE detention was a result of the detainer record as implied by the question despite there also being no defined time period post- detainer preparation to confirm this relationship. Even overcoming these operational and reporting limitations, STU would then be required to create a new data model to: (1) identify the relationship between detainers and ICE detentions; (2) analyze if it falls after the detainer preparation to identify the implied relationships; and (3) and create a calculation based upon the findings to create this new record that did not previously exist nor currently exists or is tracked by ICE. Jones Decl. ¶ 37.

As a fourth example, item #42 asked for "aggravated felon (yes/no)." Dkt. No. 1-5. This would require additional research/analysis/assumptions because the only values that are recorded by an officer in the system of record related specifically to aggravated felonies are to identify the type of aggravated felonies. Officers are not required to record supporting information with the Aggravated Felon Type Code or any other criminal information that is recorded in the system of record. This requires STU to: (1) build a data model to analyze all criminal information entered, including attempting to reconcile the "Aggravated Felon Type" that is provided in #43; (2) make operational assumptions based upon potential contradictory data for this new definition of an aggravated felon; and (3) create a new record to identify an aggravated felon in the system as, ICE does not track this particular data point. Jones Decl. ¶ 37.

Answering questions and creating records for these types of data requests is not required by the FOIA.

### 2.    *Certain Data Points Requested by Plaintiffs Were Not Reasonably Described and/or Did Not Exist in the Form Requested.*

Certain data requested by Plaintiffs does not exist in the database as requested and would require ICE to make interpretations and assumptions before building and creating a new record based on additional analysis and calculations because Plaintiffs' requests are not reasonably specific. In order to provide records that fall into this category, a STU analyst would have to research potential data values in IIDS, the operational use of those values inputted by officers that do exist and make further assumptions that these data values satisfy the intent of the requested terms. This additional analysis will include the creation of calculations, as well as new data search and query methodologies because they relate to data that ICE does not track in the manner the data was requested. Jones Decl. ¶ 26, 39. In other words, the discrete piece of information sought by

Plaintiffs does not exist in the database as requested. A STU analyst would have to make interpretations and assumptions (not reasonably described by Plaintiffs) before conducting additional analysis, research, and calculations, and then create a new piece of discrete information that did not exist previously, resulting in the creation of a new record. For this reason, ICE did not produce forty (40) data points requested in FOIA Request #1 and forty (40) data points requested in FOIA Request #2. Jones Decl. ¶¶ 27, 40.

It is well-settled that "FOIA imposes no duty on the agency to create records." *Forsham v. Harris*, 445 U.S. 169, 186 (1980); *see Sears*, 421 U.S. at 161–62;. A FOIA requester "is entitled only to records that an agency has in fact chosen to create and retain" and "an agency is not required by FOIA to create a document that does not exist in order to satisfy a request." *Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982) (citing *Sears*, 421 U.S. at 161–62). Here, the agency has produced all data points requested by Plaintiffs that existed as agency records.

FOIA also requires that a request "reasonably describe" the records sought. 5 U.S.C. § 552(a)(3)(A). A reasonable description of records is "one that enables 'a professional employee of the agency who [is] familiar with the subject area of the request to locate the record with a reasonable amount of effort.'" *Ruotolo v. Dep't of Justice*, 53 F.3d 4, 10 (2d Cir. 1995) (alterations in original) (quoting FOIA's legislative history, H.R. Rep. No. 93-876 (1974), 1974 U.S.C.C.A.N. 6271). DHS's FOIA regulations require that a requestor "must describe the records that you seek in sufficient detail to enable [Department] personnel to locate them with a reasonable amount of effort. . . . To the extent possible, requesters should include specific information [about each record sought], such as the date, title or name, author, recipient, [and] subject matter of the record . . . ." 6 C.F.R. § 5.3(b).[3] The agency must be able to determine "precisely" which records are being

---

[3]    Some courts view a requestor's failure to reasonably describe the records sought as a failure to exhaust administrative remedies. A plaintiff must exhaust its administrative remedies before filing a FOIA

requested. *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (citation and internal quotation

marks omitted). The agency then is obligated to perform a "reasonable" search in response to the

request framed by the requestor. *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986);

*Zemansky v. EPA*, 767 F.2d 569, 571–73 (9th Cir. 1985). An agency, however, is "not obliged to

look beyond the four corners of the request for leads to the location of responsive documents."

*Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996); *see Williams v. Ashcroft*, 30 F. App'x 5, 6

(D.C. Cir. 2002) (agency need not look for records not sought in initial FOIA request).

FOIA requires requests to be reasonably described because "FOIA was not intended to

reduce government agencies to full-time investigators on behalf of requesters." *Assassination

Archives & Research Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989); *see Bailey v.

Callahan*, Action No. 3:09MC10, 2010 WL 924251, at *4 (E.D. Va. Mar. 11, 2010) ("FOIA

entitles citizens to the disclosure of documents, but does not oblige the government to answer their

questions or establish a research service."). FOIA "was not intended to compel agencies to become

ad hoc investigators for requesters whose requests are not compatible with their own information

retrieval systems" and agencies have "no duty to conduct research or to answer questions." *Blakey

v. Dep't of Justice*, 549 F. Supp. 362, 366–67 (D.D.C. 1982), *aff'd*, 720 F.2d 215 (D.C. Cir. 1983)

---

complaint in court. *See, e.g., Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam); *Spannaus v. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987); *Manfredonia v. SEC*, No. 08-cv-1678(SLT)(LB), 2009 WL 4505510, at *5 (E.D.N.Y. Dec. 3, 2009). In order to exhaust administrative remedies, a plaintiff must submit a valid FOIA request that complies with applicable regulations. *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002) ("An agency's obligations commence upon receipt of a valid [FOIA] request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies."); *see also Manfredonia*, 2009 WL 4505510, at *5; *Latham v. Dep't of Justice*, 658 F. Supp. 2d 155, 159 (D.D.C. 2009). A valid FOIA request is one that "reasonably describes" the records requested and "is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed . . . ." 5 U.S.C. § 552(a)(3)(A). Thus, "[a] FOIA requester may be deemed to have failed to exhaust administrative remedies when the requestor has, *inter alia*, failed to reasonably describe the records being sought . . . ." *Keys v. DHS*, Civ. No. 08-0726(ESH/AK), 2009 WL 614755, at *4 (D.D.C. Mar. 10, 2009).

(unpublished table decision); *Barber v. Office of Info. & Privacy*, No. 02-1748, slip op. at 4 (D.D.C. Sept. 4, 2003), *aff'd*, No. 03-5266 (D.C. Cir. Feb. 20, 2004) (per curiam).

Here, Plaintiffs requested data points, and many were not reasonably described and sufficiently detailed. The agency performed a reasonable interpretation and a reasonable search based on the data points listed, but to the extent that a data point was unclear, not reasonably descriptive, and not precise, the agency was not able to provide the data point beyond what a reasonable interpretation and search would produce.

For example, item #29 asked for "most serious criminal charge [any charge, not restricted to convictions]." Dkt. No. 1-5. A response to this request would require interpretations and assumptions because this field does not exist within IIDS. This would require a STU analyst to (1) interpret or create a definition of the data point requested because it doesn't exist; (2) review and develop a new method to query or pull data under this new definition which requires technical modifications that require further validation, testing, and approval; and (3) perform assumptions and calculations to create a new record that did not exist in IIDS prior to this FOIA request. Jones Decl. ¶ 26.

As a second example, item #14 asked for "earliest date reflecting presence in [the] U.S." Dkt. No. 1-5. This would require a STU analyst to make interpretations and make assumptions. First, there is no corresponding data point for "Earliest entry data". Second, because the only field for "entry date" is not a mandatory field in EARM that officers are required to enter into the database. ICE cannot confirm "earliest date" in the U.S., as an alien may have been present in the U.S. for years prior to coming into contact with ERO. This requires a STU analyst to assume the "earliest date reflecting presence in the U.S." would be the earliest entry date recorded in the system of record for the alien that has the detainer placed. Based upon these assumptions and

interpretations, the STU analyst would then be required to: (1) interpret or create a definition of the data point requested (including comprehensively identifying all recorded entry dates for a single alien), because the requested data point doesn't exist; (2) review and develop a new method to pull data under this new definition which requires technical modifications that require further validation, testing, and approval; and (3) finally, perform assumptions and calculations to create a new record for a data point that does not exist in IIDS for this FOIA request. Jones Decl. ¶ 26.

As a third example, item #35 asked for "most serious criminal conviction offense." Dkt. No. 1-5. A response to this request would require interpretations and assumptions because this field does not exist within IIDS. This would require a STU analyst to (1) interpret or create a definition of the data point requested because it doesn't exist; (2) review and develop a new method to query or pull data under this new definition which requires technical modifications that require further validation, testing, and approval; and (3) perform assumptions and calculations to create a new record that did not exist in IIDS prior to this FOIA request. Jones Decl. ¶ 39.

As a fourth example, item #55 (1)-(5) asked for "ICE Priority indicator(s)" with further subcategories, and do not exist in the database as written. Dkt. No. 1-5. These "ICE Priorities indicator(s)," including the subcategories, require assumptions to be made as what these indicators reference. These said "ICE Priorities indicator(s)" are not captured in the system by the officer, and operationally, have no relevancy towards the detainer population(s). From a technical standpoint in order to create a new record to satisfy this request, STU would have to (1) interpret or create develop definitions based on a series of assumptions that do not align with operational reporting or current ICE policies, (2) define the business requirements and append the data model for detainers, (3) create calculations, including a prioritization, to assign "indicators" that may or

may not be accurate, and finally (4) creates a series of new records that did not exist prior to this FOIA request. Jones Decl. ¶ 39.

Having to make interpretations and assumptions before conducting research, which would ultimately end up with the creation of new records, is not required by FOIA.

### 3.    *Certain Data Points Requested by Plaintiffs Do Not Exist.*

ICE also did not produce certain data requested by Plaintiffs because such data does not exist in the database as written. Jones Decl. ¶ 28, 41. For this reason, ICE did not produce seventeen (17) data points requested in FOIA Request #1 (Dkt. No. 1-1) and twenty-seven (27) data points requested in FOIA Request #2 (Dkt. No. 1-5). Jones Decl. ¶¶ 29, 42.

For example, item #63 asked for "name of the original arresting or conviction authority." Dkt. No. 1-5. IIDS does not contain the name of the original arresting or conviction authority, and there is nowhere that requires the officer to record this information operationally in ERO's databases. Jones Decl. ¶ 28.

As a second example, item #108 asked for "Sequence number or other designation to identify records relating to the same alien." Dkt. No. 1-5. IIDS does not contain one single identifier for the same 'alien' that would then be sequential in nature and carry across each Data Extract, Transform, Load (ETL) cycle change. Jones Decl. ¶ 28.

As a third example, item #69(4) asked for "level of security" as a sub-bullet for #69 "type of facility in which the individual was detained where the Form I-247N was sent including[.]" Dkt. No. 1-5. IIDS does not contain the level of security of an original arresting or conviction authority and is unable to report this. Jones Decl. ¶ 41.

As a fourth example, items #102–104 asked for "DTA_REQ_ACCEPT_IND", "DTA_REQ_DEATH_TRANSF_IND", and "DTA_REQ_ENVELOPE_IND" and are all examples of historical data fields that no longer exist on the Form I-247N form, and therefore are not captured in the system of record for the requested population and cannot be reported on. Jones Decl. ¶ 41.

As noted above, an agency "is not required to create documents that don't exist." *Stuler v. IRS*, No. 05-CV-1717, 2006 WL 891073, at *3 (W.D. Pa. Mar. 31, 2006). Consequently, ICE properly did not produce this category of data points requested by Plaintiffs.

## CONCLUSION

The declarations filed herein and attached exhibits demonstrate that ICE has met its obligations under FOIA and establish that there are no genuine issues as to any material fact in this case. Accordingly, for the reasons set forth above, ICE respectfully requests that this Court grant summary judgment in its favor.

Dated: November 8, 2017                GRANT C. JAQUITH
                                        Acting United States Attorney

By: _____
             Charles E. Roberts
             Assistant United States Attorney
             Bar Roll No. 102454