UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

SUSAN B. LONG

and

DAVID BURNHAM,

                        Plaintiffs,

        -against-

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT,

                        Defendant.

Case No. 5:17-cv-00506-BKS-TWD

**DECLARATION OF WARD J. OLIVER IN SUPPORT OF PLAINTIFFS' CROSS-MOTION**

---

Ward J. Oliver, an attorney admitted to practice law in the State of New York, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a Supervising Attorney of the Criminal Defense Practice working with the Immigration Law Unit of The Legal Aid Society ("LAS"). I have specialized in the intersection of criminal law and immigration law for the past fourteen years.

2. I make this declaration in support of Plaintiffs' Cross-Motion in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge and the information and experiences of the attorneys of the LAS Criminal Defense Practice and Immigration Law Unit.

3. The LAS Criminal Defense Practice has a long history of legal practice at the intersection of the criminal and immigration laws. The LAS Immigration Law Unit was the first legal services provider in New York City to specialize in the representation of non-citizen individuals whom the Immigration and Naturalization Service and then, its replacement, the

Department of Homeland Security, has sought to remove from the United States. Since the 1980's, the LAS Criminal Defense Practice has been providing legal advice to non-citizen clients charged with criminal offenses. Its most recent initiative began in 2003, when the Criminal Practice dedicated two full-time attorney positions to providing legal advice regarding the immigration consequences of arrests and convictions for our non-citizen clients.

4. In 2010, the United States Supreme Court decided *Padilla v. Kentucky*, 559 U.S. 356 (2010), holding that a lawyer for a non-citizen defendant has an obligation under the Sixth Amendment to give the client competent legal advice regarding immigration consequences before resolving their criminal cases. In that decision, the court abandoned the prior doctrine that immigration consequences were collateral to the criminal case, holding instead that the immigration consequences are intertwined with the criminal case and that "'[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" 559 U.S. at 368 (quoting *INS v. St. Cyr*, 533 U.S. 289, 322 (2001)).

5. Since 2010, advice concerning the immigration consequences of criminal convictions has become an even more significant portion in the work of the Criminal Defense Practice. Almost 40% of New York City is foreign-born. Our non-citizen clients include lawful permanent residents, refugees, asylees, individuals who have entered the country on nonimmigrant visas such as tourists and students, recipients of Deferred Action for Childhood Arrivals and Temporary Protected Status, and persons who have no current documentation of lawful status. Among those who are undocumented, we have many clients who will nonetheless be able to fight removal successfully – because, for example, they have been neglected or abused, or were the victims of crime, or have family ties to individuals who are either United States Citizens or have legal immigration status.

6. Since about 2004, the New York City Department of Correction has received "detainers" from the Immigration and Customs Enforcement of the Department of Homeland Security ("ICE") regarding non-citizen individuals in Correction custody against whom ICE intends to commence removal proceedings. Over the years, the Department of Correction has, to varying degrees, honored these detainers and requests for information, depending only upon the restrictions imposed by local law that are in effect at the time of the request. The subjects of these detainers run the gamut of our non-citizen client population, from lawful permanent residents to the undocumented. As a result, understanding the legal basis for the detainer, why it was lodged, and whether it will be honored, as well as whether the individual will be able to fight removal by applying for some form of legal status, has become a component of the legal representation the Criminal Defense Practice provides our non-citizen clients in New York City.

7. In January 2017, ICE abandoned its Priority Enforcement Program and replaced it with an initiative known as Secure Communities. The published guidelines of the Priority Enforcement Program generally enabled us to predict which of our non-citizen clients ICE would seek to detain. Secure Communities, in contrast, has no clearly stated criteria or priorities, its only stated purpose being the enforcement of the immigration laws of this country. As a result, facts regarding who ICE is seeking to arrest through the issuance of detainers has become even more important to our practice. I have reviewed the TRAC web sites and believe that the information that TRAC has been collecting regarding ICE detainers is valuable to the advocacy of the Legal Aid Society.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Signed this 22nd day of December, 2017.

Ward J. Oliver

*Digitally signed by Ward J. Oliver*
*DN: cn=Ward J. Oliver, o=Legal Aid Society, ou, email=wjoliver@legal-aid.org, c=US*
*Date: 2017.12.22 16:24:10 -05'00'*

Ward J. Oliver
Supervising Attorney
The Legal Aid Society
199 Water Street
New York, New York 10038