UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

SUSAN B. LONG

and

DAVID BURNHAM,

Plaintiffs,

-against-

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT,

Defendant.

Case No. 5:17-cv-00506-BKS-TWD

---

## MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
## IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

December 22, 2017

Mona Houck (Bar Roll No.: 520599)
Terence P. Keegan (Bar Roll No.: 520598)
Miller Korzenik Sommers Rayman LLP
488 Madison Avenue, Suite 1120
New York, New York 10022-5702
(212) 752-9200

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT .......................................................... 1

BACKGROUND ............................................................................ 2

ARGUMENT .................................................................................. 4

    I.      ICE HAS NO JUSTIFICATION FOR REFUSING TO PRODUCE
         THE DISAPPEARING DATA .......................................................... 6

        A.  TRAC's requests reasonably describe the government
            records sought ............................................................. 7

        B.  Production of the disappearing data does not require
            the creation of records ................................................. 8

            1.  Searching databases requires creation of a computer
                program, not a record ..................................... 9

            2.  TRAC's requests do not require answering questions
                or providing explanations ............................. 13

        C.  ICE has failed to meet its burden of showing that TRAC's
            requests for the disappearing data extend beyond the agency's
            obligations under FOIA .......................................... 15

            1.  ICE's explanations are contradictory and conclusory ... 15

            2.  ICE's representations raise questions over good faith .. 18

    II.     ICE's JUSTIFICATIONS FOR WITHHOLDING THE REMAINING
         RECORDS ARE INSUFFICIENT TO SUPPORT ITS MOTION FOR
         SUMMARY JUDGMENT .......................................................... 20

CONCLUSION ............................................................................. 22

# TABLE OF AUTHORITIES

Cases

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice,*
 697 F.3d 184 (2d Cir. 2012)...............................................................5

*Carney v. U.S. Dep't of Justice,* 19 F.3d 807 (2d Cir. 1994)............................18

*Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473 (2d Cir. 1999)........................4, 15, 19

*Halpern v. FBI*, 181 F.3d 279 (2d Cir. 1999) ......................................4

*Hemenway v. Hughes*, 601 F.Supp. 1002, 1005 (D.D.C. 1985) ........................7

*Hudgins v. I.R.S.*, 620 F. Supp. 19 (D.D.C. 1985) (D.C. Cir. 1987)..................13

*Nat'l Sec. Counselors v. C.I.A.*, 898 F. Supp. 2d 233, 272 (D.D.C. 2012)..................9, 12

*Nation Magazine v. U.S. Customs Service*, 71 F.3d 885 (D.C. Cir. 1995) ........................7

*Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4 (2d Cir. 1995)........................7

*Schladetsch v. Housing and Urban Dev.*, No. 99-0175, 2000 WL 33372125
(D.D.C. Apr. 4, 2000) ...............................................................10

*Truitt v. U.S. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990)........................7, 12

*U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ........................5, 15

*Yeager v. DEA*, 678 F.2d 315 (D.C. Cir. 1982) ................................9


Statutes and Regulations

5 U.S.C. § 552 ....................................................... *passim*

6 C.F.R. § 5...............................................................7, 9

1996 Electronic FOIA Amendments, Pub.L. No. 104–231, 110 Stat. 3048 (1996)...........9

Plaintiffs Susan B. Long and David Burnham respectfully submit this memorandum in opposition to the motion for summary judgment filed by Defendant Immigration and Customs Enforcement and in support of their cross-motion for summary judgment on their complaint, brought under the Freedom of Information Act, 5 U.S.C. § 552.

## PRELIMINARY STATEMENT

This case presents a simple question: Does the government have legal justification for its withholding of information sought in proper FOIA requests?

The information requested is from immigration enforcement records maintained by Immigration and Customs Enforcement. It includes facts related to actions called Detainers and Notices, which ICE employs when it considers an immigrant who has been arrested by federal, state, or local law enforcement a potential priority for removal.

ICE tracks a vast amount of information in its Enforcement Integrated Database (EID). Exactly what information the database holds is impossible to say, as ICE will not identify the specific fields. As a result, Plaintiffs have had to craft their FOIA requests by describing the information as best they could. And that worked, in part, for recurring requests for several years. ICE reviewed the requests and responded by producing records for some of the requests and not for others. Then suddenly at the start of this year, ICE began withholding many of the records it had previously produced.

Plaintiffs brought this action to compel ICE to reverse course. Plaintiffs ask for two things: 1) the records they once received but that are now withheld, records they refer to as the disappearing data or disappearing fields; and 2) the records withheld from the start of their requests, or enough information about the database to allow a fair assessment of the withholding.

ICE has raised essentially two reasons for not producing these records. Some of the records, it contends, would require the agency to create a record after conducting steps such as research, analysis, assumptions, interpretations or calculations. Others, it says, simply do not exist in the database.

These arguments are simply not plausible, as demonstrated by their lack of support in the record. ICE has, through its history of responding to the same requests, shown that the requests for the disappearing data reasonably describe government records and that those records exist in the database. It has provided varying and conflicting responses in this case and a similar action that show both the existence of records sought and the flaws in ICE's attempted justifications of its withholding. The agency has utterly failed to prove—as it must—that the records have not been improperly withheld, and it should be required to produce them.

## BACKGROUND

This case involves two FOIA requests from the co-directors of the Transactional Records Access Clearinghouse, a data research center at Syracuse University. The requests sought information related to ICE's immigration enforcement actions, in particular that concerning the agency's I-247 Form requests. Cmplt, Ex. A, E; Declaration of Susan B. Long, ¶ 8. The I-247 Form requests are related to Immigration Detainers, known simply as Detainers, and Requests for Voluntary Notification of Release of Suspected Priority Alien, known as Notices. *Id.*

These actions arise when ICE considers an immigrant who has been arrested by federal, state, or local law enforcement a potential priority for removal. Through Detainers, ICE asks another agency to keep the immigrant in custody for up to 48 hours beyond the usual release time. Through Notices, ICE asks the agency for 48 hours advance notification of the pending release of an immigrant. *Id.* ¶.

Starting in 2011, TRAC has regularly sought and received updated data through these FOIA requests. The data allowed TRAC to publish many widely relied upon research reports, as well as to create and provide online databases that let the public assess over time the focus and impact of the government's immigration enforcement actions—in their own communities and nationally. *Id.* ¶ 10.

TRAC filed these requests monthly and received regular responses providing the data. On November 30, 2016, TRAC filed two of these ongoing requests, one for Detainers and one for Notices, seeking data for fiscal year 2015 through November 2016. *Id.* When ICE responded to these two FOIA requests, in January and February 2017, it refused to provide a significant amount of data it had released in response to TRAC's previous requests. *Id.* ¶¶ 18, 22. The agency cited no exemptions for this withholding.[1] Forty fields of data had disappeared from the spreadsheets ICE provided in response to both the Detainer and Notice requests. Declaration of Susan B. Long ¶ 30 and Exhibit 3. For the Notice requests, four additional fields of data had disappeared.[2] *Id.*

---

[1] The agency also redacted information in some fields of data it did provide. The agency claimed exemptions for these redactions, but identified no specific exemption claims for any of the other material withheld. In the interest of simplifying the issues in this motion—while not conceding the legitimacy of the exemptions claimed—Plaintiffs do not contest the redactions. Plaintiffs notified Defendant's counsel of this before its motion was filed. This applies only to the withholding related to the redactions and does not remove the question of unlawful withholding from consideration, as ICE stated in its filings. Declaration of Catrina Pavlik-Keenan, Dkt. No. 15-2, n. 1.

[2] The disappearing fields are identified in Exhibit 3 to the Long Declaration. Paragraph 28 in the complaint cited 44 disappearing fields. While literally true, four fields were provided in duplicate because ICE's previous releases had been separated into two linked data tables, and some fields were included in both data tables. These duplicated fields have been eliminated from the count above. For the Notice requests, an additional four fields of data had disappeared, for a total of 44. Paragraph 32 in the complaint cited 61 disappearing fields. A significant number of these were fields where the entry was always blank, or the equivalent. Given their limited information value and for simplicity, Plaintiffs have eliminated these from the count.

These disappearing fields include information critical to the public's ability to be informed about the government's immigration policy and actions. The withheld information, for example, includes data necessary to determine whether ICE ever took an individual into custody after issuing a detainer, or whether individuals who were the subject of detainers were deported. Long Decl. ¶ 16. Also part of this disappearing data is information that would allow the public to assess whether detainers targeted people charged with criminal violations or convicted of serious criminal offenses. *Id.*

A second category of government records at issue are those ICE had regularly withheld since TRAC began asking for this immigration data. Because ICE refuses to identify all the fields in its database, while the evidence shows that many of these do exist in the database, it is impossible to evaluate whether it maintains all these records.[3]

TRAC filed administrative appeals contesting the agency's withholding of records and emphasizing the disappearing data. Cmplt. ¶¶ 29, 32, Ex. C and G (Dkt. Nos. 1-3 and 1-7). The agency denied those appeals, necessitating this action. *Id.* Ex. D and H (Dkt. Nos. 1-4 and 1-8).

## ARGUMENT

The FOIA requests in this case are directly aligned with the purpose of the law, which is "to promote honest and open government and to assure the existence of an informed citizenry to hold the governors accountable to the governed." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quotations and citations omitted). FOIA "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies," *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999). An agency that receives an

---

[3] ICE has refused to provide the names of all fields and data elements in the EID, which Plaintiffs sought through separate FOIA requests. A lawsuit over those requests is pending in the District of Columbia. (*Long v. ICE*, No. 14 Civ. 109)

appropriate request that "reasonably describes" the records sought "shall make the records promptly available." 5 U.S.C. § 552(a)(3)(A). This is true unless the information requested falls within one of the law's specified exemptions. *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 194 (2d Cir. 2012). (None of those exemptions has been raised in this case.)

A district court may "order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B)); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989). "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not agency records or have not been improperly withheld." *Id.* at n. 3 (quotations omitted).

The government records at the heart of this case are ones ICE has long produced in response to recurring requests from TRAC. The agency suddenly began withholding that information at the start of this year. ICE now argues that production of some of that information requires creating records, which FOIA does not require. But as demonstrated by the agency's own actions and statements —in the past and currently in other cases—production of this material does not require creating records. ICE's conclusory and contradictory arguments do not meet its burden to demonstrate otherwise. Withholding of those records is improper, and ICE should be compelled to produce them. A second category of records involves material ICE has never produced in response to these particular ongoing requests concerning detainers. ICE's flawed arguments regarding the disappearing data call into question its justification for refusing to produce this second category of material and should foreclose its ability to obtain summary judgment as to those records. In addition, a number of items of information that ICE contends do not exist have been provided to Plaintiffs in response to other requests for EID data. Given these

facts, ICE should be compelled to produce basic information about the contents of its database to allow the Court to assess the agency's position on this second category of requests.[4]

## I.
## ICE HAS NO JUSTIFICATION FOR REFUSING TO PRODUCE THE DISAPPEARING DATA

This case is centered on straightforward requests for basic immigration enforcement information maintained by the government. The data requested are government records, and those records are subject to FOIA and should be produced. For the information at the heart of this case—the disappearing data—that was also ICE's position for a number of years, until an abrupt shift in January 2017. Until then, the agency had routinely produced this information, acknowledging both that the data exists and that no exemptions apply that would justify withholding it. The agency has put forth a hodgepodge of reasons for this sudden withholding that mischaracterize TRAC's requests, inaccurately describe basic database searches as complex operations, and recast common FOIA production procedures as requiring the creation of records. These arguments are not plausible, and do not support ICE's unlawful withholding of public records. ICE must produce that information because 1) TRAC's requests reasonably describe the

_____

[4] ICE maintains the Enforcement Integrated Database, its common database repository "for all records created, updated, and accessed by a number of software applications." Declaration of Marla Jones, Dkt. No. 15-1 ¶ 6. This database, known as the EID, provides a way to access data in a person-centric view, seeing data about individual immigrants from the time they enter the system to the time they are deported or released. *Id.* at ¶¶ 6-7. It is, therefore, the relevant database for TRAC's requested records and the database Plaintiffs refer to in this motion. ICE, however, searched not that database but the ICE Integrated Decision Support System, which the agency admits contains only a "subset of data from the EID database." *Id.* ¶ 9. If the requested records exist in the EID but not in the subset of records in the IIDS, ICE's refusal to search the EID would be unreasonable. But because ICE has not represented that it has withheld data in the EID if it does not exist in the IIDS, or that it could do so, the differences between the databases do not affect Plaintiffs' current requests for relief.

government records sought and ICE acknowledges that no exemptions apply, and 2) responding to the requests does not require ICE to create any records.

## A.
### TRAC's requests reasonably describe the government records sought

FOIA requires any agency that receives a request that "reasonably describes" the records sought to "make the records promptly available." 5 U.S.C. § 552(a)(3)(A). The law does not require that the requester precisely identify the records or their location. Rather, it requires only that the description of the records provide enough detail so that "a professional employee of the agency who was familiar with the subject area of the request" would be able to "locate the record with a reasonable amount of effort." *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 545, n. 36 (D.C. Cir. 1990) (quoting H.R. Rep. No. 876, 93d Cong., 2d Sess. 5–6 (1974)). The agency "has a duty to construe [the] FOIA request liberally." *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995). An agency may not interpret a request "so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester." *Hemenway v. Hughes*, 601 F.Supp. 1002, 1005 (D.D.C. 1985).[5] The burden is on the agency to "demonstrate that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt." *Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4, 9 (2d Cir. 1995).

There can be no legitimate question that the requests reasonably describe the data TRAC seeks. The requests are nearly identical to those TRAC has submitted for years. ICE has consistently read these requests as reasonable ones, and responded by producing the records

---

[5] Department of Homeland Security regulations also require that if an agency finds that a request "does not reasonably describe records sought," the office "should inform the requester what additional information is needed or why the request is otherwise insufficient." 6 C.F.R. § 5.3(b).

sought. Notably, ICE has identified no applicable exemptions for any of the disappearing data. And, as addressed below, it has provided little explanation for its withholding, relying instead on contradictory and conclusory arguments. Each of its justifications includes the claim that the information requested does not exist in ICE's database "in the manner requested." Jones Decl. ¶¶ 24, 26, 28, 37, 39 and 41. ICE never explains what this vague phrase means. To the extent it is relying on any argument that TRAC's requests do not precisely match ICE's description of the information, this is a blatant violation of FOIA. The requests clearly and reasonably describe the information TRAC seeks, and the agency must interpret them liberally and provide nonexempt responsive material. (The requests are Ex. A and E to the Complaint, Dkt. Nos. 1-1 and 1-5.)

The agency's obligation is especially pertinent in this case because ICE has refused to provide adequate information for the public to identify the fields of data in its databases. With little knowledge of how ICE labels its data, TRAC is forced to describe the information it seeks in its own terms. ICE alone has the knowledge to match these requests with its own methods of labeling its data. It has done this repeatedly, demonstrating both that the requests reasonably describe the information sought and that the information exists in ICE's database. That should end the inquiry. Withholding of these responsive, nonexempt records is in violation of FOIA.

### B.
### Production of the disappearing data does not require the creation of records

Plaintiffs' FOIA requests seek information contained in agency records. They do not seek analysis, interpretations, calculations or research that would require ICE to create records. This would in fact defeat TRAC's purpose. As scholars, Plaintiffs prefer to themselves conduct any required analyses from the original government records. Long Decl. ¶ 38. Yet ICE has withheld significant amounts of information previously provided, offering broad conclusory arguments that its production would require various steps that would lead to creation of records.

## 1. Searching databases requires creation of a computer program, not a record

Electronically stored information is subject to the same FOIA requirements as information maintained in hard copy files, though it may require more sophisticated search techniques. Courts have long agreed on this point. "Although accessing information from computers may involve a somewhat different process than locating and retrieving manually-stored records, these differences may not be used to circumvent the full disclosure policies of the FOIA." *Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982). Congress has emphasized this point, providing in the 1996 Electronic FOIA Amendments that "agencies should use new technology to enhance public access to agency records and information"—not to limit or obscure it. Pub.L. No. 104–231, § 2(a)(6), 110 Stat. 3048, 3048 (1996). To that end, "FOIA requires agencies to disclose all non-exempt data points that it retains in electronic databases." *Nat'l Sec. Counselors v. C.I.A.*, 898 F. Supp. 2d 233, 272 (D.D.C. 2012).

Searching these databases, therefore, is "not regarded as involving the creation of new records." *Id.* at 270. Nor does sorting a database "to make information intelligible" require creating a record. *Id.* Such an action is "essentially the application of codes or some form of programming, and thus does not involve creating new records or conducting research—it is just another form of searching that is within the scope of an agency's duties in responding to FOIA requests." *Id.* (quotations omitted). The Department of Homeland Security acknowledges this in its FOIA regulations, which state: "Creating a computer program that produces specific requested fields or records contained within a well-defined database structure is usually considered business as usual." 6 C.F.R. § 5.4(i)(2)(ii). ICE agrees with this standard, noting in its memorandum in support of its motion that "extracting and compiling data does not amount to the creation of a new record as to any discrete pieces of information that the agency does possess in

its databases and which are sought by Plaintiffs." Dkt. No. 15-3 at 5-6, citing *Schladetsch v. Housing and Urban Dev.*, No. 99-0175, 2000 WL 33372125, at *3 (D.D.C. Apr. 4, 2000).

In short, if an agency maintains information in an electronic database, that information is subject to FOIA, and the agency must create computer programs to locate and produce all non-exempt information. In other words, as ICE agrees, if a nonexempt requested data point exists in the database, it must be produced. Yet the agency seeks to confuse the issue by describing these basic required computer searches in seemingly complex, technical language that seeks to transform the database search (which the agency is required to perform) into the creation of records (which the agency is not required to do).

ICE provides two justifications for withholding the disappearing data, both of which center on its purported need to create a record to respond.[6] First, it summarily concludes that for many items sought, "the data requested asks a question or is an implied question that does not exist itself in the database in the manner requested, and would require research, analysis, assumptions, and/or calculations, and thus would lead to the creation of a new record which did not previously exist." Jones Decl. ¶¶ 24, 37. ICE does not explain what it means by "research, analysis, assumptions, and/or calculations," but its further discussion makes clear that whatever its definition, it does not fall outside any FOIA requirement. ICE states that to provide this data, a staffer "would have to research potential data values in IIDS, the operational use of those values inputted by officers that do exist, and make further assumptions that these data values satisfy the intent of their question." *Id.* Boiled down to plain English, this means the staffer would need to read the FOIA requests, consider the contents of the database, and decide which fields to search

---

[6] These two justifications apply to all of the disappearing data, as well as to some of the data ICE has never produced.

to locate the records sought. That is nothing more than a basic database search, and it is exactly what FOIA requires.

Second, ICE argues that other requests would require the agency "to make interpretations and assumptions before building a new record based off of additional analysis and calculations." Jones Decl. ¶¶ 26, 39. To provide such records, the agency says, a staffer "would have to research potential data values" in the database, "the operational use of those values inputted by officers that do exist and make further assumptions that these data values satisfy the intent of the requested terms." *Id.* Evaluating a database, or any means of record storage, assessing the content and determining if it is responsive to a request is not analysis or calculation outside the requirements of FOIA. It is the first step of any search for responsive data. Nor does this description offer any explanation for why ICE views these "interpretations and assumptions" made before the search as resulting in its need to "build[] a new record." In fact, ICE's own representations demonstrate the falsity of this claim. ICE provides only one example in discussing this justification that relates to disappearing data. Jones Decl. ¶ 39. In that request, No. 35, TRAC sought the "most serious criminal conviction offense." As more fully addressed below, ICE contended that this information did not exist in the database and could not be produced. *Id.* Yet in a case TRAC has pending in the District Columbia, ICE stated that this very data field existed in the database and "did not require additional research, data interpretation, analysis, calculations, assumptions and/or other manipulation of the data" and therefore could be produced. *Long v. ICE*, No. 17 Civ. 1097, Dkt. No. 11-2 at ¶¶ 41-42.[7] Thus, ICE seeks to

---

[7] This case involves data requests for information on ICE deportations of individuals as a result of its Secure Communities program. ICE contends that the issuance of ICE detainers in this program are central to its ability to apprehend and deport individuals.

withhold dozens of records on the basis of one false claim that providing responsive information would require creating a record.

A search for data responsive to a FOIA request is essentially a two-step process: First, the person conducting the search must evaluate the request and assess what data is responsive and the likely locations it would be stored. This is not research, interpretations or assumptions; this is a basic requirement of FOIA. *Truitt*, 897 F.2d at 545, n. 36 (requester must only provide enough detail for an agency employee familiar with the subject area to locate the record). In this case, it is also an obligation the agency must undertake itself because ICE will not provide information that would allow TRAC to specifically identify the fields to search.[8] The agency cannot keep the requester in the dark about how database information is stored and then refuse to respond because a FOIA request requires assessing that very thing. Second, the searcher must write a program to extract the information from the database.[9] This is not "building a new record"; it is production of data, as FOIA requires. *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 272.

The bottom line is that the proper standard for evaluating whether ICE has complied with the law must focus solely on whether nonexempt data exists in its database. If it does, ICE must produce it. The steps required to produce it are, therefore, part of the FOIA process when electronic records are involved. They are not steps that constitute the creation of a record. To argue otherwise is no more than circular reasoning meant to obfuscate: If the information is in the database, it already exists. If it exists, only extraction and disclosure is required, not calculation or analysis to create a record.

---

[8] As noted above, TRAC's request for this information is the subject of an ongoing lawsuit in the District of Columbia. (*Long v. ICE*, No. 14 Civ. 109).

[9] As TRAC's requests were recurring ones, this step was not even one the agency needed to repeat. Once the program was written to locate the data (as presumably was once done for all of the disappearing fields), that search could simply be rerun each month.

ICE has attempted to use exaggerated technical language to manufacture the impression that the requests for the disappearing data require creating records when they in fact require only searching for and extracting information from the database. These are basic FOIA requirements, and ICE should be compelled to produce these records.

## 2. TRAC's requests do not require answering questions or providing explanations

While it is true that FOIA does not require agencies to respond to questions (*see Hudgins v. I.R.S.*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987)), it is also true that if a request poses a question that can be read as "reasonably describing" agency records under 5 U.S.C. § 552(a)(3), an agency must respond accordingly. Further, ICE's characterization of many of TRAC's requests as posing questions to which it is not required to respond is inaccurate and disingenuous.

ICE claims that many of TRAC's requests for the disappearing data asked or implied a question and that a response would therefore require creation of a record. Jones Decl. ¶¶ 24, 37. This is inaccurate. Although these requests include "Y/N" or the equivalent, they are not phrased as questions (none includes a question mark). They are merely designed to mirror what Plaintiffs know about how ICE maintains its data. Although ICE will not identify the fields in its database to allow TRAC to ask for the data precisely as ICE labels and stores it, through the course of its requests, Plaintiffs learned that many of the fields indicate the presence or absence of an event or other information, and that ICE often labeled these as yes/no fields. Long Decl. ¶ 39. TRAC therefore followed ICE's example in describing requests for these fields. In fact, ICE submitted as exhibits in this case spreadsheets identifying fields or data elements that it admits exist in its database. Dkt. No. 15, Ex. 3 and 4 (produced on CD). Thirty-five of these elements are identified as being maintained in this "Yes/No" format. Thus, the challenged requests are not

questions at all, but valid requests that ICE provide data fields as they maintain them or records that indicate the presence or absence of information. ICE has in the past consistently understood these requests and responded to them by providing the content of the relevant database fields. It should continue to do so. Where ICE maintains a Yes/No field, that field should be produced. When that is not a field, ICE should continue to read the request not as a question that requires creation of a record but as a request to provide data matching the request because the presence of information in the database was equivalent to a "yes."

ICE's two arguments for withholding the disappearing data are the same: producing the records would entail steps that lead to the creation of records, which is not required by FOIA. In fact, however, the production would entail no more than the required steps of identifying the likely location of the data, creating a computer program to search for it, and extracting the responsive records from the database. All of TRAC's requests for this disappearing data reasonably identify records that exist in ICE's database. This is demonstrated by ICE's consistent production of the records from the database in response to the same requests over time. ICE has long understood that these requests were describing data that exists in the database, not seeking answers to questions or asking ICE to create records.[10] The bottom line is that these records exist in ICE's database, and FOIA requires that ICE search for them and produce them. The agency should be compelled to resume producing this disappearing data.

---

[10] ICE's response to the FOIA request did not adequately explain the withholding. If the agency believed that calculations or analyses were required, that constituted an admission that additional responsive records existed. In their appeal, Plaintiffs noted this, and asked not that the agency perform any such calculations or analyses but that it produce all of the responsive data and allow Plaintiffs to analyze it themselves. Plaintiffs have also added this language to each of their succeeding monthly requests. No additional release of data has resulted. Long Decl. ¶ 42.

## C.
### ICE has failed to meet its burden of showing that TRAC's requests
### for the disappearing data extend beyond the agency's obligations under FOIA

The burden is on the agency to show "that the materials sought are not agency records or have not been improperly withheld." *Tax Analysts*, 492 U.S. 142, n. 3; 5 U.S.C. § 552(a)(4)(B). ICE has failed to meet this burden. Agency declarations may be enough to support summary judgment for the agency, "if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Grand Cent. P'ship*, 166 F.3d at 478 (emphasis in original) (citations and quotations omitted). ICE's declarations do not demonstrate that production of the disappearing data would require it to create records or otherwise perform any duties beyond its basic FOIA obligations. Its declarations in support of its arguments are largely conclusory and rebutted by so much contradictory evidence that they call into question the agency's good faith.

### 1.  ICE's explanations are contradictory and conclusory

ICE provides details attempting to justify its withholding for only 12 of TRAC's requests, though it states that it withheld responses to 162 items. Jones Decl. ¶¶ 23, 36. All of the others are simply part of categorical listings of items it refused to provide. Notably, of the 12 requests ICE addressed, only three relate to the disappearing data. For those three, the Jones Declaration states that the information provided does not exist in the database and would require research, analysis or further steps leading to the creation of a record. But in the District of Columbia case, the Jones Declaration states that exactly the opposite is true for these three fields: that the data existed in the database and did not require additional research, analysis, calculations or other steps. And ICE provided data in response to these three requests in that case. Thus, ICE not only

contradicts but disproves its own arguments for the only examples it cites for the disappearing

data. The Jones Declaration presented these contradictory requests and responses (Dkt. No. 15-1

in the New York case, and Dkt. No. 11-2 in the D.C. case, 17-cv-1097):

| TRAC's requests | ICE's response in this case | ICE's response in DC case |
|---|---|---|
| NY Item No. 8: Following the preparation of the Form I-247D[/I-247N], ICE administratively arrested individual (yes/no); **if yes, date of ICE arrest.**<br><br>DC Item No. 63: Date of latest arrest (labeled in ICE spreadsheet as "Arrest Date") | "[T]the data requested asks a question or is an implied question that does not exist itself in the database in the manner requested, and would require research, analysis, assumptions, and/or calculations, and thus would lead to the creation of a new record which did not previously exist. … ICE does not track relationships between detainers being issued and arrests of an alien, thus no data point exists to answer the Plaintiffs question as requested in the FOIA request." ¶ 24 | "[T]the data provided existed in the IIDS database … and did not require additional research, data interpretation, analysis, calculations, assumptions and/or other manipulation of the data." ¶¶ 41-42 |
| NY Item No. 9: "Following the preparation of the Form [I-247/I-247D/]I-247N, individual was booked into ICE Custody (yes/no); and if yes **date booked into ICE custody"**<br><br>DC Item No. 63: Date of latest arrest (labeled in ICE spreadsheet as "Book In Date") | "[T]he data requested asks a question or is an implied question that does not exist itself in the database in the manner requested, and would require research, analysis, assumptions, and/or calculations, and thus would lead to the creation of a new record which did not previously exist. … ICE does not track relationships between detainers being issued and book-ins of an alien, thus no data point exists to answer the Plaintiffs question as requested in the FOIA request. ¶ 37 | |
| NY Item No. 35: "most serious criminal conviction offense."<br>DC Item No. 50: "most serious criminal conviction offense." | "[T]he data requested does not exist in the database as requested and requires ICE to make interpretations and assumptions before building a new record based off of additional analysis and calculations." ¶ 39 | (Identical for all three requests.) |

The contradictions in these explanations alone, for the only disappearing data ICE bothered

to specifically address, are so extensive that the arguments should be disregarded and the

declaration should not be entitled to any presumption of good faith. But the contradictions extend

beyond these stark conflicts.

For Item No. 8, for example, in addition to stating that the information didn't exist in the database, ICE claimed that this request requires it to assume that for a particular individual, ICE issued only one detainer but in fact it might have issued more than one. The request does not suggest such an assumption. Second, ICE claims that the request requires the assumption that the arrest "was the result of the detainer, which appears to be an implied question in Plaintiff's request." ICE knows this is not a valid position. In response to earlier requests from TRAC, ICE stated that it did not have data regarding whether an arrest resulted from a detainer or notice, and instead provided the information regarding whether an arrest came after a detainer. Long Decl. ¶ 41. TRAC later revised its request to specify that it was seeking only data temporally related to the detainer or notice, and ICE continued to produce that information until this year. *Id.* Thus, ICE knows that its characterization of this request is inaccurate yet opted to include it as primary support for withholding of agency records. Request for Item No. 9 mirrors Item No. 8 as do ICE's objections to it. Jones Decl. ¶ 37. And ICE's arguments fail for the same reasons. (This is only a sampling of the contradictions in ICE's positions. *See* Long Decl. ¶¶ 35-42.)

Aside from these few flawed explanations, ICE relies on categorical lists with no details whatsoever as justification for withholding the information requested. Even ICE's categorical descriptions are loaded with vague and undefined terms that do not provide the specific detail required to meet its burden. For example, the Jones Declaration states that it cannot respond to the request for aggravated felon information (Item No. 42) because it would require "additional research/analysis/assumptions and/or calculations" leading to the creation of a record. ¶ 37. Although ICE uses these terms repeatedly, it does not define them, uses them interchangeably and appears at times, as in this example, to be unable to determine its own position on the stated

obstacle. (Which may in fact be the case, as ICE produced this data, even though it represented that it could not.) These vague and conclusory statements do not meet ICE's burden.

Nor does ICE's Statement of Material Facts contain any support for its motion for summary judgment. Dkt. No. 15-4. The statement does not refer to any specific item in TRAC's requests for detainer and notice information. It does not contain any fact or statement supporting ICE's position that the requests require steps leading to the creation of records. Rather, it focuses on the agency's procedure for handling FOIA requests and how the procedure was followed in this case. ICE is certainly not entitled to summary judgment on those facts.

In sum, ICE has provided no detailed support to justify its withholding of this disappearing data. Rather, it has presented categorical descriptions of the information it withheld with few explanations that would allow the Court to assess its claims. Those few explanations are loaded with contradictions and misstatements. And ICE has not even asserted the undisputed facts necessary to support those claims. Nor has the agency provided any description of the fields of information that are available, which might also aid the Court's ability to weigh the validity of the withholding. The Jones Declaration contains none of the requirements of an agency declaration, and ICE has made no showing of justification for withholding the data it had long produced in response to TRAC's reasonably described requests. It should be compelled to produce those records.

## 2. ICE's representations raise questions over good faith

Declarations from an agency are generally entitled to a presumption of good faith in FOIA actions. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). This assumes, however, that the declarations are reasonably specific rather than conclusory and not called into

question by contradictory evidence. *Grand Cent. P'ship*, 166 F.3d at 478. That is not the case here.

The contradictions, questionable representations and sizable gaps in ICE's arguments and the primary declaration provided in support of them raise questions about the agency's good faith in this case. It is notable that ICE's statement of facts, memo of law and declarations all fail to mention that the agency regularly produced the bulk of the data at issue in this case in response to recurring monthly requests from 2011 to January 2017. Instead, the agency disingenuously presents this as a case in which Plaintiffs have posed questions that are not allowed under FOIA, asked the agency to create records and sought data that does not exist. In the course of this effort, ICE has presented arguments and made factual representations that conflict with its positions in the similar case pending in the District of Columbia; it has mischaracterized TRAC's requests and made inconsistent arguments within the filings in this case; and it has relied on sweeping conclusory statements rather than providing accurate supporting details. The inconsistencies and omissions are too extensive to afford ICE the usual presumption of good faith.

In summary, ICE has utterly failed to sustain its burden of demonstrating that the disappearing fields are not agency records that have been improperly withheld. The primary declaration ICE submitted in support of its motion for summary judgment is lacking in reasonable specific detail and dominated by conclusory statements that are called into serious question by contradictory evidence—indeed by conflicting statements made by the declarant in a second FOIA case. It cannot support summary judgment for the agency. *Grand Cent. P'ship,* 166 F.3d at 478. ICE provides few detailed examples, and those examples are discredited, raising doubts about the agency's good faith. Nor has ICE produced any other material demonstrating

that the requests for the disappearing data require any steps leading to the creation of records, as it contends throughout its motion. ICE should be compelled to produce this disappearing data.

## II.
## ICE's JUSTIFICATIONS FOR WITHHOLDING THE REMAINING RECORDS ARE INSUFFICIENT TO SUPPORT ITS MOTION FOR SUMMARY JUDGMENT

The numerous flaws noted above that demonstrate that ICE has failed to meet its burden on the disappearing data apply with equal force to the remaining withheld records—that data ICE has never produced in response to Plaintiffs' requests. Nothing in ICE's motion or its supporting documents provides sufficient information for the Court to evaluate the agency's position that ICE does not maintain any of the data in this second category and therefore cannot produce it.

The greatest distinction between the two categories is, of course, that ICE has admitted through its past conduct in this case (and to a relative degree in the District of Columbia case) that the requests for the disappearing data reasonably describe nonexempt data that exists in its database. It has failed to meet its burden of sustaining its argument that the data doesn't exist or that steps leading to the creation of a record are required to produce it. Thus, it should be compelled to produce that disappearing data.

The contradictory and conclusory declarations submitted in this case would fall far short of supporting summary judgment for this second category even if they were entitled to the usual presumption afforded the government—which they are not, for the reasons detailed above. ICE's positions on this category of records are presented in an even more sweeping fashion than on the disappearing data. The Jones Declaration, for example, addresses this information in two short paragraphs each for the detainer and notice requests. ¶¶ 28-29 and 41-42. Even in that limited space, ICE manages to introduce contradictory information. The Jones Declaration states that ICE does not maintain information responsive to Item No. 108 in the detainer request (¶ 28), yet

the agency produced some of this material in response to the request. Long Decl. ¶ 35. So in fact the ICE database does contain this information.

And a number of fields ICE claims cannot be produced have been provided to Plaintiffs in response to other FOIA requests for EID data. For example, in Item No. 25, TRAC sought this information: "U.S. citizen spouse (yes/no)." ICE argues that "there is no data set in any ICE system where ICE records the existence of a spouse, much less whether the spouse is a citizen." Jones Decl. ¶ 24. Yet ICE has previously released spouse citizenship information to TRAC. Long Decl. ¶ 37. TRAC has also received information about parents and children (Item Nos. 26-27); ICE Priority Indicators (Item No. 55, subparts 1-4); and detention facilities (Item No. 69, parts 1-8), even though ICE contends in this case that these items do not exist. *Id.*

These discrepancies embedded in conclusory arguments make clear that summary judgment is inappropriate in ICE's favor on this second category of data. They also point to an overarching problem with ICE's conduct in response to these and other FOIA requests: the agency wants to hide the ball and blame the FOIA requesters for not seeing it. ICE contends that TRAC has not reasonably described the data it seeks or that ICE does not maintain its data "as requested." But at the same time ICE refused to give TRAC—or any other FOIA requester—the necessary information to describe its requests in a way that matches the way ICE stores its data. TRAC has asked ICE to identify the fields of data in the EID, which would both permit FOIA requesters to tailor their requests to existing data and give requesters and the courts the ability to meaningfully assess ICE's responses. ICE has refused, and this dispute is the subject of the ongoing case in the District of Columbia. *Long v. ICE*, No. 14 Civ. 109.

This dispute is squarely at issue in this case as well. This Court cannot assess ICE's representations about nonexistent data without information about what data does exist. And

ICE's conclusory and inconsistent statements demonstrate the need for a more thorough examination of its representations. TRAC therefore asks the Court to deny summary judgment to ICE on this category of data and compel the agency to identify the fields of data in the EID to permit this assessment.

## CONCLUSION

The public unquestionably needs unbiased, factual information on which to base decisions about how its government should function. That need is at the core of FOIA, which compels the production of the records ICE has withheld. Plaintiffs respectfully ask the Court to 1) grant expedited consideration of this motion, as Plaintiffs requested in their complaint pursuant to 28 U.S.C. § 1657(a); 2) deny ICE's motion for summary judgment and grant Plaintiffs' cross-motion for summary judgment; 3) order ICE to produce within 20 days, pursuant to 5 U.S.C. § 552, the fields of data previously produced in response to Plaintiffs' FOIA requests but withheld in the responses beginning in January 2017; 4) order ICE to itemize the fields of information in its EID database to permit evaluation of the additional information withheld; 5) award Plaintiffs the costs of this proceeding, including reasonable attorney fees, as permitted by § 552(a)(4)(E); and 6) award such other relief as the Court deems just and proper.

DATED:  December 22, 2017                    Respectfully submitted,

                                             MILLER KORZENIK SOMMERS RAYMAN LLP


                                             By: _____Mona Houck_____
                                                 Mona Houck (Bar Roll No.: 520599)
                                                 mhouck@mkslex.com
                                                 Terence P. Keegan (Bar Roll No.: 520598)
                                                 tkeegan@mkslex.com

                                                 488 Madison Avenue, Suite 1120
                                                 New York, New York 10022-5702

                                                 *Attorneys for Plaintiffs*