# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

SUSAN B. LONG and DAVID BURNHAM,

                Plaintiffs,            No. 5:17-cv-00506 (BKS/TWD)

v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

                Defendant.

**Appearances:**

*For Plaintiffs:*
Terence P. Keegan
Miller Korzenik Sommers Rayman LLP
488 Madison Avenue, Suite 1120
New York, NY 10022

*For Defendant:*
Grant C. Jaquith
United States Attorney
Ransom P. Reynolds, III
Assistant United States Attorney
100 South Clinton Street
Syracuse, NY 13261

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiffs Susan B. Long and David Burnham brought this action under 5 U.S.C. § 552(a)(4)(B) against Defendant United States Immigration and Customs Enforcement ("ICE") seeking to compel production of certain agency records pursuant to the Freedom of Information Act, 5 U.S.C. §§ 551–559 ("FOIA"). Both parties have moved for summary judgment. (Dkt.

Nos. 15, 19). The Court held oral argument on the motions on September 18, 2018. For the following reasons, both parties' motions are denied.

## II.  BACKGROUND[1]

Plaintiffs are the co-founders and co-directors of the Transactional Records Access Clearinghouse ("TRAC") sponsored by the Whitman School of Management and the Newhouse School at Syracuse University. (Dkt. No. 19-11, ¶ 73). TRAC's primary function is to provide the public with "comprehensive and regularly updated information that allows for meaningful assessment of whether federal agencies are actually doing what agency officials claim to be doing." (*Id.* ¶ 74). In pursuit of their mission, TRAC "gathers, analyses, and maintains a wealth of independent and nonpartisan information about staffing, spending and enforcement activities of the federal government," (*id.*), including a "significant amount" of immigration enforcement data, (*id.* ¶ 76). In 2011, Plaintiffs, on behalf of TRAC, "began submitting FOIA requests for ICE database records concerning ICE's use of I-247 forms," (*id.* ¶ 77), which relate to certain "immigration enforcement actions and [ICE's] interaction with other law enforcement agencies," (*id.* ¶ 80). Since then, in effort to "[t]o keep the data current," TRAC has "sought and received from ICE updated data related to Form I-247 . . . on a regular monthly cycle." (*Id.* ¶ 79).

On November 30, 2016, Plaintiffs submitted two FOIA requests to ICE seeking information regarding ICE's use of two different types of I-247 forms: (i) detainer form I-247D, titled "Immigration Detainer-Request for Voluntary Action" ("Detainer" or "Detainer Request");

---

[1] Only those facts relevant to the parties' motions are set out below, and are drawn from the parties' statements of material facts (Dkt. Nos. 15-4, 19-11), Plaintiffs' response thereto (Dkt. No.19-11), and exhibits attached to the parties' submissions, to the extent that they would be admissible as evidence. Defendant has not filed a response to Plaintiffs' statement of additional material facts. Undisputed material facts supported by the record are taken from the moving party's statement of material facts, whereas disputed material facts supported by the record are taken from the nonmoving party's submissions. Where facts stated in a party's statement of material facts are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party or not denied at all, the Court has found such facts to be true. *See* L.R. 7.1(a)(3); Fed. R. Civ. P. 56(e).

2

and (ii) form I-247N, titled "Request for Voluntary Notification of Release of Suspected Priority Alien" ("Notices" or "Notice Requests"). (Dkt. No. 15-4, ¶¶ 39, 54; Dkt. No. 15-1, ¶¶ 12–14; Dkt. No. 19-11, ¶ 80). ICE uses Detainer Requests and Notice Requests when "an alien . . . [has] been arrested on a state or local criminal charge[] and . . . ICE possesse[s] probable cause to believe that the alien [is] both an immigration enforcement priority and removable from the United States." (Dkt. No. 15-1, ¶ 12). More particularly, Detainers "are requests from ICE to federal, state, and local law enforcement agencies to maintain custody of an individual for up to 48 hours beyond when he or she would otherwise have been released." (Dkt. No. 19-1, ¶ 9). Notices, on the other hand, are "requests that the receiving state or local [law enforcement agency] notify ICE of the pending release from custody of a suspected priority removable individual at least 48 hours prior to release, if possible." (Dkt. No. 15-1, ¶ 14).

Through its FOIA requests, Plaintiffs sought "112 separate data points" relating to ICE's use of both Detainers "for FY 2015 through November 2016" and Notices "issued for November 2016." (Dkt. No. 15-4, ¶¶ 39, 54).[2] ICE maintains such information relating to its use of Detainer and Notice Requests through its use of the "Enforcement Integrated Database" ("EID"). (Dkt. No. 15-1, ¶ 6; Dkt. No. 19-11, ¶¶ 27–29).

## A. EID, IIDS, and Plaintiffs' FOIA Requests

ICE describes the EID as "the common database repository for all records created, updated, and accessed by a number of software applications." (Dkt. No. 15-1, ¶ 6). Through the EID, ICE "officers . . . manage cases from the time of an alien's arrest, in-processing, or placement into removal proceedings, through the final case disposition (*i.e.*, removal or granting of immigration benefits)." (*Id.*) "The EID captures and maintains information related to the

---

[2] Plaintiffs dispute the characterization of the requested information as "data points," and instead refer to their requests as requests for "data containing items of information." (Dkt. No. 19-11, ¶¶ 39, 54). That dispute is not material to this decision.

investigation, arrest, booking, detention, and removal of persons encountered during immigration and law enforcement investigations and operations conducted by ICE" and Customs and Border Patrol. (*Id.* ¶ 7). To "protect the integrity of the live data held in the EID operational environment," (Dkt. No. 15-4, ¶ 38), ICE uses the "Integrated Decision Support System" ("IIDS") to "query EID data for operational or executive reporting purposes," (*id.* ¶ 37).[3]

After receiving Plaintiffs' November 30, 2016 FOIA requests by email, (*id.* ¶¶ 39, 54), the ICE FOIA Office "determined that the [ICE Office of Enforcement and Removal Operations ("ERO")]" was "likely to have records responsive to Plaintiffs' request[s]" and "instructed ERO to conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing," (*id.* ¶¶ 42–43, 57–58). The ERO "Information Disclosure Unit" ("IDU") tasked "ERO Law Enforcement and Systems Analysis" ("LESA") with the search, (*id.* ¶¶ 46, 61), who then "tasked the Statistical Tracking Unit ('STU') to search for potentially responsive documentation," (*id.* ¶¶ 47, 62). The STU then "conducted a line-by-line review of the requested information[,] taking into consideration standing reporting of removal methodologies as well as consulting the database to query all available responsive detainer information as requested from IIDS." (*Id.* ¶¶ 48, 63). The ICE FOIA office answered Plaintiffs' Detainer and Notice FOIA requests on January 10 and February 2, 2017, respectively, producing one Excel spreadsheet in response to each. (Dkt. No. 19-11 ¶¶ 50, 65).[4]

### B. Data Fields that ICE Previously Provided

Beginning with its responses to Plaintiffs' November 30, 2016 Detainer and Notice FOIA requests, "ICE began refusing to disclose much of the information produced in its previous

---

[3] The Court notes the distinction between the EID and IIDS, but for the sake of clarity, this discussion refers to IIDS or "the database." Plaintiffs note that the differences between EID and IIDS "do not affect Plaintiffs' current requests for relief." (Dkt. No. 19-12 at 9 n.4).

[4] The Court has received and reviewed electronic copies of the Excel spreadsheets, which Defendant submitted on November 8, 2017, separately from its motion filed via CM/ECF.

4

responses." (Dkt. No. 19-11, ¶ 82). Plaintiffs assert that ICE withheld "large swaths of data from the forms, including data that had been disclosed in response to [Plaintiffs'] previous FOIA requests." (Dkt. No. 19-1, ¶¶ 18, 22). ICE's responses did not address the absence of the data fields it previously included in its responses, indicating only that the data provided was the only data that was "responsive to [Plaintiffs'] request" and that other data had been redacted pursuant to various privacy exemptions to FOIA disclosure requirements.[5] (Dkt. Nos. 1-2; 1-6). Believing that they were "left in the dark about many pertinent matters" due to the "inadequacies in the agency's final response," Plaintiffs appealed the adequacy of ICE's responses on March 14 and 17, 2017. (Dkt. Nos. 1-3; 1-7). In their appeals, Plaintiffs asserted that ICE had not conducted an adequate search for the records requested based on their belief that "[s]ome of the omitted records . . . are actually contained in the agency's databases" as indicated by the fact that Plaintiffs had "been provided [with] this same type of information on many previous occasions." (Dkt. Nos. 1-3; 1-7). Plaintiffs further offered that, if the data requested were now being withheld on the basis that disclosure would call for "'calculation or analysis' not required by FOIA . . . on other relevant information that is recorded," any data underlying such previously-performed calculations could be disclosed in raw form so that Plaintiffs, "as scholars," might "carry out any required analyses [them]selves from the original information." (Dkt. Nos. 1-3; 1-7).

On April 11, 2017, ICE's Office of the Principal Legal Advisor ("OPLA") responded to Plaintiffs' appeals, explaining that "ICE provided the data fields from the [EID] that [were] responsive" to Plaintiffs' requests, but "[t]o the extent [Plaintiffs' request seeks . . . additional data sets, those data fields do not exist in EID." (Dkt. No. 1-4, at 2; Dkt. No. 1-8, at 2). OPLA

---

[5] ICE has asserted FOIA Exemptions 6 and 7(C), among others, as justification for withholding by redaction various personal data on the basis that their disclosure would raise privacy concerns for either ICE employees or third parties. (Dkt. Nos. 1-2; 1-6; 1-4; 1-8). Plaintiffs indicate that, for the purposes of this litigation, the validity of those redactions is not disputed. (Dkt. No. 19-12, at 6 n.1).

5

further explained that "[t]o the extent [Plaintiffs'] request has asked questions, ICE has not answered those questions. If the information requested does not exist in a searchable form and would require ICE to create new records via calculations or conducting data analysis, ICE did not provide that information because the agency is not obligated to create new records in response to a FOIA request." (Dkt. No. 1-4, at 3; *see also* Dkt. No. 1-8, at 3). Finally, in response to Plaintiffs' assertion that prior ICE disclosures indicate that additional data fields (or responsive records underlying ICE's prior "calculations or analyses") must exist, OPLA stated that, because ICE "reviews each FOIA request independently," "even if ICE previously performed such analysis and/or created records in response to previous requests," FOIA does not "create an obligation to answer questions, conduct data analyses, and/or create records for the purpose of responding to subsequent . . . requests." (Dkt. No. 1-4, at 3; 1-8, at 3). Accordingly, OPLA affirmed ICE's determination as to the adequacy of the search conducted in response to Plaintiffs' FOIA requests.[6]

### C. Procedural Background and Pending Litigation

Plaintiffs commenced this litigation on May 9, 2017 seeking: (i) a declaration that ICE's withholding of the requested records is unlawful; (ii) an order compelling ICE to disclose the requested records; (iii) expedited consideration of this case as provided by 28 U.S.C. § 1657; and (iv) costs and attorneys' fees. (Dkt. No. 1). Plaintiffs also have two FOIA-related actions pending against ICE before the United States District Court for the District of Columbia, the factual and legal issues in both of which are related to those at stake in this case. *See Long v. ICE*, No. 14-cv-0109 (D.D.C) (the "2014 D.C. Action"); *Long v. ICE*, No. 17-cv-01097 (D.D.C.) (the "2017 D.C. Action"). The remaining issue in the 2014 D.C. Action concerns Plaintiffs' efforts to

---

[6] Although OPLA determined that "some of the information contained" within one data field was improperly redacted in response to Plaintiffs' notice FOIA request, (Dkt. No. 1-8, at 5), its decision to remand that issue to ICE is of no consequence to the instant litigation.

6

require ICE to disclose various titles and names of data fields and elements—the metadata—used within EID to identify and sort enforcement-related information. *See generally*, *Long v. ICE*, 279 F. Supp. 3d 226 (D.D.C. 2017). The 2017 D.C. Action, on the other hand, concerns Plaintiffs' FOIA requests for data similar to those at issue here, but relating to deportations (or "removals") carried out in association with ICE's Secure Communities ("SC") program.

In their motion, Plaintiffs argue that ICE's declarations rely on conclusory arguments and contradictory evidence that undermines the presumption of good faith to which ICE is entitled in explaining the adequacy of its search and its refusal to continue to disclose the data fields that Plaintiffs requested and received in the past. (Dkt. No. 19-12, at 21–23). ICE, meanwhile, asserts that no such discrepancies exist, and therefore, the Court's inquiry begins and ends only with the adequacy of ICE's search for the records Plaintiffs requested. (Dkt. No. 15-3, at 8–10). As explained below, neither party is entitled to summary judgment at this stage of the proceedings because the record is insufficiently developed to resolve key issues of material fact remaining before the Court.

### III. STANDARD OF REVIEW

As in any other context, summary judgment in a FOIA case will only be granted where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its veracity "might affect the outcome of the suit"; a dispute of fact is "genuine" if the evidence is such that a reasonable fact-finder could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Ivey v. U.S. Dep't of Justice Exec. Office for U.S. Atty.*, No. 13-cv-00917, 2015 WL 507219, at *2, 2015 U.S. Dist. LEXIS 174341, at *5

(N.D.N.Y. Feb. 6, 2015) (citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994)); *see also Anderson*, 477 U.S. at 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

IV. **DISCUSSION**

"FOIA cases are generally and most appropriately resolved on motions for summary judgment." *Families for Freedom v. U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375, 385 (S.D.N.Y. 2011). To prevail on a motion for summary judgment, "the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). A search is "adequate" when it is "reasonably calculated to uncover all relevant documents." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "'When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request,' the key question is whether the search 'was reasonably calculated to discover the requested documents,' and not whether every document in existence was found by the search." *Thomas v. Soc. Sec. Admin.*, No. 11-cv-3698, 2013 WL 1873281, at *2–3, 2013 U.S. Dist. LEXIS 63750, at *8–9 (E.D.N.Y. May 2, 2013) (quoting *Grand Cent. P'ship*, 166 F.3d at 489), *aff'd*, 551 F. App'x 24 (2d Cir. 2014).

"In resolving summary judgment motions in a FOIA case, a district court proceeds primarily by affidavits in lieu of other documentary or testimonial evidence." *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012). To show that its search was adequate, an agency must provide "'a reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials were searched.'" *Roman v. Dep't of Air Force*, 952 F.Supp.2d 166, 171 (D.D.C. 2013) (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003)). Affidavits or declarations

"submitted by an agency are 'accorded a presumption of good faith,'" and factual discovery "relating to [an] agency's search . . . generally is unnecessary if the agency's submissions are adequate on their face." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488–89 (2d Cir. 1999) (alteration in original) (quoting *Carney*, 19 F.3d at 812).

Once an agency has satisfied its burden, the affidavits "cannot be rebutted" by a plaintiff's "purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted). Rather, a plaintiff "must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that . . . summary judgment is otherwise inappropriate." *Carney*, 19 F.3d at 812 (citation omitted). Accordingly, summary judgment may only be granted in favor of the agency if the affidavits "contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record[,] or by evidence of agency bad faith." *Grand Cent. P'Ship.*, 166 F.3d at 478 (quoting *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994)).

### A. Evidence Regarding the Search

ICE argues that it is entitled to summary judgment because its declarations demonstrate that the searches conducted in response to Plaintiffs' requests were adequate. (Dkt. No. 15-3, at 6). Affidavits or declarations offered in support of an agency's motion for summary judgement are adequate where they explain the type of search conducted, the resources searched, the terms used, and avers that "all files likely to contain responsive materials . . . were searched." *Roman*, 952 F.Supp.2d at 171.

The declarations that ICE submitted in support of its motion set out that, upon receipt of Plaintiffs' requests, ICE first identified STU within the ERO as the unit most likely to have

9

responsive records. (Dkt. No. 15-1, ¶ 18). An STU analyst then conducted a search within IIDS for each of the 148 data points described in Plaintiffs' detainer request, (*id.* ¶ 19), and each of the 132 points described in Plaintiffs' notice request, (*id.* ¶ 32). The declarations indicate that, while searching for records in response to Plaintiffs' records request, ICE "conducted a line-by-line review of the requested information taking into consideration standard reporting of detainer methodologies as well as consulting the database to query all available responsive detainer information as requested from IIDS." (*id.* ¶¶ 18, 31). For each data point Plaintiffs requested, STU determined whether the specific data point was "stored in IIDS as requested in the FOIA request." (*Id.* ¶ 20). If the "data point exist[ed] within IIDS and d[id] not require additional research, analysis, assumptions, and/or calculations, or the creation of a new record, ICE provided the data point" in its response to Plaintiff. (*Id.*).

In its declarations, ICE asserts that it "has not withheld any records" in response to the FOIA requests at issue here, because "[n]o records were found regarding the objectionable and improper requests."[7] (Dkt. No. 23-1, ¶ 6). In other words, ICE claims that it has not invoked a FOIA exemption to justify the reduced amount of data it is now disclosing in response to Plaintiffs' requests—rather, ICE argues that it did not produce certain data requested for one of three reasons: (1) "because the request in effect asked a question or constituted an implied question" rather than a request for a record; (2) the data was not reasonably described or did not exist in the form requested without additional analyses or calculations; and (3) "certain data points [that] do not exist." (Dkt. No. 15-3, at 13–22). ICE argues that responding to a request that falls into one of these categories would impermissibly require it to create "calculations and new data search and query methodologies[,] as they relate to data that ICE does not track in the

---

[7] The Court notes that, although the Complaint primarily contains allegations that ICE has withheld data that it previously disclosed in response to Plaintiffs' prior FOIA requests, neither ICE's motion for summary judgment nor the first declaration of Marla Jones directly address this claim.

manner in which the data is requested." (Dkt. No. 23-1, at ¶ 13). ICE contends that these inferential steps remove the data requests from "the scope of the FOIA's search requirements." (*Id.*, ¶ 13).

In sum, ICE argues that it has never provided data in response to certain of Plaintiffs' requested data fields; in response to others, ICE voluntarily undertook additional efforts to provide that data in the past, but it is no longer willing to do so. (*Id.* ¶ 13). Thus, where ICE once "created" new data to satisfy Plaintiffs' "objectionable and improper requests," such searches now yield no responsive records. (*Id.* ¶ 6).

### B. Plaintiffs' Evidence in Response

In response, Plaintiffs contend that ICE's declarations are inadequate to support its motion for summary judgment because they do not contain reasonable specificity of detail, are called into question by contradictory evidence in the record, and because ICE has misconstrued certain of the requests. (Dkt. No. 19-12, at 11–17; Dkt. No. 25, at 9–12). As described below, Plaintiffs dispute many of the examples ICE sets out to justify its failure to provide records. (*Id.*). These discrepancies, Plaintiffs contend, do not only undermine ICE's justification for refusing to disclose the previously provided data, but "apply with equal force to the remaining withheld records—that data that ICE has never produced in response to Plaintiffs' requests." (Dkt. No. 19-12, at 23–25).

#### 1. Requests Containing a Question or an Implied Question

"FOIA neither requires an agency to answer questions disguised as a FOIA request . . . or to create documents or opinions in response to an individual's request for information." *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 828 F.2d 137 (D.C. Cir. 1987). On this basis, ICE argues that 19 of the data fields Plaintiffs seek under each of its FOIA requests are improper because they "in effect asked a question or constituted an implied question, the answers to which

that do not exist in the database in the manner requested, . . . and thus would ultimately lead to the creation of a new record." (Dkt. No. 15-3, at 13). In response, Plaintiffs challenge ICE's interpretation of those requests, as well ICE's characterization of these requests as questions.

ICE points to a handful of requests as exemplars of those that, by its reading, improperly ask a question. Plaintiffs' request No. 8 seeks data points indicating whether, "[f]ollowing the preparation of the Form I-247/I-247D, ICE administratively arrested [the] individual," and, "if yes, [the] date of ICE arrest." (Dkt. No. 1-1, at 2; Dkt. No. 1-5, at 1). According to the Jones declarations, ICE is not obligated to respond to such a request because, to do so, an analyst would have to "assume that for a single alien, ICE issued as single detainer, when it is possible that more than one was issued" and "that an arrest following an issuance of a detainer was the result of that detainer." (Dkt. No. 15-1, ¶ 10; Dkt. No. 23-1, ¶ 16). In response, Plaintiffs accurately point out that the plain language of the request does not require such an assumption, as nowhere does it ask for disclosure of data corresponding only to arrests "as a result of" the Form I-247/I-247D. Instead, as Plaintiffs argue, it merely seeks data pertaining to arrests "following" the issuance of the form; that is "only data temporally related to the detainer or notice." (Dkt. No. 19-12, at 20).[8] And "[a]n agency is 'bound to read [a request] as drafted, not as . . . agency officials . . . might wish it was drafted." *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 609 (S.D.N.Y. 2018) (quoting *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)).

Furthermore, Plaintiffs' request Nos. 25, 26, and 27 are for records responsive to "U.S. Citizen spouse (yes/no)," "U.S. Citizen Parents (yes/no)," and "U.S. Citizen Child (yes/no)," respectively. (Dkt. No. 1-1, at 2; Dkt. No. 1-5, at 2). The Jones declaration argues that providing relationship data would impermissibly require ICE to create new records by:

---

[8] Several other of Plaintiffs' requests contain the same language "[f]ollowing the preparation of" a detainer or notice.

> (1) [B]uild[ing] a new data query to comprehensively identify an "alien" record and all reported spousal records recorded for the "alien" record in the system (2) append[ing] the current data model in order pull all relative information for these identified alien records who had a detainer prepared in the requested timeframe, (3) analyz[ing] citizenship claims and create a flag for U.S. citizenship for those relatives while making further assumptions that null information implies either they are not married or other citizenships for spouses must be Non-U.S. Citizenship.

(Dkt. No. 15-1, ¶ 24). Plaintiffs note, however, that this assertion is contradicted by data ICE provided in the context of the 2017 D.C. Action, which indicate that the database does, in fact, contain data fields that track information requested or information reasonably similar to the information requested. (*See* Dkt. No. 19-1, at ¶ 36(a)–(b); Dkt. No. 19-7 (listing "Personal Relationship," "Relative_Citizenship Country," and "Relative_Birth Country" data fields); Dkt. No. 19-9 (describing "Number_Children_and_Nationality" and "Marital_Status" data fields)).[9]

Finally, the Jones declaration also argues that ICE cannot respond to Plaintiffs' "aggravated felon (yes/no)" request without creating a new record, because "these are data points that ICE does not track or record in an operation manner, and thus these data points do not exist in the IIDS database." (Dkt. No. 15-1, ¶ 37). As Plaintiffs argue, however, both data sets ICE provided in response to the FOIA requests at issue in this case contain the field "Aggravated Felony Yes No" and accompanying data values for thousands of individuals.[10]

### 2. Requests Requiring Interpretations and/or Assumptions

"For a FOIA request to be proper, the request must 'reasonably describe' the records sought." *Seife*, 298 F. Supp. 3d at 611 (quoting 5 U.S.C. § 552(a)(3)(A)). ICE asserts that it did

---

[9] Although ICE attempts to explain some of the apparent discrepancies between the data fields disclosed in the 2017 D.C. Action and those ICE has denied maintaining in the context of this litigation, (Dkt. No. 23-1, ¶¶ 24–26), the second Jones declaration does not address the evidence Plaintiffs have raised with regard to the relationship-related data fields described here.

[10] To the extent that ICE objects to any "yes/no question," (Dkt. No. 23, at 6), Plaintiffs point out that many of the data fields that ICE has explicitly acknowledged and disclosed are themselves formatted as questions using "yes/no" as their response variable. (*See, e.g.*, Dkt. Nos. 15-7; 15-8).

not fulfill 40 of the "data points" Plaintiffs sought under each of their FOIA requests on the basis that, because "many were not reasonably described and sufficiently detailed," (Dkt. No. 15-3, at 19), they impermissibly required "ICE to make interpretations and assumptions before building a new record based off of additional analysis and calculations," (Dkt. No. 15-1, ¶ 26; Dkt. No. 23-1, ¶ 18).

Plaintiffs argue that this assertion is undermined by the fact that, in the past, ICE managed to routinely interpret 19 of the 40 requests at issue here to a degree sufficient to provide data in response. (*See, e.g.*, Dkt. No. 19-12, ¶¶ 10–12). Plaintiffs also cite to specific requests that ICE has failed to adequately explain. For example, Plaintiffs' requests Nos. 29 through 32 and 34 through 39 seek records or data pertaining to an individual's "most serious criminal charge" or "most serious criminal conviction." (Dkt. No. 1-1, at 2–3; Dkt. No. 1-5, at 2). Although the Jones declarations argue that "a response to [these requests] would require interpretations and assumptions because this field does not exist within IIDS," (Dkt. No. 15-1, at ¶26; Dkt. No. 23-1, at ¶ 18), Plaintiffs have produced evidence indicating that ICE has acknowledged the existence of those data fields and disclosed the data they contain in the context of other litigation, including the 2017 D.C. Action,[11] (Dkt. No. 25-1, ¶ 22(b); Dkt. No. 19-1, ¶ 32).

Furthermore, Plaintiffs' request No. 14 seeks records or data showing the "earliest data reflecting [an individual's] presence in the U.S." (Dkt. No. 1-1, at 2; Dkt. No. 1-5, at 2). The Jones declaration contends that ICE cannot respond to the request because "the only field for

---

[11] The second Jones declaration contends that this apparent discrepancy arises from Plaintiffs' request for data regarding "two different types of populations"—removals and notifications—which "may not have the same information collected for each form type." (Dkt. No. 23-1, ¶ 25). The record, however, does not indicate how this explanation squares with Jones' own description of the database and its purpose: a "common database repository for all records created, updated, and accessed," (Dkt. No. 15-1, ¶ 6), that "maintains information related to the investigation, arrest, booking, detention, and removal," and permits analysts to "access a person-centric and/or event-centric view of the data," (*id.* ¶ 7).

14

'entry date' is not a mandatory field," "ICE cannot confirm 'earliest data' in the U.S., as an alien may have been present in the U.S. for years," and it "requires a[n] STU analyst to assume the 'earliest data reflecting presence in the U.S.' would be the earliest entry data recorded in the system." (Dkt. No. 15-1, at 13). Plaintiffs' request, however, is not limited to "entry date," but plainly seeks "data reflecting" an individual's presence in whatever form in which ICE maintains it. And Plaintiffs have adduced evidence showing that ICE has acknowledged the existence of substantively similar data fields in the context of other litigation. (Dkt. No. 25-1, ¶ 22(b) (acknowledgement of "Time Illegal in US" data field)).[12]

### 3. Requests for Data Fields that ICE Asserts Do Not Exist

Finally, Plaintiffs have also identified evidence in the record contrary to ICE's assertions that certain data fields, the contents of which were never previously disclosed, do not exist in the database.[13] For example, Plaintiffs indicate that ICE has never previously disclosed data in response to Plaintiffs' request for "[s]equence number or other designation . . . to identify records relating to the same alien." (Dkt. No. 19-1, ¶ 35). The Jones declaration states that "IIDS does not contain one single identifier for the same 'alien.'" (Dkt. No. 15-1, ¶ 28).[14] As Plaintiffs point

---

[12] The Court notes that, in many instances, the declaration submitted by Jones following Plaintiffs' briefing on these issues simply restates many disputed explanations from the first Jones declaration verbatim with no additional information, including the conclusory assertion that ICE is not obligated to respond to many of Plaintiffs' requests because doing so would require an analyst to "research potential data values in IIDS, the operational use of those values inputted by officers that do exist, and make further assumptions that these data values satisfy the intent of the requested terms." (Dkt. No. 15-1, ¶¶ 24, 26, 37, 39; Dkt. No. 23-1, ¶¶ 13, 16, 18).

[13] ICE additionally argues that it does not maintain data "as requested" that is responsive to Plaintiffs' requests Nos. 51 and 52 for "LESC L1, L2, L3" and "All information used in determining the LESC level for each person." (Dkt. No. 23-1, ¶¶ 19–20). Although Plaintiffs have adduced evidence indicating that ICE does use designated offense "levels" in determining whether issuance of a detainer is appropriate, (Dkt. No. 25-1, ¶ 22(f)), that evidence does not contradict ICE's assertion that it does not maintain corresponding data within the database.

[14] The Court notes that Plaintiffs' request was not, as ICE describes, limited to "one single identifier." Furthermore, the fact that these fields were redacted from the spreadsheets under a FOIA exemption does not lessen the degree to which their existence contradicts ICE's assertion that the database does not contain "sequence numbers or other designations" specific to individual aliens. In any event, the record indicates that ICE ultimately determined that "some of the information contained in the 'Eid Civ Pers Id' field" was improperly redacted and "releasable to [Plaintiffs] under the FOIA." (Dkt. No. 1-8, at 60).

out, however, ICE's response to the FOIA requests at issue in this litigation did disclose the existence of data fields titled "Subject Id," "Eid Civ Pers Id," and "Eid Civ Id." (Dkt. No. 15-7, at 2).[15]

### C. Analysis

As a general matter, ICE is correct that FOIA does not require an agency to answer interrogatories or create new records to fulfill the exact parameters of every FOIA request it receives. *See Forsham v. Harris*, 445 U.S. 169, 186 (1980) ("[T]he FOIA imposes no duty on the agency to create records."). FOIA does not compel an agency to, on demand, create an inventory of every document it possesses relating to a certain subject, *Nat. Sec. Counsel. v. CIA*, 898 F. Supp. 2d at 271–72, provide reasons for agency action (or inaction), *Kimm v. Dep't of Justice*, No. 96-cv-1307, 1996 WL 509724, at *3, 1996 U.S. Dist. LEXIS 13018, at *7–8 (S.D.N.Y. Oct. 1, 1996), or answer questions to explain the conduct of an agency official, *Orlansky v. Dep't of Justice*, No. 15-cv-0649, 2016 WL 900631, at *4, 2016 U.S. Dist. LEXIS 29978, at *8–9 (D.D.C. Mar. 9, 2016). "An agency," however, "has a duty to construe a FOIA request liberally," *Santos v. DEA*, 357 F. Supp. 2d 33, 37 (D.D.C. 2004), and "pursue leads that raise red flags pointing to the probable existence of responsive agency records that arise during its efforts to respond to a FOIA request," *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 498 (S.D.N.Y. 2010) (quoting *Wiesner v. FBI*, 668 F.Supp.2d 164, 170–71 (D.D.C. 2009)). And, if an agency "determines that [a request] does not reasonably describe the records sought, the component should inform the requester what additional information is needed or why the request is otherwise insufficient." 6 C.F.R. § 5.3(b).

---

[15] ICE's response to Plaintiffs' cross-motion for summary judgment asserted several new arguments claiming, *inter alia*, that FOIA requires only disclosure of "records," but not "data" or "information." (Dkt. No. 23, at 10). At oral argument, however, ICE declined to further pursue this assertion and conceded that data points are records are subject to disclosure.

16

In this case, as Plaintiffs argue, ICE has misconstrued certain requests, and Plaintiffs have provided tangible evidence regarding ICE's response to other FOIA requests and inconsistencies within ICE's declarations, all of which amount to more than "purely speculative claims about the existence and discoverability of additional responsive records." *SafeCard Servs., Inc.*, 926 F.2d at 1200 (internal quotation marks omitted). The Court therefore finds that Plaintiffs have met their burden of showing that summary judgment based upon the Jones declarations is not appropriate. *Carney*, 19 F.3d at 812. Accordingly, ICE's motion for summary judgment is denied, both with regard to the data fields it previously provided in response to Plaintiffs' FOIA requests, as well as the remaining fields to which it has never provided responsive data. The issues of material fact remaining before the Court also preclude summary judgment in favor of Plaintiffs.

Accordingly, both parties' motions for summary judgment are denied.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that both parties' motions for summary judgment (Dkt. No. 15, 19) are DENIED.

**IT IS SO ORDERED.**

Dated: September 27, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

17