## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN B. LONG<br><br>and<br><br>DAVID BURNHAM<br><br>          Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT<br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 17-cv-00506<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF PATRICIA J. DE CASTRO, Ph.D.

I, Patricia J. de Castro, Ph.D., pursuant to 28 U.S.C. §1746, hereby declares as follows:

### INTRODUCTION

1.    I am an Operations Research Analyst within Enforcement and Removal

Operations ("ERO"), Law Enforcement Systems Analysis ("LESA"), Data Driven Management

Unit, at U.S. Immigration and Customs Enforcement. I have held this position since April 2018.

As an Operations Research Analyst, my responsibilities include working with a team of analysts,

statisticians, detention and deportation officers, program analysts, and mission support staff to

support data-driven management and FOIA processes and litigation.

2.    Prior to my work at ICE, I worked in the U.S. Department of Energy Loan

Programs Office. There I provided strategic planning, operations and staff planning, budget

planning, standard procedures development, enterprise risk management and internal controls,

and other operations expertise for a $45 billion loan portfolio comprising advanced and emergent

technology energy projects.  Prior to that I taught secondary math courses for approximately 20 years.

3.        I hold a doctorate degree in University/Business Administration and have expertise in business processes—particularly those of loosely-coupled entities such as many government agencies and universities.

4.        I have been tasked with maintaining LESA efforts to more fully support the ICE Office of the Principal Legal Advisor ("OPLA") in FOIA litigation responses, due to the recent increase in the quantity, complexity, and pace of FOIA requests, along with any associated litigations.

5.        I make this declaration in my official capacity based on my personal knowledge, my review of records kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

6.        This Declaration supplements and supports the previous Declarations of Marla Jones made in this case dated November 8, 2017 and January 25, 2018.

## LAW ENFORCEMENT MISSION / OPERATIONS SECURITY

7.        U.S. Immigration and Customs Enforcement is a law enforcement agency with more than 20,000 personnel in more than 400 offices in the United States and around the world. The agency's investigative authorities are related to our country's efforts to combat terrorism at home and abroad.  ERO partners closely with Homeland Security Investigations ("HSI") to prevent terrorist groups, illicit procurement networks, and hostile nations from acquiring U.S. military hardware, sensitive technical data, dual-use technology, and materials used to develop weapons of mass destruction.  Immigration enforcement is the largest single area of responsibility for ERO and is a critical component of the overall safety, security, and well-being

of our nation. The ICE vision reads: "We use our unique and powerful combination of law enforcement authorities to close vulnerabilities that can be exploited to harm our homeland in the real and virtual worlds." ICE stands at the forefront of our nation's efforts to strengthen border security and prevent the illegal movement of people, goods, and funds into, within, and out of the United States.

8.      Most data on ICE computer systems is law enforcement sensitive, also known as sensitive but unclassified. Unauthorized disclosure or misuse of this law enforcement data would increase risk to the physical safety of ICE employees and contractors, immigration attorneys and judges, and the U.S. public. The ICE database is used for monitoring active federal criminal investigations, maintenance of investigative records related to the execution of arrests and other enforcement actions, the detection and apprehension of criminals, adjudication proceedings, and the housing, transportation, and safekeeping of aliens in our custody.

9.      ERO personnel safeguard this data, manage ERO records as a national asset, and protect critical agency information. ERO must ensure operations security ("OPSEC") and public safety by anticipating and attempting to mitigate risks to the operation and the U.S. from bad actors. An example of OPSEC in daily life is the measures one might take when leaving home for a vacation. One might anticipate that their home would be a more likely target for bad actors if newspapers and mail piled up, the lawn went unattended, and lights were out. For that reason, one would deny adversaries any such indicators by having a neighbor gather newspapers and mail, place lights on a timer, and hire a lawn care service. The same is true with ICE data security. The ICE mission would be placed in jeopardy if bad actors gained access to information about federal law enforcement techniques and procedures which would enable them to circumvent the law. Therefore, ICE personnel must take reasonable steps to anticipate and

mitigate risk--to ensure that ICE data are used appropriately. One of those steps is to ensure that FOIA requesters are given all required records without jeopardizing either privacy or law enforcement interests.

## PAST DATA PRODUCTION FOR PLAINTIFFS

10.    ERO personnel have made every effort, over several years, to accommodate Plaintiffs' *many hundreds of complex FOIA requests*. ERO comes to this Court with clean hands and a strong record of good faith in prior production of data—including years' worth of voluminous and regularly requested data--even when such production was discretionary, unduly burdensome, required analysis and calculations, answered questions, or required the creation of new records. Our principled staff members have worked diligently to allow the public, and Plaintiffs, access to every record that should be released through the FOIA.

11.    From 2011 to July 2016, ERO analysts discretionarily performed analysis, research, and creation of new records to fulfill Plaintiffs' FOIA requests. Plaintiffs have consistently requested data in a format which does not correspond to the structure of IIDS (ICE Integrated Decision Support) ("the database")[1]: they seek to follow an *individual* through the immigration law enforcement system--but the database is not structured to produce data in that format, and data requested cannot be produced from the database without analysis, calculations, and the creation of new records. Plaintiffs' multivariate requests, in this case involving individuals for whom a Detainer was issued, and with more than 100 data points and sub-data points for that population of interest, means ERO analysts would be required to take disparate data sets and create new, temporary "matches" between data that exist in separate modules in the

---

[1] The Court notes the distinction between the EID and IIDS, but for the sake of clarity, this discussion refers to IIDS or "the database." Plaintiffs note that the differences between EID and IIDS "do not affect Plaintiffs' current requests for relief." (Dkt. No. 19-12 at 9 n.4).

database. As described more fully below, the database structure was designed for law enforcement operations, ERO reporting requirements for Congress and the President, and to accommodate all FOIA requests that do not require *new* correlations, analysis, calculations, or the creation of new records.

12.      Some of the data that Plaintiffs request is readily available and was already produced; however, Plaintiffs have insisted that ERO either (1) create new *correlations* of data that are not correlated in the database--so Plaintiffs can follow individuals through the system, or (2) provide data with associated random unique IDs--so Plaintiffs can conduct the required analysis and calculations themselves to follow the individual through the system. The FOIA does not require ERO *to create* new data combinations/correlations, nor *to create* new random unique IDs connecting individuals for Plaintiffs' interests. In addition, Plaintiffs' assertion that they prefer to "conduct any required analysis ourselves" belies the fact that either of the above options would require ERO to create something new for Plaintiffs first. In option (1), ERO would have to create new data combinations through extensive programming, analysis, calculations, and the creation of new reports; and in option (2), ERO would have to create and maintain new randomized unique IDs, after creating data connections between events for individuals. Not only would generating randomized unique IDs constitute the creation of new records; it would also constitute a cybersecurity risk (discussed below), and would be exempt under FOIA Exemptions 7(A), 7(C), 7(E), and/or 7(F). It would also require the maintenance of those random unique IDs, and would ultimately not enable Plaintiffs to achieve their goal of following an individual through the system because cybersecurity concerns would require that individuals be assigned *different* random unique IDs in ensuing productions.

13.    Plaintiffs are mistaken when they assert that any data is "missing" in this case. They imply that because ERO produced similar data for a Removals law enforcement action in the DC FOIA case (17-cv-1097), the same data is "connected" to a Detainer law enforcement action. That is not so. Different data is collected and entered when different law enforcement actions occur. We have produced data to Plaintiffs in this case that is collected for an individual when a Detainer law enforcement action occurs. Where different detainer forms have slightly different data entered, we have indicated that clearly in Exhibit A, which lays out all requested data and all provided data.

## AGENCY DECISION TO STOP CREATING NEW RECORDS

14.    Due to a precipitous (90%) increase in the overall volume and complexity of FOIA requests submitted to ERO in the past two years, ERO now lacks the personnel and computational resources to perform beyond the requirements of the FOIA by creating new records. ERO has simply stopped being able to go beyond the FOIA requirements to continue creating new records or conducting analysis for Plaintiffs. This change in approach is based purely on increases in FOIA requests and resource limitations. We must meet FOIA requirements for all requesters. This necessitates balancing the needs of other requesters with Plaintiffs' needs for data, as well as balancing personnel resources with FOIA tasks and other mission-essential tasks.

15.    ERO and the ICE Office of the Principal Legal Advisor ("OPLA") briefed the ERO Executive Associate Director ("EAD") on July 29, 2016, regarding Plaintiffs' FOIA requests, and ERO's resource and personnel constraints. OPLA advised ERO on the legal requirements of the FOIA, including that the FOIA does not require the creation of records, the conduct of analysis or research, nor does it require the agency to answer questions, and

recommended that ERO stop doing so on FOIA requests. The ERO EAD concurred with OPLA's recommendation. The decision had nothing to do with politics and, contrary to Plaintiffs' assertions, this change in the agency's position did not take place on or after January 20, 2017. The decision was made more than three months before the presidential election which occurred on November 8, 2016, and was based solely on the FOIA statute and the FOIA case law, neither of which require agencies to answer questions or create records for a FOIA request. From that day forward (July 29, 2016), ERO LESA began implementing the agency's new posture. Because FOIA requests were in various stages of completion at that time, as well as a large backlog that existed at the time, the discretionary responses did not stop at the same exact time, and the change in discretionary responses slowly rolled out after that date.

16.    ERO supports the full production of records required under the FOIA—for Plaintiffs and all members of the public. Plaintiffs have relied on and demanded compliance with the FOIA. ERO is also entitled to follow the FOIA, as written, and not be required to extend its efforts for Plaintiffs beyond those required by the FOIA—as we have done since 2011. Doing so has caused disruption of ERO analysts' ability to fulfill their operational mission: producing official ERO and ICE reporting for senior ICE administrators, Congress, and the President. Plaintiffs' complex queries have exceeded the computational power of ERO's extremely large database, often causing it to "crash," and have used such a high percentage of analysts' time as to cause substantial difficulty in maintaining the schedule of regular official reporting and ad-hoc reporting for members of Congress and the President.

17.    Plaintiffs' assertions regarding the two related FOIA actions before the United States District Court for the District of Columbia (cases 17-cv-01097 and 14-cv-109), and differences between what was produced there and what can be produced here, are seriously

misguided. Plaintiff Long states accurately, "Each action may have separate related forms and specific recorded information..."[2] - the DC case concerns removal actions and removals data, and this case concerns detainers and detainers data. However, Plaintiff seems to believe the opposite of what is true regarding the database when she says, "...the population of individuals subject to detainers and those subject to removal are almost by definition interrelated.... Indeed, it would thwart ICE's stated operational objectives if the data were maintained separately for each action than consolidated for each person." *Id.* When a removal action occurs, officers enter removal information, plus a few other data items, into the database. Removal actions and Detainers are indeed "unconnected" in different modules of the database, and data associated with each is not the same. Detainers are forms placed on an individual in law enforcement custody. A detainer form is often placed on an individual that never comes into ICE custody. Data associated with Removals actions can be produced for Removals requests; data associated with Detainers can be produced for Detainers requests. Although Plaintiffs seem to imply that data related to removals can be produced for detainers, that is not the case. The database is not structured that way. Creating a "connection" between data for different law enforcement actions requires ERO to conduct analysis, calculations, and create new records.

18. The DC cases are unrelated to this case except for Plaintiffs' continuous demand for data correlations that do not exist but for analysis, calculations, and the creation of records. One DC case (17-cv-1097) tests whether correlating all individuals' enforcement history with ICE based upon *Removals* associated with ICE's Secure Communities program constitutes analysis, calculations, and/or the creation of records when the database is not structured in a manner that would correlate items Plaintiffs wish to be correlated. The other seeks the ICE

---

[2] Reply Declaration of Susan B. Long, Document 25-1, p. 12.

database schema (14-cv-109), which the agency has argued is Law Enforcement Sensitive and exempt from production pursuant to FOIA Exemption (b)(7)(E). Removals actions and Detainers are not "connected" in the database; different data is collected with these different actions. Because the database is event-centric, these actions are not "connected." Plaintiffs seem to imply that, in this litigation, data that was formerly produced is now "missing." That is not true. Detainer information has been fully produced. There is no data that was formerly produced and did not require analysis, calculations, connections, or the creation of the new records, that is not being produced here.

19.    Plaintiffs' Reply Declaration illustrates Plaintiffs' misunderstanding of the database. Plaintiff Long stated that: "the source of the records is the same database, which ICE has explained is person-centric, or designed to provide information about each individual who becomes a part of an ICE investigation or action, from notices and detainers to potential deportation."[3] It is simply untrue that the IIDS ("the database") is person-centric; the statements in Marla Jones' Declaration described the EID, *which does not have a reporting capability*.[4] Marla Jones stated that "[t]he EID provides users with the capability to access a person-centric…**view** of the data."[5] [Emphasis added.] In other words, ICE personnel have *some* capability to **view** *some* data for one individual in the EID manually--but ICE *cannot report from the EID*. The ICE database (IIDS) pulls data from the EID, but IIDS contains no master "individual" record that allows ERO to pull up all actions related to that individual. The database is structured to *track law enforcement actions*. When Plaintiffs seek data and information about following an individual through the system, we must conduct analysis and

---

[3] Reply Declaration of Susan B. Long, Document 25-1, p. 12.
[4] Declaration of Marla Jones, Document 15-1, p. 3, para 7.
[5] Id.

calculations and create new records because law enforcement actions regarding individuals exist uncorrelated to each other in our database.

## PLAINTIFFS' REQUESTS ARE UNDULY BURDENSOME

20.     The LESA/STU Unit is responsible for responding to LESA FOIA requests, in addition to their primary mission: preparing official ERO and ICE reports for senior ERO and ICE administrators, Congress, and the President. Those official reports must be prepared regularly and on schedule. In addition, LESA/STU also must prepare official ad-hoc reports for any member of Congress or the President regarding ICE or ERO operations or events.

21.     LESA/STU recently analyzed its hours spent responding to Plaintiffs' requests. In FY17, Plaintiffs' FOIA requests required LESA/STU personnel to expend approximately 1,912 hours—50% of all hours worked by the entire unit (at that time eight people; assuming a 40-hour work week). In FY18, Plaintiffs' 553 FOIA requests (261 assigned to LESA/STU) required LESA/STU personnel to expend approximately 2,451 hours--approximately 57% of all hours worked by the entire unit (at that time nine people); and in the first seven months of FY19 to date, Plaintiffs' 224 complex FOIA requests (152 assigned to LESA/STU) --still requesting case-by-case data--have already required ERO personnel to expend approximately 1,807 hours— approximately _65% of all hours worked by the entire unit of ten people_. These figures are approximate and modest--and exclude all legal personnel hours for responding to Plaintiffs' appeals and multiple litigations, and ICE and ERO enterprise FOIA personnel hours for assigning FOIA requests, tracking requests, and administering necessary redactions and lawsuits. Please understand that this massive expenditure of time and resources is WITHOUT the agency discretionarily conducting analysis and calculations and creating new records for FOIA

requestors not required by the FOIA, which the agency stopped on July 29, 2016, as described above in Paragraph 15.

22.     ERO not only lacks the resources and personnel to dedicate more than 64% of all STU staff hours to Plaintiffs; they must also respond to other FOIA requesters, in addition to fulfilling ERO's primary law enforcement mission: creating regular official reports for the agency, Congress, and the President.  The amount of time ERO has dedicated to Plaintiffs' numerous and complex requests, and responding to Plaintiffs' lawsuits, is simply no longer possible unless LESA/STU abandons its mission and makes its primary mission conducting analysis for Plaintiffs.  Plaintiffs' numerous and byzantine requests (for data far beyond FOIA requirements, and trending upward in number and complexity) meet the threshold of "unduly burdensome," and are monopolizing LESA resources needed for other mission-critical tasks.

23.     The database is exceedingly large and has computational power to conduct all operationally-required data reporting.  When statisticians have been required to design new ad-hoc queries (that are not maintained or updated—and will not work in the future as the data source changes) to discretionarily create new, multifactorial data connections for Plaintiffs, the computer has many times "crashed"—in other words, its computational power was exceeded. The ICE database was not designed, and cannot be used, to create complex new connections for Plaintiffs, because causing the computer to "crash" would substantially interfere with the agency's computer system and therefore has a direct, negative impact on the ICE mission.  When this occurs, STU/LESA database user must exit the system, wait for a reboot, and re-try the work being attempted before the "crash."  Simply put, there are hard limitations to the ICE database, which cannot handle the new data correlations that must be created to respond to Plaintiffs' byzantine requests.  The FOIA does not require ICE to burden its computational capacity to the

extent that the computer "crashes," which substantially interferes with the agency's computer system.

24.    ERO has decided to stop creating discretionary data since it no longer has the resources to go beyond the requirements of the FOIA, but also because the number, as well as the complexity, of Plaintiffs' requests is so great as to cause STU analysts to be unable to conduct other regular operations.  Plaintiffs' requests often seek correlations for a particular population of individuals and time period, with greater than 100 items and sub-items, in a format that the database architecture does not support.

## DATABASE STRUCTURE, THE "FOIA RESTAURANT," AND WHY PLAINTIFFS' REQUESTS CANNOT BE COMPLETELY ACCOMMODATED

25.    This Court has found that this discussion refers to the IIDS ("the database").[6]  The database was designed to be used for decision support and strategic planning purposes.  It maintains information in distinct modules (law enforcement actions), i.e., detention, detainer, removal--versus tracking individuals.  The information therein is granular and detailed but is not neatly arranged to track individuals and their enforcement history, such as all detainers, all removals, etc. within ERO--although Plaintiffs' requests consistently seek information tracking individuals and their enforcement history.

26.    When an ICE law enforcement action occurs, officers input information that is needed operationally for that event.  For example, Detainer entries comprise data from the detainer form, plus a few other details (See Exhibit B, Exhibit C, and Exhibit D). The Detainer entries will not contain information related to future events that had not even occurred yet, such as future arrests or future departures, or other data not needed operationally at that moment in

---

[6] Memorandum Decision and Order, Document 32, filed 9/27/18, at p. 4, footnote 3.

time, for that Detainer. An individual who has numerous Detainers will have numerous Detainer entries, unconnected to each other in the database. The same is true for other law enforcement actions, i.e., arrests, removals, detention: there is not one comprehensive master record that allows ERO to pull up all enforcement history (i.e., all arrests or book-ins) related to that individual. This database structure, based on law enforcement actions, was designed to allow STU/LESA to prepare and publish regular summary reports regarding law enforcement actions-- for the awareness of the public, ICE leadership, for Congress, and for the President, as well as ad-hoc reports for ICE leadership, members of Congress and the President. Simply put, it was designed for law enforcement operations. *Plaintiffs regularly request more data from ICE than any member of Congress or the President of the United States.*

27.    Plaintiffs assert that STU/LESA analysts are withholding not only data formerly discretionarily provided, but also data related to Detainers which are subject to the FOIA. This is not so. ERO is compelled to respond to this false allegation due to TRAC's allegations in the D.C. litigation (17-cv-1097) which is being misused to confuse the Court here. Information reported from a detainer form is entirely different than information recorded and reported when removing an individual. Plaintiffs are incorrect when they tell this Court that the database is set up to "centralize the data and allow the agency to follow an individual through its entire enforcement process."[7] This is the opposite of what ICE requires for its operations, and precisely why the database is set up to maintain data regarding actions, and not follow the individual through the system. The only differences here remain the type of detainer or notification form that was requested in each request.

---

[7] Reply Declaration of Susan B. Long, Document 25-1, p. 12.

28.    ERO statisticians have only the tools and database as they exist. The ICE database has limited computational power. The data is not arranged by individuals, but by law enforcement actions (i.e., detainers, removals). It was designed for the needs of a law enforcement agency and fulfills ERO's operational needs, in addition to fulfilling the needs of FOIA requestors who do not seek analysis or creation of new records. To provide the data to Plaintiffs in the manner requested would require ICE to far exceed the requirements of the FOIA.

29.    In an attempt to create an analogy that I hope can shed light on this complex FOIA request, at an easier to understand level, pulling data from the database can be likened to a "FOIA Restaurant," where any entrée (data points entered when a law enforcement action occurs) on the menu (database) can be ordered. In the "FOIA Restaurant," FOIA rules apply. Customers may not substitute items or ask for items to be added to an entrée—the entrée exists in the database with only the ingredients (data points) listed, and no other ingredients. A customer may ask for a side order of one ingredient (data point), but it must be served by itself on a plate. A customer may ask for another side order, but it must also be served by itself as well, uncombined with other side orders—since combining ingredients anew requires the chef (STU personnel) to blend ingredients (data points) that were not blended already (analysis), and thus create a new entrée (create new records) that does not appear on the menu (database). However, the customer may combine their own ingredients (data points) however they would like. The "FOIA Restaurant" has limited personnel and operating hours, so ordering dozens or hundreds of entrées at once (unduly burdensome and would substantially interfere with the agency's computer system) causes the chefs (STU personnel) to be so engaged that they are unable to serve other customers (conducting their mission, or other FOIA requesters) or cause the kitchen equipment to overload ("crash"). The "FOIA Restaurant" is not required to reveal its

recipes (database structure) or its cooking methods (law enforcement techniques and procedures).

30.     When Plaintiffs ask for the Detainers (entrée) from the "menu," STU/LESA personnel can easily prepare that "entrée." Officers enter a combination of data (entrée) when a detainer occurs, and that "entrée" appears in the database (menu). However, no extra data points (ingredients) appear in the database associated with that Detainer (entrée), i.e., an arrest that occurred after a Detainer. Simply put, a detainer entered into the database *contains no information about what happened following that detainer*. Therefore, when Plaintiffs seek a Detainer (entrée) associated with other law enforcement actions (entrées)--such as an arrest following a detainer--they are asking for multiple new correlations to be created (new entrées) to be made from the database (menu) to follow individuals through each of those events (multiple entrées to all be combined into one big, new entrée that does not appear on the menu). This requires much analysis, calculations, work, and computational power due to the database limitations and structure. The FOIA "menu" (aka database) is the tool available, as-is, to the agency (Restaurant) to fully comply with the FOIA. The "FOIA Restaurant" cannot be required to create new data combinations (entrées) or new single menu items (data points) that do not exist, combined with other menu items (data points), into new "entrees" on the menu (database). Plaintiffs' requests, including the instant ones and others pending, clearly meet the threshold for requiring analysis and requiring the creation of new records. The "FOIA Restaurant" has met its requirements.

31.     When a FOIA requester asks for non-exempt information related to a particular law enforcement action (entrée) (i.e., Detainers), the "FOIA Restaurant" can easily and quickly produce the data (entrée). When a FOIA requester asks for non-exempt event information

related to a different action (entrée), i.e., Detention, the "FOIA Restaurant" can easily and quickly produce that entrée as well.

32.     However, creating multiple new connections (entrées) is exceedingly burdensome and requires creation of complex new ad-hoc queries which can be used only once (because when data update, the query no longer works), analysis, and thus the creation of a new, temporary combined record (entrée). That is what ERO statisticians face each time Plaintiffs request seeks not only one intersection, but dozens to hundreds of new sub-intersections, which do not automatically intersect in the ICE database, and for which multiple new, temporary computer programs and hundreds of hours are required, just to create a temporary new record for Plaintiffs.

33.     Requiring ERO's "FOIA Restaurant" to exceed the FOIA requirements transforms ERO into a giant computer research firm captive to the whims of Plaintiffs at great public expense (a "FOIA Restaurant" where one customer uses 65% of all the chefs' time). The amount of time that has been required to conduct these analyses, because Plaintiffs have insisted on information about individuals that does not exist as requested, has been unduly burdensome by any standard—and most certainly meets that threshold when Plaintiffs' FOIA requests currently require 65% of all personnel hours of the LESA/STU Unit, as is currently the case (10 LESA/STU Personnel, assuming 40 hours/week). As stated previously in Paragraph 21, this massive expenditure of time and resources for Plaintiffs' requests is WITHOUT the agency discretionarily conducting analysis and calculations and creating new records for other FOIA requestors not required by the FOIA, which the agency stopped on July 29, 2016. If the agency were required to exceed the FOIA requirements, this 65% of all personnel hours of the LESA/STU Unit would increase even further.

34.     If this Honorable Court were to order ERO to produce data which would require the analysis, calculations, and the creation of *new records* as described above (offering substitutions and/or items that do not appear on the menu), that would essentially require ICE, which is now at the center of confounding political disquietude nationwide, to (1) exceed the requirements of the FOIA and use more than 65% of all personnel hours of the LESA/STU Unit, essentially turning the LESA/STU Unit into a giant computer research firm; or (2) be forced to develop or purchase an entirely new computer program or system (new menu), at great expense (likely several million dollars), for FOIA requesters who seek data not needed for enterprise operations, but following individuals. Plaintiffs' collection of data regarding individuals also contributes to cybersecurity risk, as well as PII risk, for the individuals named. Individuals in our database carry privacy protections, and some require legal protections associated with being asylum seekers or informants. Also included in the database are terrorists, international gang members, and other violent criminals. At least half the data in the database is considered law enforcement-sensitive and thus subject to FOIA exclusion.

35.     Ultimately, the problem is that Plaintiffs seek data (and extensive data connections) concerning individuals, and the ICE database structure does not accommodate that format. When informed of this fact, Plaintiffs have numerous times offered to accept data with randomized unique ID numbers for individuals, with the stated intention of assembling the requested data intersections (to construct the "individual") on their own. These randomized unique ID numbers first would have to be created, and then maintained by ERO, which exceeds the requirements of the FOIA. Even if it did not exceed the requirements of the FOIA, the production and release of randomized unique ID numbers constitutes cybersecurity risk. Modern technology allows re-identification/de-encryption of data with relative ease. This is

particularly true if the same randomized unique ID numbers were used *more than once*—at *maximum cybersecurity risk*--which is the only way Plaintiffs could achieve their goal of following the individual through the ICE system. I remind this Honorable Court that the ICE database contains individuals who are involved in terrorism, international gangs, and other serious crimes—as well as individuals in need of protection, including informants and asylum seekers. Producing randomized unique IDs for Plaintiffs (or other requesters) would introduce significant risk that bad actors could use de-encrypted information regarding individuals, law enforcement techniques, and procedures for investigation, prosecutions, and detention to increase the attack vectors available to the enemies of the United States, and endanger the safety of our officers, special agents, and the general public—along with the people in the immigration system who require privacy and protections. The "FOIA Restaurant" does not owe (and is not required by the FOIA to provide) Plaintiffs created randomized/encrypted data (exposes its recipes or techniques.)

36.    Plaintiffs have alleged in this case that ERO has stated that the database does not contain items requested by Plaintiffs. That statement is true to the extent that it relates to data connections that do not exist in the database (substitutions not appearing on the menu) that Plaintiffs request. Although Plaintiffs are valued members of the public that ERO proudly serves, ERO must maintain its mission focus and not extend its efforts beyond the requirements of the FOIA. Although ICE has tried to explain these issues to Plaintiffs on many occasions, Plaintiffs continue to not understand the complexity of the ICE database. The database is not neatly organized in a way Plaintiffs seemingly would have designed it. Rather, it is based on law enforcement actions, and is not person-centric. The ICE "FOIA Restaurant" gladly produces any existing, non-exempt data for Plaintiffs from all the "entrées" on the "menu."

37.    The ultimate solution would be for Plaintiffs to seek data (entrées) which ERO

has explained IS readily available in the ICE database (menu). Attorney Keegan's assertion in

the hearing dated September 18, 2018, that "… ICE's databases are set up to centralize the data

and allow an agency to follow the individual throughout the entire process" is untrue. There is

no master *electronic* "individual" record where all events are neatly organized in one master file

per alien. If that were the case, ERO would produce that data. Alien Files, or "A-Files," are the

official *paper* file for all immigration and naturalization records created or consolidated since

April 1, 1944 and are under the purview of U.S. Citizenship and Immigration Services

("USCIS"), not ICE.

38.    ICE takes careful note of this Court's Memorandum Decision and Order dated

September 27, 2018 and will now address and resolve all specific questions that the Court had

and will offer clarifications where a need for such was noted.

## REQUEST NO. 2017-ICFO-08061

39.    Plaintiffs' request #2017-ICFO-08061 requested 150 total data points related to

ICE's use of I-247/I-247D detainers for "FY2015 through November 2016." Each data point

NOT provided to Plaintiffs required research, required analysis, required calculations, and/or

required the creation of new records, or simply did not exist in the database regarding detainers.

Some of the data points previously provided are no longer produced since detainer forms were

updated over time. If Plaintiffs started requesting only existing data (i.e., list of every detainer

for March 2019), and did not insist on following individuals, ICE would have no trouble quickly

providing requested data because those data already exist in the database, are readily available,

and do not require extensive computer programming, analysis, research, creation of new records,

or answering of questions. See Exhibit A.

Request Items Provided

40.    Request items 1, 2, 3.1, 3.2, 3.3, 3.4, 3.5, 3.6, 3.7, 3.8, 3.8.1,  3.8.2, 3.8.3, 3.8.4,
3.9, 3.9.1, 3.9.2, 3.9.3, 3.9.4, 3.9.5, 3.9.6, 3.9.7, 3.9.8, 3.9.9, 3.9.10, 3.9.11, 4, 5, 6, 7, 15, 16, 17,
19, 20, 23, 43, 49, 66, 67, 68, 69, 69.2, 77, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92,
93, 95, 96, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 109, 110, and 112 were provided to
Plaintiffs because they existed in the database in association with Detainers.  See attached
Exhibit B, Exhibit C, and Exhibit D.

41.    In some instances, because of the detainer form change, the request did not apply
to the I-247D form, but data were provided for the I-247 form.  See attached Exhibit A.

Request Items Which Would Require Analysis, Calculations,

the Creation of a New Record

42.    Request items 8, 9, 9.a, 9.b, 10, 11, 12, 13, 14, 18, 21, 22, 24, 25, 26, 27, 28, 29,
30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 44, 45, 46, 47, 48, 50, 53, 54, 55, 55.1, 55.2,
55.3, 55.4, 55.5, 56, 57, 58, 59, 60, 61, 62, 70, 71, 72, 73 74, 75, and 76 were not provided
because they would require analysis, calculations, and creation of a new record.  They would
require ERO analysts to create new data connections that did not exist previously.  For example,
request item 8 asks whether an arrest occurred after a detainer.  When a detainer occurs, the
information from the detainer form is recorded, along with a few other operational items (all
provided to Plaintiffs).  Those items go into the Detainer.  That Detainer (entrée) exists
unconnected from an Arrest event (entrée), so the only way ERO analysts could answer that
question is to create a new temporary combination of data (new menu item/substitution) as
described above, through creation of a new query, analysis and calculations.  Therefore, it should
not be considered subject to the FOIA.

43.     Another example is request item 14 for "initial book-in date." There is not a connection in the ICE database between the Detainer events (entrée) and detention events (entrée). When a Detainer occurs, only the information on the Detainer form, along with a few other operational items--all provided to Plaintiffs--are recorded. These separate event "entrées" are not correlated in the system. To connect these events (entrées), analysts would have to write complex new computer programs (change the menu) to temporarily connect the events (combine the entrées into one), then deduplicate the resulting data because multiple individuals often appear multiple times for different events. After creating those temporary records, analysts would then have to validate and report the new data connections. This process constitutes the creation of new records, analysis, calculations, and research.

44.     Another example, of concern to this Court, is request 22. There, Plaintiffs requested "earliest date reflecting presence in U.S." The Court stated, "Plaintiffs' request, however, is not limited to "entry date," but plainly seeks "data reflecting" an individual's presence in whatever form in which ICE maintains it. And Plaintiffs have adduced evidence showing that ICE has acknowledged the existence of substantively similar data fields in the context of other litigation. (Dkt. No. 25-1, ¶ 22(b). Here, ERO *did* provide "Entry Date" under item 20, "Date of Original Entry," in its productions to Plaintiff. This is the *only entry date* that is entered for the detainer event and is pulled out of the detainer file. Please note this is a self-reported date and there is no way to confirm accuracy. Similar data provided for different law enforcement actions cannot be provided for Detainers without analysis and creation of new records.

45.     Yet another example is request item 25 for "U.S. citizen spouse (yes/no)." The Detainer form contains no information regarding spouses, and officers, at the time of a Detainer,

enter only the information needed for that Detainer. There is simply not a connection that exists in the ICE database between the detainers "entrée" Plaintiffs seek and all the data points (side dishes) and sub-datapoints (connected side dishes) the Plaintiffs seek. Unfortunately, the only way analysts could produce this data would be to create new, temporary data "entrées" as described above, a process which requires analysis, calculations, and the creation of new records and is not subject to the FOIA.

46.     The remaining requests in this category carry the same response, respectively, even with most liberal assumptions about the data Plaintiffs were seeking. I wish to emphasize that Detainer data is entered into the database at the time of a particular Detainer. Nowhere on any of the various Detainer forms is there data which relates to other enforcement events such as future arrests, future removals, future detentions, etc.

Request Items Which Do Not Exist in the Database Related to Detainers

47.     Request items 51, 52, 63, 64, 65, 69.1, 69.3, 69.4, 69.5, 69.6, 69.7, 78, 94, 97, 108, and 111 do not exist in the database related to the Detainers "entrée." Each of these items, even with the most liberal reading, do not exist in the ICE database related to the population requested. For example, item 52 asks for, "All information used in determining the LESC level for each person." This item does not exist on detainer form I-247 or I-247D, and also is not recorded operationally at the time a detainer is recorded. Request item 52 simply does not exist related to Detainers. Therefore, it cannot be produced. *Even if the President of the United States asked for the same information, it could not be produced.*

48.     Each of the request items listed in Paragraph 37 carry the same explanation. Each of the items do not exist related to Detainers. They do not exist on detainer form I-247 or I-247D, or I-247N, and also are not recorded operationally at the time of a Detainer. Some of the

items may exist related to other events, i.e., Removal events or Arrest events, but those items, if they exist, do not relate to the Detainer population requested. Please see Exhibit A which lays out these data in tabular form, and specifically defines the response to each request.

**REQUEST NO. 2017-ICFO-08062**

49.     Plaintiffs' request #2017-ICFO-08062 requested 131 total data points related to ICE's use of I-247N detainers for "November FY16." Each data point NOT provided to Plaintiffs asked a question, required research, required analysis, required calculations, and/or required the creation of new records, or simply did not exist in the database related to Detainers. Some of the data points that were provided in the past were discretionarily provided before the agency changed posture. If Plaintiffs started requesting only existing data (i.e., list of every detainer for March 2019), and did not insist on following individuals, ICE would have no trouble quickly providing requested data because those data already exist in the database, are readily available, and do not require extensive computer programming, analysis, calculations, research, the creation of new records, or the answering of questions.

50.     In some instances, because of the detainer form change, the request did not apply to the I-247N form, but data was provided for the I-247 or I-247D form. See attached Exhibit A.

Request Items Provided

51.     Request items 2, 3, 3.1, 3.2, 3.3, 3.4, 3.5, 3.6, 4, 5, 7, 15, 16, 17, 19, 20, 23, 43, 49, 66, 67, 68, 69, 77, 79, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 95, 96, 98, 99, 100, 101, 105, 109, 110 and 112 were provided to Plaintiffs because they existed in the database related to Detainers. In some instances, because of the detainer form changes, the request did not apply equally to the I-247N and the I-247/I-247D forms. See attached Exhibit A, Exhibit B, Exhibit C, and Exhibit D.

Request Items Which Would Require Analysis, Calculations,

and the Creation of New Records

52.     Request items 8, 9, 9.1, 9.2, 10, 11, 12, 13, 14, 18, 21, 22. 24. 25, 26, 27, 28, 29,

30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 44, 45, 46, 47, 48, 50, 53, 54, 55, 55.1, 55.2,

55.3, 55.4, 55.5, 56, 57, 58, 59, 60, 61, 62, 70, 71, 72, 73, 74, 75, and 76 were not provided

because they would require ERO analysts to create new data connections that did not exist

previously. For example, request item 8 asks whether an arrest occurred after a detainer. When

a detainer occurs, the items on the detainer form are recorded, along with some other operational

items (all supplied to Plaintiffs). Detainers (entrées) and arrest events (entrées) exist separately

in the database (menu) and are not connected in the ICE database. The only way ERO analysts

could answer that question is to create new computer programming, and conduct research,

analysis and calculations in order to create, analyze, and report on the results. Each of these

requests would require the same steps. Although ERO provided these items discretionarily in the

past for data connections did not exist in the database—such requests should not be considered

subject to the FOIA because they request information which would require analysis, calculations,

research and the creation of new records.

53.     For example, request item 12 is for "Code of detention facility initially booked

into," connected to a population of individuals for whom particular detainers were issued,

connected to a particular time period. When a detainer occurs, the items on the detainer form are

recorded, along with a few other operational items (all supplied to Plaintiffs). No other

information is recorded for that detention event (entrée). There is not a connection in the ICE

database between the detainer "entrées" and detention events "entrées." These events exist as

separate menu items (entrees) and are not correlated in the database (menu). Initial book-in to

ICE custody (and the code for the detention facility initially booked into) is not correlated with the detainer in the database. In order to connect these events, analysts would have to write complex new computer programs to temporarily connect the data, (create a new menu item that combines two entrées), then deduplicate because multiple individuals often appear more than once for each event—then validate the data and create a new report. This process includes the creation of new records, the conducting of analysis, calculations, and research.

54.    The remaining requests in this category carry the same response, respectively, even with liberal assumptions about the data Plaintiffs were seeking. There is simply not a connection that exists in the ICE database between detainers (entrées) and all the data points (side dishes) and sub-datapoints (other side dishes) that Plaintiffs seek. Unfortunately, the only way analysts could produce these data would be to write programs to create new, temporary data intersections (menu items combining all these ingredients). This would require the creation of new records, analysis, calculations, and research, and each item in this list should not be considered subject to the FOIA, nor should it be required to be served in the "FOIA Restaurant."

Request Items Which Do Not Exist in The Database Related to Detainers

55.    Request items 51, 52, 63, 64, 65, 69.1, 69.3, 69.4, 69.5, 69.6, 69.7, 78, 94, 97, 108, and 111 simply do not exist in the database (on the menu) related to detainers. When a detainer occurs (entrée), the information from the detainer form is recorded, along with a few other operationally needed items (all provided to Plaintiffs). ERO is simply unable to produce any responsive data because none exist in the database (on the menu). They do not exist on detainer form I-247N, and also are not recorded operationally at the time of a Detainer. Some of the items may exist related to other events, i.e., Removal events or Arrest events, but those items do not exist related to the population requested. This would be the equivalent of the "FOIA

Restaurant" creating a new entrée made of a Removal entrée and Arrest entrée, newly combined with each other.

## CONCLUSION

56.    ERO personnel have, for years, performed far above the requirements of the FOIA to produce data for Plaintiffs. ERO is no longer able to provide discretionary data to Plaintiffs due to staffing limitations and the increasing complexity and number of FOIA requests. Plaintiffs' overuse of the FOIA and monopolization of ERO resources has hampered ERO LESAs ability to conduct its primary mission, and also to provide data to other FOIA requesters. ERO remains dedicated to providing the public, including Plaintiffs, with all documents required under the FOIA.

57.    ERO has conducted a thorough and adequate search for records in this case and has provided all detainer datapoints in the Detainer "entrée." The items not provided are only those items which Plaintiffs mistakenly believed were available related to Detainers because they believed the database was person-centric, which it is not. Plaintiffs were provided the entire "entrée" of Detainer items from the "FOIA Restaurant."

58.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Signed this 29th day of April 2019.

*Patricia J. de Castro, Ph.D.*

Patricia J. de Castro, Ph.D.

**EXHIBIT A**

**COMPARATIVE REQUESTED-PROVIDED FOR BOTH REQUESTS**

| | FOIA 17-09062 | | | FOIA 17-09062 | |
|---|---|---|---|---|---|
| 1 | Date Form I-247D was issued | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 1 | Date Form I-247N was issued | Yes. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. |
| 2 | Subject of I-247D previously transferred to addressee's custody and DHS intends to resume custody of this subject to complete processing | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 2 | Subject of I-247N previously transferred to addressee's custody and DHS intends to resume custody of this subject to complete processing | Yes. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. |
| 3 | DHS SUSPECTS THAT THE SUBJECT IS A REMOVABLE ALIEN AND THAT THE SUBJECT IS AN IMMIGRATION ENFORCEMENT PRIORITY BECAUSE HE/SHE: | Preface to a request; nothing is requested. | 3 | DHS SUSPECTS THAT THE SUBJECT IS A REMOVABLE ALIEN AND THAT THE SUBJECT IS AN IMMIGRATION ENFORCEMENT PRIORITY BECAUSE HE/SHE: | Preface to a request; nothing is requested. |
| 3.1 | Has engaged in or is suspected of terrorism or espionage, or otherwise poses a danger to national security. | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.1 | Has engaged in or is suspected of terrorism or espionage, or otherwise poses a danger to national security. | Yes. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. |
| 3.2 | Has been convicted of an offense of which an element was active participation in a criminal street gang as defined in 18 USC 521(a), or is at least 16 years old and intentionally participated in an organized criminal gang to further its illegal activities. | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.2 | Has been convicted of an offense of which an element was active participation in a criminal street gang as defined in 18 USC 521(a), or is at least 16 years old and intentionally participated in an organized criminal gang to further its illegal activities. | Yes. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. |
| 3.3 | Has been convicted of an offense classified as a felony, other than a state or local offense for which an essential element was the alien's immigration status. | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.3 | Has been convicted of an offense classified as a felony, other than a state or local offense for which an essential element was the alien's immigration status. | Yes. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. |
| 3.4 | Has been convicted of an aggravated felony, as defined under 8 USC 1101(a)(43) at the time of conviction. | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.4 | Has been convicted of an aggravated felony, as defined under 8 USC 1101(a)(43) at the time of conviction. | Yes. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. |
| 3.5 | Has been convicted of a "significant misdemeanor," as defined under DHS policy; and/or | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.5 | Has been convicted of a "significant misdemeanor," as defined under DHS policy; and/or | Yes. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. |
| 3.6 | Has been convicted of 3 or more misdemeanors, not including minor traffic offenses and state or local offenses for which immigration status was an essential element, provided the offenses arise out of 3 separate incidents. | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.6 | Has been convicted of 3 or more misdemeanors, not including minor traffic offenses and state or local offenses for which immigration status was an essential element, provided the offenses arise out of 3 separate incidents. | Yes. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. |
| 3.7 | Probable cause exists that the subject is a removable alien (yes/no): ck | | 3.7 | NO PARALLEL REQUEST | |
| 3.8 | Determination that probable cause exists that the subject is a removable alien based on: | Preface to a request; nothing is requested. | 3.8 | NO PARALLEL REQUEST | |
| 3.8.1 | A final order of removal against the subject | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.8.1 | NO PARALLEL REQUEST | |
| 3.8.2 | The pendency of ongoing removal proceedings against the subject | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.8.2 | NO PARALLEL REQUEST | |
| 3.8.3 | Biometric confirmation of the subject's identity and records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. However, although this item appears on the I-247D form, it does not appear on the prior I-247 form. Therefore, those data points associated with the I-247D form are produced, but cannot be produced from the prior I-247 form. | 3.8.3 | NO PARALLEL REQUEST | |
| 3.8.4 | Statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. However, although this item appears on the I-247D form, it does not appear on the prior I-247 form. Therefore, those data points associated with the I-247D form are produced, but cannot be produced from the prior I-247 form. | 3.8.4 | NO PARALLEL REQUEST | |
| 3.9 | Determined that there is reason to believe the individual in your custody is an alien subject to removal from the United States | Preface to a request; aboli foot preface. Nothing is requested. | 3.9 | NO PARALLEL REQUEST | |
| 3.9.1 | Has a prior felony conviction or has been charged with a felony offense. | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.9.1 | NO PARALLEL REQUEST | |
| 3.9.2 | Has three or more prior misdemeanor convictions. | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.9.2 | NO PARALLEL REQUEST | |
| 3.9.3 | Has a prior misdemeanor conviction or has been charged with a misdemeanor for an offense that involves violence, threats, or assaults, sexual abuse or exploitation, driving under the influence of alcohol or a controlled substance, unlawful flight from the scene of an accident, the unlawful possession or use of a firearm or other deadly weapon, the distribution or trafficking of a controlled substance, or other significant threat to public safety | | 3.9.3 | NO PARALLEL REQUEST | |
| 3.9.4 | Initiated removal proceedings and served a Notice to Appear or other charging document. | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.9.4 | NO PARALLEL REQUEST | |
| 3.9.5 | Served a warrant of arrest for removal proceedings | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. However, although this item appears on the I-247 form, it does not appear on the newer I-247D form. Therefore, those data points associated with the I-247 form are produced, but cannot be produced from the I-247D form. | 3.9.5 | NO PARALLEL REQUEST | |
| 3.9.6 | Obtained an order of deportation or removal from the United States for this person | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.9.6 | NO PARALLEL REQUEST | |
| 3.9.7 | Has been convicted of illegal entry pursuant to 8 USC 1325 | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. However, although this item appears on the I-247 form, it does not appear on the newer I-247D form. Therefore, those data points associated with the I-247 form are produced, but cannot be produced from the I-247D form. | 3.9.7 | NO PARALLEL REQUEST | |
| 3.9.8 | Has illegally re-entered the country after a previous removal or return. | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. However, although this item appears on the I-247 form, it does not appear on the newer I-247D form. Therefore, those data points associated with the I-247 form are produced, but cannot be produced from the I-247D form. | 3.9.8 | NO PARALLEL REQUEST | |
| 3.9.9 | Has been found by an immigration officer or an immigration judge to have knowingly committed immigration fraud. | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. However, although this item appears on the I-247 form, it does not appear on the newer I-247D form. Therefore, those data points associated with the I-247 form are produced, but cannot be produced from the I-247D form. | 3.9.9 | NO PARALLEL REQUEST | |
| 3.9.10 | Otherwise poses a significant risk to national security, border security, or public safety; and/or | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.9.10 | NO PARALLEL REQUEST | |
| 3.9.11 | Other (specify) | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 3.9.11 | NO PARALLEL REQUEST | |
| 4 | Date Form I-247D/247D was cancelled or Form I-247D/247D indicates that prior detainer request related to the subject should be disregarded (where applicable) | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 4 | Date Form I-247N was cancelled or Form I-247 indicates that prior notification request related to the subject should be disregarded (where applicable) | Yes. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. |
| 5 | Reason for cancellation or withdrawal of request | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 5 | Reason for cancellation or withdrawal of request | Yes. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. |
| 6 | Whether Form I-247D/247D request indicated it was "operative only upon the subject's conviction" | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 6 | Whether Form I-247N request indicated it was "operative only upon the subject's conviction" | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. |
| 7 | ICE area of responsibility (AOR) issuing the Form I-247D/247D | Provided. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. | 7 | ICE area of responsibility (AOR) issuing the Form I-247N | Yes. This data point appears in the Detainee's portion of the database because it is recorded at the time a Detainer event occurs. |

| # | | | # | | |
|---|---|---|---|---|---|
| 8 | Following the preparation of the Form 1-247/I-247D, ICE administratively arrested individual (yes/no); if yes, date of ICE arrest. | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Database reporting is structured to report this way so law enforcement actions versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent arrest, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous arrest events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Arrest events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 8 | Following the preparation of the Form 1-247N, ICE administratively arrested individual (yes/no); if yes, date of ICE arrest. | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Database reporting is structured to report this way so law enforcement actions versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent arrest, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous arrest events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Arrest events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |
| 9 | Following the preparation of the Form 1-247I/I-247D, individual was booked into ICE Custody (yes/no), and if yes: | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Database reporting is structured to report this way so law enforcement actions versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent Detention event, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous Detention events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Detention events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 9 | Following the preparation of the Form 1-247N, individual was booked into ICE Custody (yes/no), and if yes: | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Database reporting is structured to report this way so law enforcement actions versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent Detention event, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous Detention events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Detention events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |
| 9.a | If yes, date booked into ICE custody and | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Detainer data and Detention data are in different portions of the database, and exist unconnected to each other. The database is structured this way so operational reporting can be performed related to particular law enforcement events. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent Detention event, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous Detention events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Detention events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 9.a | If yes, date booked into ICE custody and | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Detainer data and Detention data are in different portions of the database, and exist unconnected to each other. The database is structured this way so operational reporting can be performed related to particular law enforcement events. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent Detention event, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous Detention events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Detention events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |
| 9.b | If yes, recorded apprehension method. | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Detainer data and Arrest data are at different portions of the database, and exist unconnected to each other. The database is structured this way so operational reporting can be performed related to particular law enforcement events. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent arrest, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous arrest events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Arrest events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 9.b | If yes, recorded apprehension method. | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Detainer data and Arrest data are at different portions of the database, and exist unconnected to each other. The database is structured this way so operational reporting can be performed related to particular law enforcement events. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent arrest, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous arrest events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Arrest events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |
| 10 | Following the preparation of the Form 1-247I/I-247D, OBC was filed in immigration court (yes/no), if yes, date OBC filed and specific charge to support request for removal cited. | Not provided. However, ERO provided #3.8.2, 3.9.4, and #8.1 OBC Served Yes/No, which was a similar checkbox found on the Detainer forms and was provided in its submissions. ERO provided #80 OBC Served Date for I-247 where it was recorded by officers on legacy I-247 forms. Please note that does not exist in the database as written for I-247D Form. The checkbox on the detainer form is reliant upon the officer filling out the information. Officers are not required to record "Specific charges to support request for removal" and are not tracked on the detainer form. | 10 | Following the preparation of the Form 1-247N/OBC was filed in immigration court (yes/no), if yes, date OBC filed and specific charge to support request for removal cited. | Not provided. However, ERO provided #3.8.2, 3.9.4, and #8.1 OBC Served Yes/No, which was a similar checkbox found on the Detainer forms and was provided in its submissions. ERO provided #80 OBC Served Date for I-247 where it was recorded by officers on legacy I-247 forms. Please note that does not exist in the database as written for I-247D Form. The checkbox on the detainer form is reliant upon the officer filling out the information. Officers are not required to record "Specific charges to support request for removal" and are not tracked on the detainer form. |
| 11 | Following the preparation of the Form 1-247I/I-247D, individual was deported (yes/no); if yes, date of deportation, latest processing disposition code, program code and case category at time of departure | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. The database is structured to report particular law enforcement actions versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent removal, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous removal events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Removal events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 11 | Following the preparation of the Form 1-247N, individual was deported (yes/no); if yes, date of deportation, latest processing disposition code, program code and case category at time of departure | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. The database is structured to report particular law enforcement actions versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent removal, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous removal events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Removal events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |
| 12 | Code of detention facility initially booked into | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Database reporting is structured to report this way so law enforcement actions versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent Detention event, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous Detention events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Detention events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 12 | Code of detention facility initially booked into | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Database reporting is structured to report this way so law enforcement actions versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent Detention event, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous Detention events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Detention events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |

| # | Field | Description | # | Field | Description |
|---|-------|-------------|---|-------|-------------|
| 13 | Name of detention facility initially booked into | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Database reporting is structured to report this way to law enforcement actions versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent Detention event, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous Detention events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Detention events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 13 | Name of detention facility initially booked into | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Database reporting is structured to report this way to law enforcement actions versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent Detention event, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous Detention events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Detention events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |
| 14 | Initial book-in date | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Database reporting is structured to report this way to law enforcement actions versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and a subsequent Detention event, matched to the same individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous Detention events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and Detention events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 14 | Initial book-in date | [text illegible / redacted] |
| 15 | gender | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. | 15 | gender | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. |
| 16 | country of birth | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. | 16 | country of birth | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. |
| 17 | country of citizenship | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. | 17 | country of citizenship | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. |
| 18 | age | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. At the time of a Detainer event, the "Date of Birth" is recorded, but not the subject's age. Therefore, the date requested cannot be provided because ERO analysts would have to create a (temporary) new computer query program that would calculate the subject's age from the Date of Birth. This constitutes creation of new records and is thus not subject to FOIA. ERO does provide #19 'Birth Date' in lieu of 'Birth Year' in its submissions. This allows Plaintiffs to apply whatever criteria necessary to calculate how they want to define age. Birth dates are self-reported. | 18 | age | [text illegible / redacted] |
| 19 | year of birth | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. | 19 | year of birth | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. |
| 20 | date of original entry | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. | 20 | date of original entry | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. |
| 21 | date of last entry | Not provided. However, ERO did provide Entry Date under #20 "Date of Original Entry" in its submissions. This is the entry date that is entered by the officer for the detainer. | 21 | date of last entry | Not provided. However, ERO did provide Entry Date under #20 "Date of Original Entry" in its submissions. This is the entry date that is entered by the officer for the detainer. |
| 22 | earliest date reflecting presence in U.S. | Not provided. However, ERO did provide Entry Date under #20 "Date of Original Entry" in its submissions. This is the entry date that is entered by the officer for the detainer. | 22 | earliest date reflecting presence in U.S. | Not provided. However, ERO did provide Entry Date under #20 "Date of Original Entry" in its submissions. This is the entry date that is entered by the officer for the detainer. |
| 23 | original entry status | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. | 23 | original entry status | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. |
| 24 | last entry status | Not provided. ERO did provide Entry Status under #23 "original entry status" in its submissions. This is the entry status that is entered by the officer for the detainer. | 24 | last entry status | Not provided. ERO did provide Entry Status under #23 "original entry status" in its submissions. This is the entry status that is entered by the officer for the detainer. |
| 25 | U.S. citizen spouse (yes/no) | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. The database is structured to report particular law enforcement event, versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and other enforcement data related to an individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous other enforcement events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and other enforcement events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 25 | U.S. citizen spouse (yes/no) | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. The database is structured to report particular law enforcement event, versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and other enforcement data related to an individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous other enforcement events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and other enforcement events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |
| 26 | U.S. citizen parents (yes/no) | [text illegible / redacted] | 26 | U.S. citizen parents (yes/no) | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. The database is structured to report particular law enforcement event, versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and other enforcement data related to an individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous other enforcement events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and other enforcement events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |

| # | Field | Explanation | # | Field | Explanation |
|---|---|---|---|---|---|
| 27 | U.S. citizen child (yes/no) | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. The database is structured to report particular law enforcement events, versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and other enforcement data related to an individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous other enforcement events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and other enforcement events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 27 | U.S. citizen child (yes/no) | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. The database is structured to report particular law enforcement events, versus individuals. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and other enforcement data related to an individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous other enforcement events which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and other enforcement events. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |
| 28 | charged with a crime (yes/no) [any charge, not restricted to convictions] | Not provided. Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6; #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." | 28 | charged with a crime (yes/no) [any charge, not restricted to convictions] | Not provided. Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6; #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." |
| 29 | most serious criminal charge [any charge, not restricted to convictions] | Not provided. Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6; #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." | 29 | most serious criminal charge [any charge, not restricted to convictions] | Not provided. Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6; #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." |
| 30 | date of most serious criminal charge [any charge, not restricted to convictions] | Not provided. Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6; #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." | 30 | date of most serious criminal charge [any charge, not restricted to convictions] | Not provided. Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6; #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." |
| 31 | status of most serious criminal charge [any charge, not restricted to convictions] | Not provided. Most Serious Criminal Charge (MSCC) and its supporting details at the time of the Detainer is not recorded on the detainer form. | 31 | status of most serious criminal charge [any charge, not restricted to convictions] | Not provided. Most Serious Criminal Charge (MSCC) and its supporting details at the time of the Detainer is not recorded on the detainer form. |
| 32 | NCIC code for most serious criminal charge [any charge, not restricted to convictions] | Not provided. Most Serious Criminal Charge (MSCC) and its supporting details at the time of the Detainer is not recorded on the detainer form. | 32 | NCIC code for most serious criminal charge [any charge, not restricted to convictions] | Not provided. Most Serious Criminal Charge (MSCC) and its supporting details at the time of the Detainer is not recorded on the detainer form. |
| 33 | convicted of a crime (yes/no) | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Detainer data and other criminal record data are at different portions of the database, and exist unconnected to each other. The database is structured this way so operational reporting can be performed related to particular law enforcement events. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and other criminal record data related to an individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous other criminal records which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and other criminal records. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 33 | convicted of a crime (yes/no) | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Detainer data and other criminal record data are at different portions of the database, and exist unconnected to each other. The database is structured this way so operational reporting can be performed related to particular law enforcement events. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and other criminal record data related to an individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous other criminal records which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and other criminal records. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |
| 34 | level of most serious criminal conviction (felony, misdemeanor, citation, etc.) | Not provided. Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6; #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." | 34 | level of most serious criminal conviction (felony, misdemeanor, citation, etc.) | Not provided. Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6; #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." |
| 35 | most serious criminal conviction offense | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Detainer data and other criminal record data are at different portions of the database, and exist unconnected to each other. The database is structured this way so operational reporting can be performed related to particular law enforcement events. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and other criminal record data related to an individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous other criminal records which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and other criminal records. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 35 | most serious criminal conviction offense | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Detainer data and other criminal record data are at different portions of the database, and exist unconnected to each other. The database is structured this way so operational reporting can be performed related to particular law enforcement events. Therefore, the data connection requested cannot be provided because ERO analysts would have to create a complex (temporary) new computer query program that would make a connection between a Detainer event and other criminal record data related to an individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous other criminal records which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the new "matching" data between Detainer events and other criminal records. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |
| 36 | date of most serious criminal conviction | Not provided. Most Serious Conviction (MSC) and its supporting details at the time of the Detainer is not recorded on the detainer form. | 36 | date of most serious criminal conviction | Not provided. Most Serious Conviction (MSC) and its supporting details at the time of the Detainer is not recorded on the detainer form. |
| 37 | sentence for most serious criminal conviction | Not provided. Most Serious Conviction (MSC) and its supporting details at the time of the Detainer is not recorded on the detainer form. | 37 | sentence for most serious criminal conviction | Not provided. Most Serious Conviction (MSC) and its supporting details at the time of the Detainer is not recorded on the detainer form. |
| 38 | NCIC code for most serious criminal conviction offense | Not provided. Most Serious Conviction (MSC) and its supporting details at the time of the Detainer is not recorded on the detainer form. | 38 | NCIC code for most serious criminal conviction offense | Not provided. Most Serious Conviction (MSC) and its supporting details at the time of the Detainer is not recorded on the detainer form. |
| 39 | information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received) | Not provided. Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6; #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." | 39 | information on every conviction not just the most serious (date of the charge, date of the conviction, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received) | Not provided. Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6; #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." |

| # | Field | Response | # | Field | Response |
|---|---|---|---|---|---|
| 40 | information on every charge not just the most serious for which a conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.)) | Not provided. Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6, #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." | 40 | information on every charge not just the most serious for which a conviction has not occurred (date of charge, current status, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.)) | Not provided. Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6, #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." |
| 41 | information on the charge for the specific arrest that gave rise to the I-247/I-247D being placed (did actual charge result (yes/no), date of charge, current status, date of conviction if applicable, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received if applicable) | Not provided. ERO does not track the outcome for "charge for the specific arrest that gave rise to the I-247 I-247D I-247N being placed" and its accompanying charge details. | 41 | information on the charge for the specific arrest that gave rise to the FORM I-247N being placed (did actual charge result (yes/no), date of charge, current status, date of conviction if applicable, NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received if applicable) | Not provided. ERO does not track the outcome for "charge for the specific arrest that gave rise to the I-247I-247D I-247N being placed" and its accompanying charge details. |
| 42 | aggravated felon (yes/no) | Not provided. For the detainer forms where the Aggravated Felon Yes/No checkbox exists on the form, that data is provided by ERO as part of #3 "aggravated felony yes/no" in its submissions. Additionally, ERO does provide #43 "aggravated felon type" which is entered by the officer for the detainer event located in the detainer file. However, a universal Aggravated Felon Yes/No does not exist. | 42 | aggravated felon (yes/no) | Not provided. For the detainer forms where the Aggravated Felon Yes/No checkbox exists on the form, that data is provided by ERO as part of #3 "aggravated felony yes/no" in its submissions. Additionally, ERO does provide #43 "aggravated felon type" which is entered by the officer for the detainer event located in the detainer file. However, a universal Aggravated Felon Yes/No does not exist. |
| 43 | aggravated felon type | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. | 43 | aggravated felon type | Aggravated Felon Type |
| 44 | Any and all information used in determining whether the person is or isn't an aggravated felon and particular type | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Detainer data and other criminal record data are in different portions of the database, and exist unconnected to each other. The database is structured this way as operational reporting can be performed related to particular law enforcement trends. Therefore, for this connection requested cannot be provided because ERO analysts would have to create a complex (temporary) now complete query program that would make a connection between a Detainer event and other criminal record data related to an individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous other criminal records which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the now "matching" data between Detainer events and other criminal records. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." | 44 | Any and all information used in determining whether the person is or isn't an aggravated felon and particular type | Not provided. At the time a Detainer event occurs, officers record the information from the Detainer form, plus a few other data elements, into the "Detainers" portion of the database. Detainer data and other criminal record data are in different portions of the database, and exist unconnected to each other. The database is structured this way as operational reporting can be performed related to particular law enforcement trends. Therefore, for this connection requested cannot be provided because ERO analysts would have to create a complex (temporary) now complete query program that would make a connection between a Detainer event and other criminal record data related to an individual. This is further complicated by the fact that an individual might have numerous Detainer events and numerous other criminal records which would all need to be "matched up" via analysis, and ultimately a new record would be created which lists the now "matching" data between Detainer events and other criminal records. Further, this newly created query has to be temporary because the database cannot accommodate complex new queries without often "crashing." |
| 45 | meets requirements if held for mandatory detention (yes/no) | Not provided. ERO has provided #43 "aggravated felon type" which is entered by the officer manually. Other aggravated felon information is provided, where applicable, in the detainer checkboxes under #3. | 45 | meets requirements if held for mandatory detention (yes/no) | Not provided. ERO has provided #43 "aggravated felon type" which is entered by the officer manually. Other aggravated felon information is provided, where applicable, in the detainer checkboxes under #3. |
| 46 | Any and all information used in determining whether or not mandatory detention would be required if held | Not provided. Officers do not mark mandatory detention status nor if requirements are "met" on the detainer form for a potential future ICE custody. As stated in #9 and #12-14, officers do not note actual ICE custody information on the detainer form. ERO does provide the checkbox that tracks if DHS "intends" resume custody under #2 Resume Custody Yes/No and that is provided. Furthermore, Mandatory Detention is a very specific point-in-time "status" measurement that is calculated only at the time the individual is currently held in ICE custody. | 46 | Any and all information used in determining whether or not mandatory detention would be required if held | Not provided. Officers do not mark mandatory detention status nor if requirements are "met" on the detainer form for a potential future ICE custody. As stated in #9 and #12-14, officers do not note actual ICE custody information on the detainer form. ERO does provide the checkbox that tracks if DHS "intends" resume custody under #2 Resume Custody Yes/No and that is provided. Furthermore, Mandatory Detention is a very specific point-in-time "status" measurement that is calculated only at the time the individual is currently held in ICE custody. |
| 47 | RC Threat Level | Not provided. ERO has provided #49 "Detainer Threat Level" that is calculated for each detainer and located int he detainer and describes criminality at the time the detainer was prepared. RC Threat Level is a calculation that exists in the Removals and is a measure that is relative to criminality at the time of removal. This has not operational relevancy to Detainers and is not something that shows up in the detainers for a future removal. | 47 | RC Threat Level | Not provided. ERO has provided #49 "Detainer Threat Level" that is calculated for each detainer and located int he detainer and describes criminality at the time the detainer was prepared. RC Threat Level is a calculation that exists in the Removals and is a measure that is relative to criminality at the time of removal. This has not operational relevancy to Detainers and is not something that shows up in the detainers for a future removal. |
| 48 | All information used in determining the RC Threat Level for each person | Not provided. ERO has provided #49 "Detainer Threat Level" that is calculated for each detainer and located int he detainer and describes criminality at the time the detainer was prepared. RC Threat Level is a calculation that exists in the Removals and is a measure that is relative to criminality at the time of removal. This has not operational relevancy to Detainers and is not something that shows up in the detainers for a future removal. | 48 | All information used in determining the RC Threat Level for each person | Not provided. ERO has provided #49 "Detainer Threat Level" that is calculated for each detainer and located int he detainer and describes criminality at the time the detainer was prepared. RC Threat Level is a calculation that exists in the Removals and is a measure that is relative to criminality at the time of removal. This has not operational relevancy to Detainers and is not something that shows up in the detainers for a future removal. |
| 49 | Detainer Threat Level | Provided. This data point appears in the Detainer portion of the database because it is recorded at the time a Detainer event occurs. | 49 | Detainer Threat Level | Detainer Threat Level |
| 50 | All information used in determining the Detainer Threat Level for each person | Not provided. ERO has provided #49 "Detainer Threat Level" that is calculated for each detainer and located in the detainer and describes criminality at the time the detainer was prepared. Supporting details are not available in the detainer. Underlying criminal information that is recorded on the detainer forms (where available dependant upon the form version) is provided by ERO under #3.2-3.6, #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." | 50 | All information used in determining the Detainer Threat Level for each person | Not provided. ERO has provided #49 "Detainer Threat Level" that is calculated for each detainer and located in the detainer and describes criminality at the time the detainer was prepared. Supporting details are not available in the detainer. Underlying criminal information that is recorded on the detainer forms (where available dependant upon the form version) is provided by ERO under #3.2-3.6, #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." |
| 51 | LESC L1,L2, L3 | Not provided. An officer does not record "LESC L1, L2 or L3" anywhere on the detainer form. | 51 | LESC L1,L2, L3 | Not provided. An officer does not record "LESC L1, L2 or L3" anywhere on the detainer form. |
| 52 | All information used in determining the LESC level for each person | Not provided. An officer does not record "LESC L1, L2 or L3" anywhere on the detainer form. | 52 | All information used in determining the LESC level for each person | Not provided. An officer does not record "LESC L1, L2 or L3" anywhere on the detainer form. |
| 53 | Convicted Criminal L1,L2, L3 | Not provided. ERO has provided #49 "Detainer Threat Level" that is calculated for each detainer and located in the detainer and describes criminality at the time the detainer was prepared. Underlying criminal information that is recorded on the detainer forms (where available dependant upon the form version) is provided by ERO under #3.2-3.6, #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." | 53 | Convicted Criminal L1,L2, L3 | Not provided. ERO has provided #49 "Detainer Threat Level" that is calculated for each detainer and located in the detainer and describes criminality at the time the detainer was prepared. Underlying criminal information that is recorded on the detainer forms (where available dependant upon the form version) is provided by ERO under #3.2-3.6, #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Mind Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." |

| | | | | | |
|---|---|---|---|---|---|
| 54 | Any and all information used in determining the convicted criminal level for each person | Not provided. ERO has provided #49 "Detainer Threat Level" that is calculated for each detainer and located in the detainer and describes criminality at the time the detainer was prepared.<br>Suporting details are not available in the detainer.<br>Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6; #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Misd Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." | 54 | Any and all information used in determining the convicted criminal level for each person | Not provided. ERO has provided #49 "Detainer Threat Level" that is calculated for each detainer and located in the detainer and describes criminality at the time the detainer was prepared.<br>Suporting details are not available in the detainer.<br>Underlying criminal information that is recorded on the detainer forms (where available dependent upon the form version) is provided by ERO under #3.2-3.6; #3.9 ("Criminal Street Gang Yes No"; "Prior Felony Yes No"; "Aggravated Felony Yes No"; "Violent Misdemeanor Yes No" and "Multiple Prior Misd Yes No") in its submissions. Additional criminal information for the detainer is provided in #49 "detainer threat level" and #43 "aggravated felon type." |
| 55 | ICE Priority indicator(s): | Preface to a request; nothing is requested. | 55 | ICE Priority indicator(s): | Preface to a request; nothing is requested. |
| 55.1 | ICE fugitive (and if yes, date of previously issued removal order) | Not provided. ERO provided the checkbox information as part of #3 that comes from all versions of the detainer form. However, these specific fields outlined from 55.1-55.5 are not tracked on the detainer form.<br>The detainer form does not contain a field specific to "ICE priorities" or the subfields described in 55.1-55.5 that were specific to the now-defunct "Morton Memorandum."<br>The Morton memorandum focused on prioritizing removals for hte Agency. ERO had no operational requirement to track for detainers. | 55.1 | ICE fugitive (and if yes, date of previously issued removal order) | Not provided. ERO provided the checkbox information as part of #3 that comes from all versions of the detainer form. However, these specific fields outlined from 55.1-55.5 are not tracked on the detainer form.<br>The detainer form does not contain a field specific to "ICE priorities" or the subfields described in 55.1-55.5 that were specific to the now-defunct "Morton Memorandum."<br>The Morton memorandum focused on prioritizing removals for hte Agency. ERO had no operational requirement to track for detainers. |
| 55.2 | Prior removal and return (and if yes, date of previous removal order) | Not provided. ERO provided the checkbox information as part of #3 that comes from all versions of the detainer form. However, these specific fields outlined from 55.1-55.5 are not tracked on the detainer form.<br>The detainer form does not contain a field specific to "ICE priorities" or the subfields described in 55.1-55.5 that were specific to the now-defunct "Morton Memorandum."<br>The Morton memorandum focused on prioritizing removals for hte Agency. ERO had no operational requirement to track for detainers. | 55.2 | Prior removal and return (and if yes, date of previous removal order) | Not provided. ERO provided the checkbox information as part of #3 that comes from all versions of the detainer form. However, these specific fields outlined from 55.1-55.5 are not tracked on the detainer form.<br>The detainer form does not contain a field specific to "ICE priorities" or the subfields described in 55.1-55.5 that were specific to the now-defunct "Morton Memorandum."<br>The Morton memorandum focused on prioritizing removals for hte Agency. ERO had no operational requirement to track for detainers. |
| 55.3 | Entered without inspection | Not provided. ERO provided the checkbox information as part of #3 that comes from all versions of the detainer form. However, these specific fields outlined from 55.1-55.5 are not tracked on the detainer form.<br>The detainer form does not contain a field specific to "ICE priorities" or the subfields described in 55.1-55.5 that were specific to the now-defunct "Morton Memorandum."<br>The Morton memorandum focused on prioritizing removals for hte Agency. ERO had no operational requirement to track for detainers. | 55.3 | Entered without inspection | Not provided. ERO provided the checkbox information as part of #3 that comes from all versions of the detainer form. However, these specific fields outlined from 55.1-55.5 are not tracked on the detainer form.<br>The detainer form does not contain a field specific to "ICE priorities" or the subfields described in 55.1-55.5 that were specific to the now-defunct "Morton Memorandum."<br>The Morton memorandum focused on prioritizing removals for hte Agency. ERO had no operational requirement to track for detainers. |
| 55.4 | Overstayed visa | Not provided. ERO provided the checkbox information as part of #3 that comes from all versions of the detainer form. However, these specific fields outlined from 55.1-55.5 are not tracked on the detainer form.<br>The detainer form does not contain a field specific to "ICE priorities" or the subfields described in 55.1-55.5 that were specific to the now-defunct "Morton Memorandum."<br>The Morton memorandum focused on prioritizing removals for hte Agency. ERO had no operational requirement to track for detainers. | 55.4 | Overstayed visa | Not provided. ERO provided the checkbox information as part of #3 that comes from all versions of the detainer form. However, these specific fields outlined from 55.1-55.5 are not tracked on the detainer form.<br>The detainer form does not contain a field specific to "ICE priorities" or the subfields described in 55.1-55.5 that were specific to the now-defunct "Morton Memorandum."<br>The Morton memorandum focused on prioritizing removals for hte Agency. ERO had no operational requirement to track for detainers. |
| 55.5 | Recent border crosser | Not provided. ERO provided the checkbox information as part of #3 that comes from all versions of the detainer form. However, these specific fields outlined from 55.1-55.5 are not tracked on the detainer form.<br>The detainer form does not contain a field specific to "ICE priorities" or the subfields described in 55.1-55.5 that were specific to the now-defunct "Morton Memorandum."<br>The Morton memorandum focused on prioritizing removals for hte Agency. ERO had no operational requirement to track for detainers. | 55.5 | Recent border crosser | Not provided. ERO provided the checkbox information as part of #3 that comes from all versions of the detainer form. However, these specific fields outlined from 55.1-55.5 are not tracked on the detainer form.<br>The detainer form does not contain a field specific to "ICE priorities" or the subfields described in 55.1-55.5 that were specific to the now-defunct "Morton Memorandum."<br>The Morton memorandum focused on prioritizing removals for hte Agency. ERO had no operational requirement to track for detainers. |
| 56 | All information used in determining the ICE priority level for each person | Not provided. ERO provided the checkbox information as part of #3 that comes from all versions of the detainer form. However, these specific fields outlined from 55.1-55.5 are not tracked on the detainer form.<br>The detainer form does not contain a field specific to "ICE priorities" or the subfields described in 55.1-55.5 that were specific to the now-defunct "Morton Memorandum."<br>The Morton memorandum focused on prioritizing removals for hte Agency. ERO had no operational requirement to track for detainers. | 56 | All information used in determining the ICE priority level for each person | Not provided. ERO provided the checkbox information as part of #3 that comes from all versions of the detainer form. However, these specific fields outlined from 55.1-55.5 are not tracked on the detainer form.<br>The detainer form does not contain a field specific to "ICE priorities" or the subfields described in 55.1-55.5 that were specific to the now-defunct "Morton Memorandum."<br>The Morton memorandum focused on prioritizing removals for hte Agency. ERO had no operational requirement to track for detainers. |
| 57 | Priority per November 20,2014 memorandum on policies for the apprehension, detention, and removal of undocumented immigrants) | Not provided. ERO provided the all the requested detainers and notifications forms that were updated by the Agency after the November 2014 memorandum and included all relevant checkboxes in #3 that were marked by the officers on the detainer/notification forms.<br>Operationally, there was not specific priority that was assigned by officers on the detainer form. | 57 | Priority per November 20,2014 memorandum on policies for the apprehension, detention, and removal of undocumented immigrants) | Not provided. ERO provided the all the requested detainers and notifications forms that were updated by the Agency after the November 2014 memorandum and included all relevant checkboxes in #3 that were marked by the officers on the detainer/notification forms.<br>Operationally, there was not specific priority that was assigned by officers on the detainer form. |
| 58 | Any and all information used in determining Priority per November 20,2014 memorandum | Not provided. ERO provided the all the requested detainers and notifications forms that were updated by the Agency after the November 2014 memorandum and included all relevant checkboxes in #3 that were marked by the officers on the detainer/notification forms.<br>There was not specific priority that was assigned by officers on the detainer form. | 58 | Any and all information used in determining Priority per November 20,2014 memorandum | Not provided. ERO provided the all the requested detainers and notifications forms that were updated by the Agency after the November 2014 memorandum and included all relevant checkboxes in #3 that were marked by the officers on the detainer/notification forms.<br>There was not specific priority that was assigned by officers on the detainer form. |
| 59 | whether at the time the Form I-247/I-247D was issued the individual was servingtime after conviction for a criminal offense (yes/no) | Not provided. ERO officers do not record information on the detainer form regarding the nature of local law enforcement custody," including if time is being served after conviction" as that is not required on the detainer form.<br><br>SEE #60 for further explanation and what is recorded on the detainer form. | 59 | whether at the time the Form I-247N was issued the individual was servingtime after conviction for a criminal offense (yes/no) | Not provided. ERO officers do not record information on the detainer form regarding the nature of local law enforcement custody," including if time is being served after conviction" as that is not required on the detainer form. |

| # | | | # | | |
|---|---|---|---|---|---|
| 60 | if the individual was serving time, the information concerning that offense (date of the charge, date of the conviction, date serving sentence began, where the individual was incarcerated at the time the FORM I247/ I-247D was issued, whether facility is a federal,state, or local facility; the facility code, facility name, state, county, city, facility address), NCIC code for charge, level of offense (felony, misdemeanance, citation, etc.), sentence received) | Not provided. ERO officers do not record detailed information on the detainer form regarding the details of why the individual is held in custody by local law enforcement; however, there are portions of this request that are recorded on the detainer form and are provided by ERO where possible:<br>(1) if the individual was serving time, the information concerning that offense (date of the charge, date of the conviction, date serving sentence began. While there is a spot on the forms to be filled out for "intent charge/conviction" and "date", this information is not mandatory; does not necessarily mean that is why that LEA has the individual in custody and is not available electronically in the database. **INTERNAL NOTE: check with officers if this is likely filled out by local LEA<br>(2) where the individual was incarcerated at the time the FORM I247/ I-247D was issued, whether facility is a federal,state, or local facility; the facility code, facility name, state, county, city, facility address) ERO provided #66-69 regarding "the name of the jail or facility at which the individual was detained where the Form I-247/I-247D was sent" and associated facility details.<br>(3) NCIC code for charge. SEE (1)<br>(4) level of offense (felony, misdemeanor, citation, etc.), sentence received) SEE (1) | 60 | if the individual was serving time, the information concerning that offense (date of the charge, date of the conviction, date serving sentence began, where the individual was incarcerated at the time the FORM I-247N was issued, whether facility is a federal,state, or local facility; the facility code, facility name, state, county, city, facility address), NCIC code for charge, level of offense (felony, misdemeanor, citation, etc.), sentence received) | Not provided. ERO officers do not record detailed information on the detainer form regarding the details of why the individual is held in custody by local law enforcement; however, there are portions of this request that are recorded on the detainer form and are provided by ERO where possible:<br>(1) if the individual was serving time, the information concerning that offense (date of the charge, date of the conviction, date serving sentence began. While there is a spot on the forms to be filled out for "intent charge/conviction" and "date", this information is not mandatory; does not necessarily mean that is why that LEA has the individual in custody and is not available electronically in the database. **INTERNAL NOTE: check with officers if this is likely filled out by local LEA<br>(2) where the individual was incarcerated at the time the FORM I-247N was issued, whether facility is a federal,state, or local facility; the facility code, facility name, state, county, city, facility address) ERO provided #66-69 regarding "the name of the jail or facility at which the individual was detained where the Form I-247/I-247D was sent" and associated facility details.<br>(3) NCIC code for charge. SEE (1)<br>(4) level of offense (felony, misdemeanor, citation, etc.), sentence received) SEE (1) |
| 61 | state category at time Form I-247/I-247D issued | Not provided. Officers do not record Case Category on the detainer form. Case category itself would exist in the Removals case; however, it is of note that case category is not tracked in a historical manner to pull "at the time of" in relation to detainers prepared.<br><br>This is similar to #11. | 61 | state category at time I-247N issued | Not provided. Officers do not record Case Category on the detainer form. Case category itself would exist in the Removals case; however, it is of note that case category is not tracked in a historical manner to pull "at the time of" in relation to detainers prepared.<br><br>This is similar to #11. |
| 62 | program code at time I-247/I-247D issued | Not provided. Program Code does not exist on the detainer form and is not recorded by the officer who prepared the form. Further analysis would be required to cross-walk the employee historical files. | 62 | program code at time Form I-247N issued | Not provided. Program Code does not exist on the detainer form and is not recorded by the officer who prepared the form. Further analysis would be required to cross-walk the employee historical files. |
| 63 | name of the original arresting or conviction authority | Not provided. ERO only records the current facility where the detainer is prepared (which is provided) and does not record the law enforcement entity responsible for the arrest prior to coming to the attention of ERO; i.e. nowhere in the form is this tracked | 63 | name of the original arresting or conviction authority | Not provided. ERO only records the current facility where the detainer is prepared (which is provided) and does not record the law enforcement entity responsible for the arrest prior to coming to the attention of ERO; i.e. nowhere in the form is this tracked |
| 64 | city, county and state of the original arresting or conviction authority | Not provided. ERO only records the current facility where the detainer is prepared (which is provided) and does not record the law enforcement entity responsible for the arrest prior to coming to the attention of ERO; i.e. nowhere in the form is this tracked | 64 | city, county and state of the original arresting or conviction authority | Not provided. ERO only records the current facility where the detainer is prepared (which is provided) and does not record the law enforcement entity responsible for the arrest prior to coming to the attention of ERO; i.e. nowhere in the form is this tracked |
| 65 | date of the original arrest/conviction or book-in | Not provided. ERO only records the current facility where the detainer is prepared (which is provided) and does not record the law enforcement entity responsible for the arrest prior to coming to the attention of ERO; i.e. nowhere in the form is this tracked | 65 | date of the original arrest/conviction or book-in | Not provided. ERO only records the current facility where the detainer is prepared (which is provided) and does not record the law enforcement entity responsible for the arrest prior to coming to the attention of ERO; i.e. nowhere in the form is this tracked |
| 66 | name of the jail or facility in which the individual was detained where the Form I-247/I-247D was sent | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs. | 66 | name of the jail or facility in which the individual was detained where the FORM I-247N was sent | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs. |
| 67 | code of the jail or facility in which the individual was detained where the Form I-247/I-247D was sent | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs. | 67 | code of the jail or facility in which the individual was detained where the FORM I-247N was sent | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs. |
| 68 | city,county and state of the jail or facility in which the individual was detained where the Form I-247/I-247D was sent | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs. | 68 | city, county and state of the jail or facility in which the individual was detained where the Form I-247N was sent | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs. |
| 69 | type of facility in which the individual was detained where the Form I-247/I-247D was sent including: | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs. | 69 | type of facility in which the individual was detained where the Form I-247N was sent including: | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs. |
| 69.1 | ownership (federal, state, local, private); | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. | 69.1 | jurisdiction (federal, state, local, private); | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. |
| 69.2 | type (prison, jail,hospital,other); | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. | 69.2 | type (prison, jail,hospital,other); | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. |
| 69.3 | special characteristics (juvenile facility, family facility, etc.) | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. | 69.3 | special characteristics (juvenile facility, family facility, etc.) | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. |
| 69.4 | level of security | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. | 69.4 | level of security | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. |
| 69.5 | operated by government vs private company and if private, name of private company | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. | 69.5 | operated by government vs private company and if private, name of private company | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. |
| 69.6 | facility under government contract with ICE to provide services (and if yes, contract number, contract date, and organization contract with) | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. | 69.6 | facility under government contract with ICE to provide services (and if yes, contract number, contract date, and organization contract with) | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. |
| 69.7 | facility under government contract with other than ICE to provide services (and if yes, name of government entity contract with, contract number, contract date and organization contract with) | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. | 69.7 | facility under government contract with other than ICE to provide services (and if yes, name of government entity contract with, contract number, contract date and organization contract with) | Not provided. ERO provided number 69 "type of facility in which the individual was detained where the Form I-247/I-247D was sent including" (Detainer Detention Facility Type); the additional level of detail regarding contracts is not recorded on the detainer form. |
| 70 | Was the Form I-247/I-247D issued as part of the 287(g) program (yes/no) | Not provided. A 287g Flag does not exist on the detainer form. Program information does not exist on the detainer form and is not recorded by the officer who prepared the detainer. Further analysis would be required to cross-walk the employee historical files. | 70 | Was the Form I-247N issued as part of the 287(g) program (yes/no) | Not provided. A 287g Flag does not exist on the detainer form. Program information does not exist on the detainer form and is not recorded by the officer who prepared the detainer. Further analysis would be required to cross-walk the employee historical files. |
| 71 | Was the Form I-247/I-247D issued following an IDENT/IAFIS Interoperability match (yes/no) | Not provided. Officers do not mark anywhere on the detainer form or set the fact that the detainer is result of "an IDENT/IAFIS interoperability match." As there is no operational requirement to track, this would require further in-depth analysis | 71 | Was the Form I-247N issued following an IDENT/IAFIS Interoperability match (yes/no) | Not provided. Officers do not mark anywhere on the detainer form or set the fact that the detainer is result of "an IDENT/IAFIS interoperability match." As there is no operational requirement to track, this would require further in-depth analysis |
| 72 | Was the Form I-247/I-247D issued following an IDENT/IAFIS Interoperability match included in the monthly statistics released for Secure Communities (yes/no) | Not provided. The SC Monthly statistics report is a defunct report that was produced to report summary level details and does not contain individual-level record details required to perform such a comparison in order to respond to this question. | 72 | Was the Form I-247N issued following an IDENT/IAFIS Interoperability match included in the monthly statistics released for Secure Communities (yes/no) | Not provided. The SC Monthly statistics report is a defunct report that was produced to report summary level details and does not contain individual-level record details required to perform such a comparison in order to respond to this question. |

| # | Field / Question | Description | # | Field / Question | Description |
|---|---|---|---|---|---|
| 73 | Was the original Form I-247/I-247D issued as a result of an arrest by the Border Patrol (yes/no) | Not provided. The "original arresting agency" is not recorded on the detainer form by the officer and can not be pulled from the detainer form. This is similar to #8; 63-65; 69. Additionally, CBP reports its own arrests | 73 | Was the original Form I-247N issued as a result of an arrest by the Border Patrol (yes/no) | Not provided. The "original arresting agency" is not recorded on the detainer form by the officer and can not be pulled from the detainer form. This is similar to #8; 63-65; 69. Additionally, CBP reports its own arrests |
| 74 | name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation detention, other border patrol program, secure communities, 287(g), etc.) | Not provided. The "original arresting agency" is not recorded on the detainer form by the officer. Program of any sort is not recorded by the officer on the detainer form. Related to #71 and Similar to #8, #63-65 & 69 | 74 | name of the program or area associated with the original arrest or apprehension (criminal alien program, fugitive operations, office of investigations, border patrol operation detention, other border patrol program, 287(g), etc.) | Not provided. The "original arresting agency" is not recorded on the detainer form by the officer. Program of any sort is not recorded by the officer on the detainer form. Related to #71 and Similar to #8, #63-65 & 69 |
| 75 | the apprehension method associated with the latest apprehension | Not provided. The apprehension method is not recorded on the detainer form by the officer. | 75 | the apprehension method associated with the latest apprehension | Not provided. The apprehension method is not recorded on the detainer form by the officer |
| 76 | name of the non-ICE agency associated with the original arrest or apprehension .1 (if applicable) | Not provided. The "original arresting agency" is not recorded on the detainer form by the officer and can not be pulled from the detainer drawer. Program of any sort is not recorded by the officer on the detainer form. BES Citation Item #63 Similar to #8, #63-65 & 69; #73 & #74 | 76 | name of the non-ICE agency associated with the original arrest or apprehension .1 (if applicable) | Not provided. The "original arresting agency" is not recorded on the detainer form by the officer and can not be pulled from the detainer drawer. Program of any sort is not recorded by the officer on the detainer form. BES Citation Item #63 Similar to #8, #63-65 & 69; #73 & #74 |
| 77 | DTA_ACTIVE_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 77 | DTA_ACTIVE_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 78 | DTA_ACT_DEPORT_IND | Not provided. ERO provides the checkbox, #5.3 "Deportation Ordered Yes/No where it appears on the appropriate form in its submissions. The item name does not exist in EDS database but in the EID. | 78 | DTA_ACT_DEPORT_IND | Not provided. ERO provides the checkbox, #5.3 "Deportation Ordered Yes/No where it appears on the appropriate form in its submissions. The item name does not exist in EDS database but in the EID. |
| 79 | DTA_ACT_INVT_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs (for Form I-247, does not appear on Form I-247D) | 79 | DTA_ACT_INVT_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 80 | DTA_ACT_OSC_DT | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs (for Form I-247, does not appear on Form I-247D) | 80 | DTA_ACT_OSC_DT | Not Provided. Does not appear on the I-247N Form. |
| 81 | DTA_ACT_OSC_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs (for Form I-247, does not appear on Form I-247D) | 81 | DTA_ACT_OSC_IND | Not Provided. Does not appear on the I-247N Form. |
| 82 | DTA_ACT_WA_DT | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs (for Form I-247, does not appear on Form I-247D) | 82 | DTA_ACT_WA_DT | Not Provided. Does not appear on the I-247N Form. |
| 83 | DTA_ACT_WA_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs (for Form I-247, does not appear on Form I-247D) | 83 | DTA_ACT_WA_IND | Not Provided. Does not appear on the I-247N Form. |
| 84 | DTA_CLV_ID | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 84 | DTA_CLV_ID | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 85 | DTA_CREATE_DT | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 85 | DTA_CREATE_DT | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 86 | DTA_DFF_ID | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 86 | DTA_DFF_ID | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 87 | DTA_DFLC_CD | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 87 | DTA_DFLC_CD | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 88 | DTA_FED_REQ_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 88 | DTA_FED_REQ_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 89 | DTA_GTE_ID | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 89 | DTA_GTE_ID | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 90 | DTA_GTE_ID_RETURN_TO | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 90 | DTA_GTE_ID_RETURN_TO | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 91 | DTA_ID | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 91 | DTA_ID | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 92 | DTA_INMATE_NBR_TYPE_CD | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 92 | DTA_INMATE_NBR_TYPE_CD | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 93 | DTA_LFT_DT | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 93 | DTA_LFT_DT | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 94 | DTA_OTHER_DFTC_CD | Not provided. ERO provides #65 "Other Detainer Facility name" where it appears on the appropriate form in its submissions but item name does not exist in EDS database but in the EID. | 94 | DTA_OTHER_DFTC_CD | Not provided. ERO provides #65 "Other Detainer Facility name" where it appears on the appropriate form in its submissions but item name does not exist in EDS database but in the EID. |
| 95 | DTA_OTHER_FACILITY | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 95 | DTA_OTHER_FACILITY | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 96 | DTA_PREPARE_DT | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 96 | DTA_PREPARE_DT | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 97 | DTA_RDLC_CD | Not provided. ERO provides #5 Detainer Lift Reason in its submissions. The item name does not exist in EDS database but in the EID | 97 | DTA_RDLC_CD | Not provided. ERO provides #5 Detainer Lift Reason in its submissions. The item name does not exist in EDS database but in the EID |
| 98 | DTA_RELEASE_DAY | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 98 | DTA_RELEASE_DAY | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 99 | DTA_RELEASE_DT | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 99 | DTA_RELEASE_DT | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 100 | DTA_RELEASE_MONTH | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 100 | DTA_RELEASE_MONTH | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 101 | DTA_RELEASE_YEAR | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 101 | DTA_RELEASE_YEAR | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 102 | DTA_REQ_ACCEPT_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 102 | DTA_REQ_ACCEPT_IND | Not Provided. Does not appear on the I-247N Form. |
| 103 | DTA_REQ_DEATH_TRANSF_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs (for Form I-247, does not appear on Form I-247D) | 103 | DTA_REQ_DEATH_TRANSF_IND | Not Provided. Does not appear on the I-247N Form. |
| 104 | DTA_REQ_ENVELOPE_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs (for Form I-247, does not appear on Form I-247D) | 104 | DTA_REQ_ENVELOPE_IND | Not Provided. Does not appear on the I-247N Form. |
| 105 | DTA_REQ_NOTIFY_RELEASE_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 105 | DTA_REQ_NOTIFY_RELEASE_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 106 | DTA_REQ_RETURN_SIG_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs (for Form I-247, does not appear on Form I-247D) | 106 | DTA_REQ_RETURN_SIG_IND | Not Provided. Does not appear on the I-247N Form. |
| 107 | DTA_RETURN_BY_FAX_IND | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs (for Form I-247, does not appear on Form I-247D) | 107 | DTA_RETURN_BY_FAX_IND | Not Provided. Does not appear on the I-247N Form. |
| 108 | Sequence number of other designation to identify records relating to the same alien | Not provided. ERO provided Subject ID, Eid Civ Pers Id, Detainer Id, and Eid Civ Id as identifiers and were provided in #109 and # 110 in its submissions. There no other sequential identifier exists. There is no 1 universal identifier for all individuals | 108 | Sequence number of other designation to identify records relating to the same alien | Not provided. ERO provided Subject ID, Eid Civ Pers Id, Detainer Id, and Eid Civ Id as identifiers and were provided in #109 and # 110 in its submissions. There no other sequential identifier exists. There is no 1 universal identifier for all individuals |
| 109 | Subject ID on Form I-247D record can be associated with DHS data on other activity related to this individual | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 109 | Subject ID on Form I-247N record can be associated with DHS data on other activity related to this individual | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 110 | EID Person ID on Form I-247D record can be associated DHS data on other activity related to this individual | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 110 | EID Person ID on Form I-247N record can be associated DHS data on other activity related to this individual | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |
| 111 | Any other ID recorded in ICE records so that the Form I-247/I-247D record can be associated with other activity or information related to this individual | Not provided. ERO provided Subject ID, Eid Civ Pers Id, Detainer Id, and Eid Civ Id as identifiers for # 109 and 110 in its submissions. There is no 1 universal identifier for all individuals | 111 | Any other ID recorded in ICE records so that the Form I-247N record can be associated with other activity or information related to this individual | Not provided. ERO provided Subject ID, Eid Civ Pers Id, Detainer Id, and Eid Civ Id as identifiers for # 109 and 110 in its submissions. There is no 1 universal identifier for all individuals |
| 112 | Form I-247D record can be associated with DHS data on other actions related to Form I-247/I-247D | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs | 112 | Form I-247N record can be associated with DHS data on other actions related to this Form I-247N | Provided. This data point appears in the Detainers portion of the database because it is recorded at the time a Detainer event occurs |

**EXHIBIT B**

**DETAINER FORM I-247**

DEPARTMENT OF HOMELAND SECURITY
# IMMIGRATION DETAINER - NOTICE OF ACTION

| Subject ID:<br>Event #: | | File No:<br>Date: |
|---|---|---|
| **TO:** (Name and Title of Institution - OR Any Subsequent Law Enforcement Agency) | | **FROM:** (Department of Homeland Security Office Address) |

### MAINTAIN CUSTODY OF ALIEN FOR A PERIOD NOT TO EXCEED 48 HOURS

Name of Alien: _____

Date of Birth: _____ Nationality: _____ Sex: _____

**THE U.S. DEPARTMENT OF HOMELAND SECURITY (DHS) HAS TAKEN THE FOLLOWING ACTION RELATED TO THE PERSON IDENTIFIED ABOVE, CURRENTLY IN YOUR CUSTODY:**

☐ Determined that there is reason to believe the individual is an alien subject to removal from the United States. The individual (*check all that apply*):

☐ has a prior a felony conviction or has been charged with a felony offense;

☐ has three or more prior misdemeanor convictions;

☐ has a prior misdemeanor conviction or has been charged with a misdemeanor for an offense that involves violence, threats, or assaults; sexual abuse or exploitation; driving under the influence of alcohol or a controlled substance; unlawful flight from the scene of an accident; the unlawful possession or use of a firearm or other deadly weapon, the distribution or trafficking of a controlled substance; or other significant threat to public safety;

☐ has been convicted of illegal entry pursuant to 8 U.S.C. § 1325;

☐ has illegally re-entered the country after a previous removal or return;

☐ has been found by an immigration officer or an immigration judge to have knowingly committed immigration fraud;

☐ otherwise poses a significant risk to national security, border security, or public safety; and/or

☐ other (specify): _____.

☐ Initiated removal proceedings and served a Notice to Appear or other charging document. A copy of the charging document is attached and was served on _____ (date).

☐ Served a warrant of arrest for removal proceedings. A copy of the warrant is attached and was served on _____ (date).

☐ Obtained an order of deportation or removal from the United States for this person.

*This action does not limit your discretion to make decisions related to this person's custody classification, work, quarter assignments, or other matters. DHS discourages dismissing criminal charges based on the existence of a detainer.*

### IT IS REQUESTED THAT YOU:

☐ Maintain custody of the subject for a period **NOT TO EXCEED 48 HOURS**, excluding Saturdays, Sundays, and holidays, beyond the time when the subject would have otherwise been released from your custody to allow DHS to take custody of the subject. This request derives from federal regulation 8 C.F.R. § 287.7. For purposes of this immigration detainer, **you are not authorized to hold the subject beyond these 48 hours.** As early as possible prior to the time you otherwise would release the subject, please notify DHS by calling_____ during business hours or_____ after hours or in an emergency. If you cannot reach a DHS Official at these numbers, please contact the ICE Law Enforcement Support Center in Burlington, Vermont at: (802) 872-6020.

☐ Provide a copy to the subject of this detainer.

☐ Notify this office of the time of release at least 30 days prior to release or as far in advance as possible.

☐ Notify this office in the event of the inmate's death, hospitalization or transfer to another institution.

☐ Consider this request for a detainer operative only upon the subject's conviction.

☐ Cancel the detainer previously placed by this Office on _____ (date).

_____          _____
(Name and title of Immigration Officer)          (Signature of Immigration Officer)

### TO BE COMPLETED BY THE LAW ENFORCEMENT AGENCY CURRENTLY HOLDING THE SUBJECT OF THIS NOTICE:

Please provide the information below, sign, and return to DHS using the envelope enclosed for your convenience or by faxing a copy to _____. You should maintain a copy for your own records so you may track the case and not hold the subject beyond the 48-hour period.

Local Booking/Inmate #: _____   Latest criminal charge/conviction: _____ (date)   Estimated release: _____(date)

Last criminal charge/conviction: _____

**Notice:** Once in our custody, the subject of this detainer may be removed from the United States. If the individual may be the victim of a crime, or if you want this individual to remain in the United States for prosecution or other law enforcement purposes, including acting as a witness, please notify the ICE Law Enforcement Support Center at (802) 872-6020.

_____          _____
(Name and title of Officer)          (Signature of Officer)

DHS Form I-247 (12/12)                                                            Page 1 of

## NOTICE TO THE DETAINEE

The Department of Homeland Security (DHS) has placed an immigration detainer on you.  An immigration detainer is a notice from DHS informing law enforcement agencies that DHS intends to assume custody of you after you otherwise would be released from custody.  DHS has requested that the law enforcement agency which is currently detaining you maintain custody of you for a period not to exceed 48 hours (excluding Saturdays, Sundays, and holidays) beyond the time when you would have been released by the state or local law enforcement authorities based on your criminal charges or convictions.  **If DHS does not take you into custody during that additional 48 hour period, not counting weekends or holidays, you should contact your custodian** (the law enforcement agency or other entity that is holding you now) to inquire about your release from state or local custody.  **If you have a complaint regarding this detainer or related to violations of civil rights or civil liberties connected to DHS activities, please contact the ICE Joint Intake Center at 1-877-2INTAKE (877-246-8253).  If you believe you are a United States citizen or the victim of a crime, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.**

## NOTIFICACIÓN A LA PERSONA DETENIDA

El Departamento de Seguridad Nacional (DHS) de EE. UU. ha emitido una orden de detención inmigratoria en su contra. Mediante esta orden, se notifica a los organismos policiales que el DHS pretende arrestarlo cuando usted cumpla su reclusión actual. El DHS ha solicitado que el organismo policial local o estatal a cargo de su actual detención lo mantenga en custodia por un período no mayor a 48 horas (excluyendo sábados, domingos y días festivos) tras el cese de su reclusión penal. **Si el DHS no procede con su arresto inmigratorio durante este período adicional de 48 horas, excluyendo los fines de semana o días festivos, usted debe comunicarse con la autoridad estatal o local que lo tiene detenido** (el organismo policial u otra entidad a cargo de su custodia actual) para obtener mayores detalles sobre el cese de su reclusión. **Si tiene alguna queja que se relacione con esta orden de detención o con posibles infracciones a los derechos o libertades civiles en conexión con las actividades del DHS, comuníquese con el Joint Intake Center (Centro de Admisión) del ICE (Servicio de Inmigración y Control de Aduanas) llamando al 1-877-2INTAKE (877-246-8253). Si usted cree que es ciudadano de los Estados Unidos o que ha sido víctima de un delito, infórmeselo al DHS llamando al Centro de Apoyo a los Organismos Policiales (Law Enforcement Support Center) del ICE, teléfono (855) 448-6903 (llamada gratuita).**

## Avis au détenu

Le département de la Sécurité Intérieure [Department of Homeland Security (DHS)] a émis, à votre encontre, un ordre d'incarcération pour des raisons d'immigration. Un ordre d'incarcération pour des raisons d'immigration est un avis du DHS informant les agences des forces de l'ordre que le DHS a l'intention de vous détenir après la date normale de votre remise en liberté. Le DHS a requis que l'agence des forces de l'ordre, qui vous détient actuellement, vous garde en détention pour une période maximum de 48 heures (excluant les samedis, dimanches et jours fériés) au-delà de la période à la fin de laquelle vous auriez été remis en liberté par les autorités policières de l'État ou locales en fonction des inculpations ou condamnations pénales à votre encontre. **Si le DHS ne vous détient pas durant cette période supplémentaire de 48 heures, sans compter les fins de semaines et les jours fériés, vous devez contacter votre gardien** (l'agence des forces de l'ordre qui vous détient actuellement) pour vous renseigner à propos de votre libération par l'État ou l'autorité locale. **Si vous avez une plainte à formuler au sujet de cet ordre d'incarcération ou en rapport avec les violations de vos droits civils liées à des activités du DHS, veuillez contacter le centre commun d'admissions du Service de l'Immigration et des Douanes [ICE - Immigration and Customs Enforcement] [ICE Joint Intake Center] au 1-877-2INTAKE (877-246-8253). Si vous croyez être un citoyen des États-Unis ou la victime d'un crime, veuillez en aviser le DHS en appelant le centre d'assistance des forces de l'ordre de l'ICE [ICE Law Enforcement Support Center] au numéro gratuit (855) 448-6903.**

## AVISO AO DETENTO

O Departamento de Segurança Nacional (DHS) emitiu uma ordem de custódia imigratória em seu nome. Este documento é um aviso enviado às agências de imposição da lei de que o DHS pretende assumir a custódia da sua pessoa, caso seja liberado. O DHS pediu que a agência de imposição da lei encarregada da sua atual detenção mantenha-o sob custódia durante, no máximo, 48 horas (excluindo-se sábados, domingos e feriados) após o período em que seria liberado pelas autoridades estaduais ou municipais de imposição da lei, de acordo com as respectivas acusações e penas criminais. **Se o DHS não assumir a sua custódia durante essas 48 horas adicionais, excluindo-se os fins de semana e feriados, você deverá entrar em contato com o seu custodiante** (a agência de imposição da lei ou qualquer outra entidade que esteja detendo-o no momento) para obter informações sobre sua liberação da custódia estadual ou municipal. **Caso você tenha alguma reclamação a fazer sobre esta ordem de custódia imigratória ou relacionada a violações dos seus direitos ou liberdades civis decorrente das atividades do DHS, entre em contato com o Centro de Entrada Conjunta da Agência de Controle de Imigração e Alfândega (ICE) pelo telefone 1-877-246-8253. Se você acreditar que é um cidadão dos EUA ou está sendo vítima de um crime, informe o DHS ligando para o Centro de Apoio à Imposição da Lei do ICE pelo telefone de ligação gratuita (855) 448-6903**

## THÔNG BÁO CHO NGƯỜI BỊ GIAM GIỮ

Bộ Quốc Phòng (DHS) đã có lệnh giam giữ quý vị vì lý do di trú. Lệnh giam giữ vì lý do di trú là thông báo của DHS cho các cơ quan thi hành luật pháp là DHS có ý định tạm giữ quý vị sau khi quý vị được thả. DHS đã yêu cầu cơ quan thi hành luật pháp hiện đang giữ quý vị phải tiếp tục tạm giữ quý vị trong không quá 48 giờ đồng hồ (không kể thứ Bảy, Chủ nhật, và các ngày nghỉ lễ) ngoài thời gian mà lẽ ra quý vị sẽ được cơ quan thi hành luật pháp của tiểu bang hoặc địa phương thả ra dựa trên các bản án và tội hình sự của quý vị. **Nếu DHS không tạm giam quý vị trong thời gian 48 giờ bổ sung đó, không tính các ngày cuối tuần hoặc ngày lễ, quý vị nên liên lạc với bên giam giữ quý vị** (cơ quan thi hành luật pháp hoặc tổ chức khác hiện đang giam giữ quý vị) **để hỏi về việc cơ quan địa phương hoặc liên bang thả quý vị ra. Nếu quý vị có khiếu nại về lệnh giam giữ này hoặc liên quan tới các trường hợp vi phạm dân quyền hoặc tự do công dân liên quan tới các hoạt động của DHS, vui lòng liên lạc với ICE Joint Intake Center tại số 1-877-2INTAKE (877-246-8253). Nếu quý vị tin rằng quý vị là công dân Hoa Kỳ hoặc nạn nhân tội phạm, vui lòng báo cho DHS biết bằng cách gọi ICE Law Enforcement Support Center tại số điện thoại miễn phí (855) 448-6903.**


## 对被拘留者的通告

美国国土安全部（DHS）已发出对你的移民监禁令。移民监禁令是美国国土安全部用来通告执法当局，表示美国国土安全部意图在你可能从当前的拘留被释放以后继续拘留你的通知单。美国国土安全部已经向当前拘留你的执法当局要求，根据对你的刑事起诉或判罪的基础，在本当由州或地方执法当局释放你时，继续拘留你，为期不超过 48 小时（星期六、星期天和假日除外）。如果美国国土安全部未在不计周末或假日的额外 48 小时期限内将你拘留，你应该联系你的监管单位（现在拘留你的执法当局或其他单位），询问关于你从州或地方执法单位被释放的事宜。如果你对于这项拘留或关于美国国土安全部的行动所涉及的违反民权或公民自由权有任何投诉，请联系美国移民及海关执法局联合接纳中心（ICE Joint Intake Center），电话号码是 1-877-2INTAKE (877-246-8253)。如果你相信你是美国公民或犯罪被害人，请联系美国移民及海关执法局的执法支援中心（ICE Law Enforcement Support Center），告知美国国土安全部。该执法支援中心的免费电话号码是 (855) 448-6903。

**EXHIBIT C**


**DETAINER FORM I-247D**

DEPARTMENT OF HOMELAND SECURITY (DHS)
# IMMIGRATION DETAINER – REQUEST FOR VOLUNTARY ACTION

| | |
|---|---|
| Subject ID:<br>Event #: | File No:<br>Date: |

| | |
|---|---|
| TO: (Name and Title of Institution - OR Any Subsequent Law Enforcement Agency) | FROM: (DHS Office Address) |

Name of Subject: _____

Date of Birth: _____ Citizenship: _____ Sex: _____

## 1. DHS HAS DETERMINED THAT (must fill out at least one of the following, enter details of the determination in Subsection B, or skip to section 2):

### A. THE SUBJECT IS AN IMMIGRATION ENFORCEMENT PRIORITY BECAUSE HE/SHE:

☐ has engaged in or is suspected of terrorism or espionage, or otherwise poses a danger to national security;

☐ has been convicted of an offense of which an element was active participation in a criminal street gang, as defined in 18 U.S.C. § 521(a), or is at least 16 years old and intentionally participated in an organized criminal gang to further its illegal activities;

☐ has been convicted of an offense classified as a felony, other than a state or local offense for which an essential element was the alien's immigration status;

☐ has been convicted of an aggravated felony, as defined under 8 U.S.C. § 1101(a)(43) at the time of conviction;

☐ has been convicted of a "significant misdemeanor," as defined under DHS policy; and/or

☐ has been convicted of 3 or more misdemeanors, not including minor traffic offenses and state or local offenses for which immigration status was an essential element, provided the offenses arise out of 3 separate incidents.

### B. PROBABLE CAUSE EXISTS THAT THE SUBJECT IS A REMOVABLE ALIEN. THIS DETERMINATION IS BASED ON:

☐ a final order of removal against the subject;

☐ the pendency of ongoing removal proceedings against the subject;

☐ biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or

☐ statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

## 2. DHS TRANSFERRED THE SUBJECT TO YOUR CUSTODY FOR A PROCEEDING OR INVESTIGATION.

☐ Upon completion of the proceeding or investigation for which the subject was transferred to your custody, DHS intends to resume custody of the subject to complete processing.

**IT IS THEREFORE REQUESTED THAT YOU:**

- Serve a copy of this form on the subject and maintain custody of him/her for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. **This request takes effect only if you serve a copy of this form on the subject, and it does not request or authorize that you hold the subject beyond 48 hours. This request arises from DHS authorities and should not impact decisions about the subject's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters.**

- As early as possible prior to the time you otherwise would release the subject, please notify DHS by calling ☐ U.S. Immigration and Customs Enforcement (ICE) or ☐ U.S. Customs and Border Protection (CBP) at _____
  If you cannot reach an official at the number(s) provided, please contact the Law Enforcement Support Center at: (802) 872-6020.

- Notify this office in the event of the subject's death, hospitalization or transfer to another institution.

☐ If checked: Please cancel the detainer related to this subject previously submitted to you on _____ (date).

_____        _____
(Name and title of Immigration Officer)               (Signature of Immigration Officer)

| |
|---|
| **Notice:** If the subject is taken into DHS custody, he or she may be removed from the United States. If the subject may be the victim of a crime or you want the subject to remain in the United States for a law enforcement purpose, please notify the ICE Law Enforcement Support Center at (802) 872-6020. You may also call this number if you have any other questions or concerns about this matter. |

**TO BE COMPLETED BY THE LAW ENFORCEMENT AGENCY CURRENTLY HOLDING THE SUBJECT OF THIS NOTICE:**

Please provide the information below, sign, and return to DHS by mailing, emailing, or faxing a copy to _____.

Local Booking/Inmate #: _____ Est. release date/time: _____ Date of latest criminal charge/conviction: _____

Latest offense charged/convicted: _____

This Form I-247D was served upon the subject on _____, in the following manner:

☐ in person        ☐ by inmate mail delivery        ☐ other (please specify): _____.

_____        _____
(Name and title of Officer)                         (Signature of Officer)

DHS Form I-247D

## NOTICE TO THE DETAINEE

The Department of Homeland Security (DHS) has placed an immigration detainer on you.  An immigration detainer is a notice to a law enforcement agency that DHS intends to assume custody of you (after you otherwise would be released from custody) because there is probable cause that you are subject to removal from the United States under federal immigration law.  DHS has requested that the law enforcement agency that is currently detaining you maintain custody of you for a period not to exceed 48 hours beyond the time when you would have been released based on your criminal charges or convictions.  **If DHS does not take you into custody during this additional 48 hour period, you should contact your custodian** (the agency that is holding you now) to inquire about your release.  **If you have a question or complaint regarding this detainer, please contact the ICE ERO Detention Reporting and Information Line at (888) 351-4024.  For complaints related to alleged violations of civil rights or civil liberties connected to DHS activities, please contact the Joint Intake Center at (877) 2INTAKE (877-246-8253).  If you believe you are a United States citizen or the victim of a crime, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.**

## NOTIFICACIÓN AL DETENIDO

El Departamento de Seguridad Nacional (DHS) ha emitido una orden de detención inmigratoria en su contra.  Una orden de detención inmigratoria es un aviso a la autoridad de seguridad pública que DHS tiene la intención de asumir custodia sobre usted (después que normalmente hubiera sido liberado de su custodia) porque existe causa probable que usted esté sujeto a ser removido de los Estados Unidos bajo la ley federal de inmigración.  DHS ha pedido que la autoridad de seguridad pública que actualmente lo tiene detenido lo / la mantenga en su custodia por un período que no sobrepase 48 horas después del momento cuando usted hubiera sido liberado basado en sus cargos o condenas criminales.  **Si DHS no lo toma bajo su custodia durante este período adicional de 48 horas, usted debe contactar a la agencia responsable por su custodia** (la que actualmente lo tiene detenido) para preguntar acerca de su liberación.  **Si usted tiene alguna pregunta o queja concerniente a esta orden de detención, por favor contacte la Línea para Reportar e Información de ICE ERO al (888) 351-4024.  Para quejas relacionadas a violaciones alegadas de derechos civiles o libertades civiles conectadas a las actividades de DHS, por favor contacte al Joint Intake Center (Centro de Admisión) al (877) 2INTAKE (877-246-8253).  Si usted cree ser un ciudadano de los Estados Unidos o víctima de un crimen, por favor avísele a DHS llamando gratis al ICE Law Enforcement Support Center (Centro de Apoyo de ICE para las Agencias para el Cumplimiento de la Ley) al (855) 448-6903.**

## AVIS AU DETENU

Le Département de la Sécurité Nationale (en anglais: DHS) a émis un ordre d'arrêt d'immigration contre vous.  Un ordre d'arrêt d'immigration est un avis à un organisme d'application de la loi que DHS a l' intention d'assumer votre garde (après votre libération) car il existe cause probable que vous soyez sujet à l'expulsion des Etats-Unis en vertu du droit fédéral de l'immigration. DHS a demandé à l'agence d'application de la loi qui actuellement vous détient, de vous maintenir sous garde pendant une période n'excédant pas 48 heures après avoir été libéré en fonction des accusations ou condamnations criminelles contre vous. **Si DHS ne vous prend pas en garde à vue au cours de cette période de 48 heures supplémentaires, vous devez contacter votre gardien** (l'agence qui vous retient aujourd'hui) pour enquérir au sujet de votre libération. **Si vous avez une question ou une complainte au sujet de cette demande, veuillez contacter la Ligne pour Rapporter et d'Information de ICE ERO au (888) 351-4024. Pour les plaintes relatives à des violations présumées des droits et libertés civils liés à des activités de DHS, veuillez contacter Joint Intake (Centre d'Admissions) au (877) 2INTAKE (877-246-8253). Si vous croyez que vous êtes un citoyen américain ou victime d'un crime, veuillez prévenir DHS, en appelant gratuitement ICE Law Enforcement Support Center (Centre d'Appui de ICE pour les Organismes d'Application de la Loi) au 855 448-6903.**

## AVISO AO DETENTO

O Departamento de Segurança Interna (DHS, pela sigla americana) emitiu uma ordem de custódia imigratória em seu nome. Este documento é um aviso enviado às agências de aplicação da lei de que o DHS pretende assumir a custódia da sua pessoa, caso seja libertad. O DHS pediu que a agência de aplicação da lei encarregada da sua atual detenção mantenha-o sob custódia durante, no máximo, 48 horas após o período em que seria libertado pelas autoridades estaduais ou municipais de aplicação da lei, de acordo com as respectivas acusaçoes e penas criminais. **Se o DHS nao assumir a sua custódia durante essas 48 horas adicionais, voce deverá entrar em contato com a agência custodiante** (a agência de aplicação da lei ou qualquer outra entidade que esteja detendo-o no momento) para obter informações sobre sua libertação da custódia estadual ou municipal. **Caso voce tenha alguma reclamação a fazer sobre esta ordem de custódia imigratória ou relacionada a violações dos seus direitos ou liberdades civis decorrente das atividades do DHS, entre em contato com o *Joint Intake Center,* que seja o Centro de Entrada Conjunta da Agência de Controle de Imigração e Alfândega (ICE, pela sigla americana) pelo telefone 1-877-246-8253. Se você acreditar que é cidadao dos EUA ou está sendo vítima de um crime, informe ao DHS, ligando para o *Law Enforcement Support Center,* que seja o Centro de Apoio para Aplicação da Lei do ICE pelo telefone de ligação gratuita (855) 448-6903.**

## THÔNG BÁO CHO NGƯỜI ĐANG BỊ GIAM

Bộ An ninh Nội địa Mỹ (DHS) có lệnh giam giữ ông/bà vì lý do liên quan đến luật di trú.  Lệnh giam giữ vì lý do liên quan đến luật di trú là thông báo của DHS cho các cơ quan thi hành luật pháp là DHS có ý định dành thẩm quyền để tạm giữ ông/bà (sau khi ông/bà được thả). Lý do là, theo luật di trú của liên bang Mỹ, DHS có lý do chính đáng để xếp ông/bà vào diện có thể bị trục xuất ra khỏi Mỹ.  DHS đã yêu cầu cơ quan thi hành luật pháp, nơi đang giam ông/bà, phải tiếp tục giam ông/bà thêm cho đến tối đa không được quá 48 tiếng đồng hồ, thời điểm mà ông/bà coi như đã được thả, căn cứ vào lời buộc tội hoặc bản án kết tội của tòa. **Nếu trong vòng 48 tiếng đồng hồ bổ sung này mà DHS không đến nhận ông/bà, thì ông/bà nên liên lạc với nhân viên quản lý của mình** (nơi đang giam giữ ông/bà) để biết chi tiết về vấn đề được thả ra khỏi nhà giam. **Nếu ông/bà có thắc mắc hoặc khiếu nại về lệnh tạm giữ này, xin liên lạc với ICE ERO Detention Reporting and Information Line ở số (888) 351-4024. Nếu ông/bà có phàn nàn về các hoặc động, công tác của DHS mà ông/bà cho là có vi phạm đến dân quyền hoặc tự do dân quyền, xin liên lạc Joint Intake Center ở số (877) 2INTAKE (877-246-8253). Nếu ông/bà tin rằng mình có quốc tịch Mỹ, hoặc mình là nạn nhân trong vụ tội, xin gọi ICE Law Enforcement Support Center ở số điện thoại miễn phí (855) 448-6903 để báo cho DHS biết.**

## 對扣留者的通告

美國国土安全部（DHS）已發出一張扣留令，對你進行扣留。移民扣留令的目的是告訴执法機關現在DHS 有權力扣押你（在你被关押的部门释放之後）因为根据美国联邦移民法，我們有頗能成立的因由可将你遣送出境。DHS 已向扣留你的有關執法機關提出要求在你刑事控罪及定罪後被釋放的48小時內對你继续進行扣留。如果在這48小时内DHS没有扣押你，那你可以联络你的保管人（现关押你的部门）查詢有關你释放的事。  如果你對這扣留令有任何问题或投诉，请联络ICE ERO 拘留报告信息熱线  （888）351-4024。任何有關DHS涉嫌违反民权或民权自由行為的投诉，请联系美国移民及海关执法局联合接待中心（ICE Joint Intake Center）（877）2INTAKE（877-246-8253）。如果你相信你是美国公民或是受害者，请联系美国移民及海关执法局的执法支援中心（ICE Law Enforcement Support Center）告知DHS，其免费电话号码是（855）448-6903。



**EXHIBIT D**

**DETAINER FORM I-247N**

DEPARTMENT OF HOMELAND SECURITY (DHS)

# REQUEST FOR VOLUNTARY NOTIFICATION OF RELEASE OF SUSPECTED PRIORITY ALIEN

Subject ID:
Event #:

File No:
Date:

TO: (Name and Title of Institution - OR Any Subsequent Law
     Enforcement Agency)

FROM: (DHS Office Address)

Name of Subject: _____

Date of Birth: _____    Suspected Citizenship: _____    Sex: _____

**1. DHS SUSPECTS THAT THE SUBJECT IS A REMOVABLE ALIEN. THE SUBJECT IS AN IMMIGRATION ENFORCEMENT PRIORITY BECAUSE THE SUBJECT:**

☐ has engaged in or is suspected of terrorism or espionage, or otherwise poses a danger to national security;

☐ has been convicted of an offense of which an element was active participation in a criminal street gang, as defined in 18 U.S.C. § 521(a), or is at least 16 years old and intentionally participated in an organized criminal gang to further its illegal activities;

☐ has been convicted of an offense classified as a felony, other than a state or local offense for which an essential element was the alien's immigration status;

☐ has been convicted of an aggravated felony, as defined under 8 U.S.C. § 1101(a)(43) at the time of conviction;

☐ has been convicted of a "significant misdemeanor," as defined under DHS policy; and/or

☐ has been convicted of 3 or more misdemeanors, not including minor traffic offenses and state or local offenses for which immigration status was an essential element, provided the offenses arise out of 3 separate incidents.

**2. DHS TRANSFERRED THE SUBJECT TO YOUR CUSTODY, OR PLANS TO DO SO, FOR PROCESSING?**

☐ Upon completion of the proceeding or investigation for which the subject was transferred to your custody, DHS intends to resume custody of the subject to complete processing.

**IT IS THEREFORE REQUESTED THAT YOU:**

- Provide **notice as early as practicable (at least 48 hours, if possible)** before the subject is released from your custody to allow DHS an opportunity to determine whether there is probable cause to conclude that he or she is a removable alien. **This voluntary notification request _does not_ request or authorize that you detain the subject beyond the time he or she is currently scheduled for release from your custody. This request arises from DHS authorities and should not impact decisions about the subject's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters.**

- As early as possible prior to the time you otherwise would release the subject, please notify DHS by calling ☐ U.S. Immigration and Customs Enforcement (ICE) or ☐ U.S. Customs and Border Protection (CBP) at _____ _____. If you cannot reach a DHS official at the number(s) provided, please contact the ICE Law Enforcement Support Center at: (802) 872-6020.

- Notify this office in the event of the subject's death, hospitalization or transfer to another institution.

☐ If checked: Please disregard the notification request related to this subject previously submitted to you on _____ (date).

_____          _____
(Name and title of Immigration Officer)                     (Signature of Immigration Officer)

**Notice:** If the subject is taken into DHS custody, he or she may be removed from the United States. If the subject may be the victim of a crime, or if you want the subject to remain in the United States for a law enforcement purpose, please notify the ICE Law Enforcement Support Center at (802) 872-6020. You may also call this number if you have any other questions or concerns about this matter.

**TO BE COMPLETED BY THE LAW ENFORCEMENT AGENCY CURRENTLY HOLDING THE SUBJECT OF THIS NOTICE:**

Please provide the information below, sign, and return to DHS by mailing, emailing, or faxing a copy to _____.

Local Booking/Inmate #: _____ Est. release date/time: _____ Date of latest criminal charge/conviction: _____

Latest offense charged/convicted: _____

_____          _____
(Name and title of Officer)                                        (Signature of Officer)

DHS Form I-247N